U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED    MAR 29 2021
CLERK

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

# BATON ROUGE DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**LARRY E. CLARK, Sr.**                    CIVIL ACTION NO. _____

versus

**JOHN B. EDWARDS**, Governor, State of Louisiana; **SHAWN  D. WILSON**, Secretary for the Louisiana, Department of Transportation And Development; **CHARLES D. McBRIDE,** Administrator for, the Louisiana, Department of Transportation And Development; **ANDREW G. BARRY,** an Attorney and an employee of, the Louisiana, Department of Transportation And Development; **TERRENCE J. DONAHUE, Jr.**, an Attorney and an employee of the Louisiana, Department of Transportation And Development; **RAMON LAFITTE**, Judge for, the First Judicial District Court of Caddo Parish; **JAY B. McCALLUM,** Judge for, the Louisiana Second Circuit Court of Appeal and/or Judge for the Louisiana Supreme Court; and **JOHN M. GUIDRY,** a Judge, for the Louisiana 1ST Circuit Court of Appeal.  All the Defendants are sued in their Official Capacity.

### COMPLAINT FOR:
**PROSPECTIVE INJUNCTIVE RELIEF AND/OR FOR  PROSPECTIVE DECLARATORY RELIEF AND FOR A WRIT OF MANDAMUS BASED UPON  SOME DEFENDANTS  COUNTINUING  VIOLATIONS  OF FEDERAL LAWS IN FIVE (5) CASES ONGOING IN THE STATE COURT**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I.    INTRODUCTION

This complaint seeks present and prospective declaratory relief for

Plaintiff, an African-American, a U. S. Citizen, and who files this complaint in his

1

personal and individual capacity based upon: (1) Plaintiff was the owner of all the property that the State of Louisiana, Department of Transportation & Development filed expropriation suits against; and (2) Plaintiff having purchased, a legal partial interests in the claim of L & M Hair Care Products, Inc. ("hereinafter sometimes referred to as The Corporation"), has against the state, as a result that The Corporation was leasing all of the property expropriated. The Corporation has all African-Americans stockholders. The State Defendants, for nearly Thirty-Five (35) years in ongoing litigation, have denied Plaintiff and/or The Corporation their federal rights due to them from the expropriation (condemnation) of their private property in 1986 by the Defendants of the State of Louisiana, Department of Transportation & Development, acting under color of the law. The Defendants' actions and/or inactions stem from a racial discriminatory intent; because Plaintiff is a member of the African-American race; and along with all the stockholders of The Corporation. Plaintiff and The Corporation have been treated and is presently being treated differently from White people who are the property owners and White people that owns all the corporate stock of the corporation, that are in a similar expropriation case, where their property has been expropriated by the State of Louisiana.

Also, Plaintiff and/or The Corporation is of the opinion that they don't have to entertain a request for a fee (in the form of a poll tax) and/or (in the form of a

2

Bribe and/or a Kickback) in the amount of Two-Hundred Thousand- Dollars ($200,000.00) to be paid to: the former and/or the present State officials; the former contract attorneys for the Louisiana Department of Transportation & Development; the present attorneys for the Louisiana Department of Transportation & Development; the former Judge of the First Judicial District Court of Caddo Parish; any other State Official; and/or any former or present employee; and/or; any former and/or to no present agent for the State of Louisiana, in order for Plaintiff and/or for L & M Hair Care Products, Inc. to receive all of their Federal rights due to them as a result of the three (3) expropriation (condemnation) suits filed in 1986 by the Louisiana Department of Transportation & Development  ("DOTD"). The DOTD filed the suits to take and/or to damage, the private property for the construction of the federally funded, Interstate- 49 project through Shreveport, Louisiana.   Formerly, money has been specifically requested from The Corporation and/or from Plaintiff in the form of a Bribe and/or a Kickback, before an estimate of money due to The Corporation for compensation would be deposited into the registry of the court for the benefit of The Corporation.

Also, this complaint seeks  prospective declaratory relief under the First Amendment and/or the Fifth Amendment and/or the Fourteenth Amendment, which grant Plaintiff and L & M Hair Care Products, Inc. various rights in regard to the expropriation of their private property for construction of I-49 in 1986 by the

3

DOTD.

Moreover, this complaint seeks a prospective Declaration for the DOTD's peremptory exceptions of res judicata in the ongoing state court suits to be declared unconstitutional; and/or that the granting of the peremptory exceptions operates in an unconstitutional manner based upon the peremptory exception of res judicata, which is in violation of the: due process clause ; taking clause; and equal protection clause of the 5th and 14th Amendments of the U. S. Constitution, as well as other Amendments of the U. S. Constitution and other federal statutory laws.

Additionally, this complaint seeks a present and prospective Injunction for the following: the December 28, 1987 "JOINT STIPULATION"; the June 1988 Judgment; the March 21, 2018 Judgment; and the May 29, 2018 Judgment; which were all filed into the three (3) originally filed 1986 consolidated expropriation suits, Nos. 325,511; 325,512 ; 328,772; the consolidated opinions issued by the Louisiana Second Circuit Court of Appeal on August 23, 1989, 548 So.2d 365 (La.App.2nd Cir. 1989); and the consolidated opinions issued on January 15, 2020, by the Louisiana Second Circuit Court of Appeal, 289 So.3d 226 (La.App.2nd Cir. 2020). In addition, the complaint seeks prospective Injunction regarding the Judgments issued on: October 10, 1995; on February 4, 1997; and on May 29, 2018 by the First Judicial District Court of Caddo Parish in the 1990 filed expropriation suit No. 363,679; along with the opinion of the Louisiana Second Circuit Court of Appeal on December 10, 1997, 704 So.2d 415 La.App.2nd Cir. 1997). Furthermore, this complaint seeks prospective Injunction for the October

4

31, 2005 Court's Order; the September 11, 2006 Judgment; the December 10, 2012

Judgment; and the Court's Order filed on November 19, 2020 and issued and/or

signed by the Judge on December 14, 2020, as it relates to Larry E. Clark in his

individual and personal capacity from the partial obtained legal interest in the

claim of L & M Hair Care Products, Inc. All of these rulings were issued by the

19th JDC of East Baton Rouge Parish for civil suit No. 425,690-D. Also included

are the Louisiana First Circuit Court of Appeal's unpublished opinions: No. 2007

CA1364 issued on May 2, 2008 and the unpublished opinion No. 2013CA0371

issued November 8, 2013. Finally, this complaint seeks prospective Injunction as

to the following Judgments issued by the Federal Courts: the February 20, 1997

Judgment issued by the U. S. District Court W. D. of Shreveport, LA, in Federal

Mandamus suit #cv96-1360 along with unreported and unpublished opinion No.

97-30715 issued on June 30, 1999; the Order issued on March 7, 2011; the

unpublished opinion No. 11-30724 issued on June 25, 2012 by the U. S. Fifth

Circuit Court of Appeals; the March 20, 2000 Judgment issued by the U. S. District

Court W. D. of Shreveport, LA, in suit No. cv98-1753.

Finally, in the aid of this Court's jurisdiction and/or to protect and/or to

effectuate previously issued federal judgments, and/or based upon putting an end

to the violation of federal law and/or for the compliance with federal law and/or

based upon ancillary jurisdiction and/or for any other available legal ground, this

complaint seeks for a prospective Mandamus to be issued to SHAWN D.

WILSON, Secretary For The Louisiana Department Of Transportation And

Development and to **CHARLES D. McBRIDE,** Administrator for, the Louisiana,

Department of Transportation And Development.   All the relief requested is for the ongoing violation of federal law by the Defendants in several cases presently pending in various state courts.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW INTO COURT COMES, Plaintiff, LARRY E. CLARK, in Proper Person; an African-American and lay person; a U. S. Citizen; a senior citizen of the State of Georgia; and his mailing address is P. O. Box 76752, Atlanta, Georgia 30358.  For Nearly Thirty-Five (35) Years, This Matter Has Been Ongoing In The State Courts And/Or In The Federal Courts, Because Of**: (1) Corruption At The Louisiana Department of Transportation And Development, In Applying The Policies Of "You Must Pay To Play" And "Pay A Bribe And Get Your Federal Constitutional Rights-Do Not Pay A Bribe And You <u>Do Not Get</u> Your Federal Constitutional Rights" And Keep The Case In Litigation In Order To Milk The State And Federal Government For Attorney Fees;** (2) <u>Systemic Racism</u>; Whistleblower Retaliation; And Political Retaliation  Practiced At The State Of Louisiana, Department of Transportation And Development, As A Result That Plaintiff  Is An- African-American And He Along With A Corporation That Has All African-American Stockholders, Have Very Valuable Lease Contracts Together; That In 1984 And In 1988 Plaintiff  Voted, And Supported The Rev. Jessie Jackson For President Of The U. S. A.; And In 1990 And In 1994, Plaintiff Filed A Racial Discrimination Complaint At The Federal Department of Transportation Against The DOTD's Officials; And (3) <u>Systemic Racism</u> Is Practiced In The Courts In Shreveport, Louisiana- Where The Word Is Out, That

At The Louisiana Second Circuit Court Of Appeal, " If You Are A Member Of

Any Type American Minority Group You Will Most Certainly Be Denied A Fair

Appeal Trial On Appeal".   Well, As A Result Of All Three And More, Plaintiff

Comes To This Federal Court Seeking An Injunction And/Or A Declaratory

Judgment And/Or  A Writ Of Mandamus And/Or Other Relief To Stop The

Present Illegal Civil And Illegal Criminal Conduct; As Well As To Stop The
Future

Illegal Civil Conduct And Future Illegal Criminal Conduct.  Therefore, Plaintiff

Provides As Follows:

## THE PARTIES IN THIS COMPLANT ARE:

1.

## THE PLAINTIFF:

Larry E. Clark
P. O. BOX 76752
Atlanta, GA 30358
Phone Number: 678-754-7324
Email: clark9853@hotmail.com

## THE DEFENDANT(S):

John B. Edwards,
Governor For The State of Louisiana, is Sued In His Official Capacity, and can be
served at 900 North 3rd, Street, Baton Rouge, Louisiana 70802.  LSA-R. S. 36:503
provides that all the duties of the Secretary of Transportation & Development is
under the general control and supervision of the Governor of Louisiana.  Pursuant
to 4(j)(2)(B) of Federal Rules of Civil Procedure and LSA-R. S. 13:5107(D),
Governor Edwards may be served with process by having a copy of a summons
and a copy of the complaint delivered to him.

AND

SHAWN D. WILSON,
Secretary For The Louisiana Department Of Transportation And Development,
Sued In His Official Capacity, and can be served at 1201 Capitol Access Road,
Baton Rouge, Louisiana 70802. LSA-R. S. 48:13 provides that the Louisiana
Department of Transportation & Development shall function under direction
management and supervision of its Secretary. LSA-R. S. 48:441 through 48:46o
outline the various mandatory steps that the Secretary of the Louisiana Department
of Transportation as well as others must perform in order that Art. 1. Section 4., of
the Louisiana Constitution; the 5th and 14th Amendment of the U. S. Constitution;
and other federal laws are not violated. Pursuant to 4(j)(2)(B) of Federal Rules of
Civil Procedure and LSA-R. S. 13:5107(D), Shawn D. Wilson may be served with
process by having a copy of a summons and a copy of the complaint delivered to
him.

AND

CHARLES D. McBRIDE,
Real Estate Administrator For The Louisiana Department Of Transportation And
Development, Sued In His Official Capacity, and can be served at,1201 Capitol
Access Road, Baton Rouge, Louisiana 70802. As the Real Estate Administrator,
Mr. McBride is under the supervision of the Secretary of the Louisiana Department
of Transportation And Development. Pursuant to 4(j)(2)(B) of Federal Rules of
Civil Procedure and LSA-R. S. 13:5107(D), he may be served with process by
having a copy of a summons and a copy of the complaint delivered to him.

AND

ANDREW G. BARRY,
an Attorney for, and an employee, of the Louisiana, Department of Transportation
And Development. Mr. Barry is under the supervision of the Secretary of the
Louisiana Department of Transportation And Development. He is sued In His
Official Capacity, and can be served at, 1201 Capitol Access Road, Baton Rouge,
Louisiana 70802. Pursuant to 4(j)(2)(B) of Federal Rules of Civil Procedure and
LSA-R. S. 13:5107(D), he may be served with process by having a copy of a
summons and a copy of the complaint delivered to him.

AND

Terrence J. Donahue Jr.,

8

an Attorney for, and an employee, of the Louisiana, Department of Transportation And Development.   Mr. Donahue Jr. is under the supervision of the Secretary of the Louisiana Department of Transportation And Development.   He is sued In His Official Capacity, and can be served at, 1201 Capitol Access Road, Baton Rouge, Louisiana 70802.  Pursuant to 4(j)(2)(B) of Federal Rules of Civil Procedure and LSA-R. S. 13:5107(D), he may be served with process by having a copy of a summons and a copy of the complaint delivered to him.

AND

JUDGE RAMON LAFITTE,
He Is Sued In His Official Capacity, As A Judge, For The First Judicial District Court of Caddo Parish and can be served at, 501 Texas Street , Shreveport, Louisiana 71101. Pursuant to 4(j)(2)(B) of Federal Rules of Civil Procedure and LSA-R. S. 13:5107(D), he may be served with process by having a copy of a summons and a copy of the complaint delivered to him.

AND

JUDGE JOHN M. GUIDRY,
He Is Sued In His Official Capacity As Judge, For The Louisiana First Circuit Court of Appeal, and can be served at, 1600 North 3rd. Street, Baton Rouge, Louisiana 70802.  Pursuant to 4(j)(2)(B) of Federal Rules of Civil Procedure and LSA-R. S. 13:5107(D), he may be served with process by having a copy of a summons and a copy of the complaint delivered to him.

AND

JUDGE JAY B. McCALLUM,
He Is Sued In His Official Capacity As A Judge For the Louisiana Second Circuit Court of Appeal And/or As A Judge for the Louisiana Supreme Court, and he can be served at 400 Royal Street, New Orleans, Louisiana 70130.  Pursuant to 4(j)(2)(B) of Federal Rules of Civil Procedure and LSA-R. S. 13:5107(D), he may be served with process by having a copy of a summons and a copy of the complaint delivered to him.

## JURISDICTION AND VENUE

2.

Plaintiff, and L & M Hair Care Products, Inc. presently have several ongoing suits in the State Courts of Louisiana. They have suffered and are continuing to suffer great and immediate irreparable injury and damages, all as result of the Defendants' actions and/or inactions. The injury can be address by judicial relief. Therefore, through 42 U. S. C. 1983, Plaintiff brings this complaint seeking for: present and prospective Injunctions, along with a present and prospective Declaratory Judgments relief. In addition, Plaintiff requests for a present and prospective Writ of Mandamus to be issue to: Dr. SHAWN D. WILSON, Secretary for the Louisiana Department Of Transportation And Development and the same also be issued to CHARLES D. McBRIDE, the Real Estate Administrator for the Louisiana Department Of Transportation And Development. All the Defendants have denied Plaintiff and L & M Hair Care Products, Inc., their federal rights granted to them by the 1st and/or the 5th and/or the 14th Amendments of the U. S. Constitution, and by the Federal Civil Rights Statutes of 42 U. S.C. Section 1981; 42 U. S. C. 1982; 42 U. S. C. 1983; 42 U. S. C. Section 1985 (2) and (3), and 42 U. S. C. 1986.

3.

The Jurisdiction for this U. S. District Court is also granted based upon that this matter arises as a result of a federally funded project, the construction of I-49 in Shreveport, Louisiana and under the Ex Parte Young Exception, to the 11th

Amendment of the U. S. Constitution, all in accordance with the following cases:
Ex Parte Virginia, 100 U. S. 339; Mitchum v. Foster, 407 U. S. 225 (1972); Alberti
v. Klevenhagen, 46 F.3d 1347 (5th Cir.1995); Benjamin v. Malcolm, 803 F.2d 46
(2d Cir. 1986); Edelman v. Jordan, 415 U. S. 651 (1974); Board of Liquidation v.
McComb, 92 U. S. 531 (1876); Fitzpatrick v. Bitzer, 427 U. S. 445 (1976); Quern
v. Jordan 440 U. S. 332 (1979); Rhoades v. Penfold, 694 F.2d 1043 (U. S. 5th
Cir.1983); Papasan v. Allain, 478 U.S. 265 (1986); Kapps v. Wing, 404 F.3d 105
(2d. Cir. 2005); and Williams, et al., v. Tate Reeves in His Official Capacity As
Governor of Mississippi, et al., 954 F.3d 729 (5th Cir. 2020).

## PRESENT AND PROSPECTIVE RELIEF REQUESTED

As a result of the ongoing violation of federal laws, Plaintiff herein
requests for present and prospective relief for: Temporary Injunction and/or a
Permanent Injunction and/or several Declaratory Judgments, and/or a Writ of
Mandamus, and/or for all other relief allowed by law. This Complaint is
Challenging: the present unconstitutional actions and/or inactions and
the future unconstitutional actions and/or inactions of the officials of the State of
Louisiana. Their actions and/or inactions are in regards to the federal personal
rights of Plaintiff, an African-American Citizen. Some of Plaintiff's rights were
obtained from a partial legal purchase in a claim that L & M Hair Care Products,
Inc. has against the Louisiana Department of Transportation & Development. The

State Officials' actions and inactions are a continuation of many years of denying the federal rights granted to Plaintiff and/or to L & M Hair Care Products, Inc. by the following federal laws:

(1)The First Amendment of the U. S. Constitution grants Plaintiff an African-American and The Corporation that has all African-American stockholders the following: freedom of association; freedom of religion; freedom to enter into contracts with a corporation where all of the corporate stock are owned by all other African-Americans; freedom to receive benefits and/or to have access to court in connection contract with the corporation;

(2)  The Fifth & Fourteenth Amendments Of The U. S. Constitution grant Plaintiff and The Corporation, the Right To Notice Of The State's Taking Of Private Property;

(3) The Fifth & Fourteenth Amendments Of The U. S. Constitution grant Plaintiff and The Corporation The  Right To Equal Protection Of The Laws;

(4) Jurisdiction for this District Court is granted based upon 28 U. S. C.  Section 1343(3), (4);

(5) Jurisdiction is also available under the Declaratory Judgments Act, 28 U. S. C Section 2201 and/or 28 U. S. C. Section 2202;

(6)  Jurisdiction is also available Under 28 U. S. C. A. Section 2283, to protect a previously issued  federal judgment issued in a related federal suit;

(7)  Jurisdiction is furthermore available under 28 U.S.C. Section 1651; and

(8) Moreover, Jurisdiction is available under the U. S. Criminal Code of 18 U. S. C. Section 242.

**THIS MIDDLE U. S. DISTRICT COURT IS THE CORRECT VENUE**

4.

Venue is proper at this U. S. District Court under 28 U. S. C. Section 1391(b), because a substantial part of the events and omissions giving rise to this complaint occurred and continues to occur within this district; and because the majority of the defendants either reside in, maintain offices in, or are responsible for enforcing the federal laws relevant to this litigation in this district. Also, Venue is proper as a result that a Mandamus is requested to be issued to Dr. Shawn D. Wilson, the Secretary of the Louisiana Department of Transportation & Development, and also to Mr. Charles McBride the Administrator for the Louisiana Department of Transportation & Development. Please see LSA-R. S. 13:5104 (A), and see Anderson, et al., v. State of Louisiana, Kathleen Blanco, Governor, et al., 916 So.2d 431 (La.App.3rd Cir. 2005).

## PLAINTIFF HAS THE STANDING TO BRING THIS COMPLAINT:

5.

Plaintiff, Larry E. Clark is a sixty-six (67) year old African-American male, a lay person with a very limited education, and has standing to bring this action based upon there is an ongoing violation of federal laws in on-going state court cases filed in the 19th JDC of East Baton Parish, and in the 1st JDC of Caddo Parish, and which Plaintiff is a party in all of the cases. Plaintiff has suffered, and is continuing to suffer future great irreparable injury and damages. Plaintiff has standing to file this Petition based upon the following:

(1) In 2011 and/or in 20118 the state court in each of the ongoing state courts' cases have allowed for Plaintiff to be a party for his personal and individual capacity in each of the ongoing state courts' suits, as a result that in 2002, in accordance with Louisiana Code of Civil Procedure Article 698 and Code of Civil Article 2642, **Plaintiff purchased a partial legal interests in the claim of L & M Hair Care Products, Inc.,** (Hereafter "The Corporation"). The Corporation is a domestic corporation, incorporated under the laws of the State of Louisiana. The Corporation's claim arises as a result that in 1986, the Louisiana Department of Transportation & Development (hereafter "DOTD") filed three (3) separate expropriation (condemnation) proceedings to take various parcels of property for the construction of I-49 in Shreveport, Caddo Parish, Louisiana. The Corporation was the Lessee of all of the property, and in a building located on some of the expropriated property, before and at the time of filing of the expropriations, The Corporation was operating a Black hair care products manufacturing business on the property expropriated;

(2) Also is a party to the ongoing state court suits filed in 1st JDC of Caddo Parish, because **Plaintiff was the owner of all of the immovable private property that the Louisiana Department of Transportation & Development filed three expropriation (condemned) suits against Plaintiff in 1986 and Plaintiff has his separate personal rights as result of such actions**; and

(3) Plaintiff, as the Owner/Lessor of the all the immovable private property expropriated, has rights as the Lessor, regarding the leasing of his property to The Corporation.

6.

As a result of Plaintiff in 2002 having purchase a partial legal interest in the claim of The Corporation, there is presently ongoing litigation in five (5) state court suits. From May 2011, the 19th JDC of East Baton Rouge Parish and the 1st JDC of Caddo Parish have allowed for Plaintiff to proceed in the State Courts in regards to partial legal interests he obtained in the claim of The Corporation. Also, the following state trial courts have allowed Plaintiff to proceed In Formal

Pauperis and to file pleadings regarding his partial legal purchase in the claim of The Corporation: (1) <u>Larry E. Clark and L & M Hair Care Products, Inc., v. Frank Denton, et al.</u>, No. 425,690-D, 19th JDC of East Baton Rouge, Parish; (2) <u>State of Louisiana, Department of Transportation And Development v. Larry E. Clark, and Melvenia S. Clark</u>, No. 325, 511-A, 1st JDC of Caddo Parish; (3) <u>State of Louisiana, Department of Transportation And Development v. Larry E. Clark, and Melvenia S. Clark</u> No. 325, 512-A, 1st JDC of Caddo Parish; (4) <u>State of Louisiana, Department of Transportation And Development v. Larry E. Clark, and Melvenia S. Clark</u> No. 328,772-A, 1st JDC of Caddo Parish, consolidated; (5) <u>L & M Hair Care Products, Inc., et al., v. State of Louisiana, Department of Transportation And Development</u>, No. 363,679-A, 1st JDC of Caddo Parish; and Clark et al, v. Mangham, Hardy, Rolfs & Abadie, et al., #262, 381, 1st JDC of Caddo Parish. The Defendants are currently denying Plaintiff and L & M Hair Care Products, Inc. all of their federal rights granted to them by the U. S. Constitution and other federal laws.

7.

Also, from 1986 through this present time, the DOTD has refused to allow Plaintiff's his personal federal constitutional rights due to Plaintiff, based upon the leases and the lease options between Plaintiff as the Lessor, and The Corporation as the Lessee, for all their contracts were destroyed as a result of the DOTD expropriating Plaintiff's property in suits Nos. 325,511; 325, 512 and #328,772 that was the subject of the leases and lease options, between Plaintiff and The Corporation.

**PAST; PRESENT; AND PROSPECTIVE ILLEGAL CIVIL & CRIMINAL ACTIONS AND/OR INACTIONS OF THE FORMER CONTRACT ATTORNEYS FOR THE DOTD AS WELL AS OTHER OFFICIALS**

8.

Over the years, Plaintiff, as the President of The Corporation, and/or Plaintiff in his individual capacity, has refused to entertain any and all illegal offers made to Plaintiff and/or to The Corporation by the former contract attorneys for the DOTD. The two contract attorneys on several occasions stated to Plaintiff that there was a way for Plaintiff and The Corporation to have an estimate of money deposited into the registry of the court for the benefit of The Corporation as compensation due it through some secret agreement. Plaintiff perceived such statement and/or offer, to be a request for a Bribe, and/or, a request for a Kickback, in order for the DOTD to allow for Plaintiff and/or for The Corporation to receive all of their rights in regards to their leases and lease options regarding the private property that the DOTD expropriated in 1986.

**<u>INTRODUCTION TO THE HISTORY OF THIS MATTER</u>**

9.

For nearly thirty-five (35) years, Officials for the State of Louisiana have denied African-American private property owners, their Federal Rights regarding various money due to them, resulting from the expropriation (condemnation) proceedings filed by the DOTD, in 1986, for property for I-49. The Officials have also has denied a Corporation its federal rights. The federal rights have been denied, as a result that African-Americans owns all of the corporate stock of the

corporation and millions of dollars are owned to the corporate business.

10.

In this matter, on some days the Louisiana State Officials take the position that the African-Americans owners of all the private immovable property expropriated, and/or the Lessor of all the immovable private property, and The Corporation, the Lessee, of all the immovable private property, are one and the same person. Therefore as one and the same the leases and lease options are all invalid.

11.

The one and the same person position taken by the State Officials are based upon the fact that the African-Americans immovable private property owners, Plaintiff and Mrs. Clark, are African-Americans, and since their African-Americans children owns all of The Corporation's corporate stock, the Clarks and The Corporation cannot enter into a contracts and their contracts are all invalid.

12.

However, there are other days that some of the officials for the State of Louisiana, take the position that the African-Americans immovable private property owners, Plaintiff & Mrs. Clark, and The Corporation are separate persons. That's the position offered by the former contract attorneys to be taken, doing **the solicitation of a $200,000.00 Bribe from the African-American property owners, and/or from The Corporation.**

13.

Also, on some days, the DOTD and other State Officials of Louisiana

call state court suit No. 363,679 filed in the 1st JDC of Caddo Parish an Expropriation (Condemnation) proceedings. Then on other days, state court suit No. 363,679 is considered an Appropriation (Inverse Condemnation) proceeding.

14.

If State suit No. 363,679 is an Expropriation (Condemnation) proceedings then: advance notice and/or advance federal due process was required to be given to The Corporation and Plaintiff regarding the taking of leases/private property; advance federal equal protection of the laws was and is required; and advance millions of dollars representing the compensation for the leases were due in 1986, and/or is due at this present time, and must be deposited into the registry of the state court based upon state and/or federal constitutional compensation for the taking of The Corporation's private property in 1986.

15.

However, if suit No. 363,679 is an Appropriation (Inverse Condemnation) proceedings, then no advance federal notice is required, no federal equal protection of the laws are required and no advance money, representing federal compensation was required to be deposited into the registry of the court before a trial.

16.

This lawsuit sub judice seeks for Prospective Declaration and/or for a Prospective Injunction, and/or a Writ of Mandamus, as a result of the actions

and/or inactions of the officers and/or of the attorneys and/or for the employees of the DOTD; as well as the same for the actions and/or inactions of several State Court's Judges.

17.

The Defendants named in this complaint have all failed in their obligations to allow Plaintiff, Larry E. Clark, and The Corporation, to receive the rights granted to him and to The Corporation directly and/or indirectly by: the First Amendment of the U. S. Constitution; the Fourteenth Amendment of the U. S. Constitution; 42 U. S. C. 1981; 42 U. S. C. 1982; 42 U. S. C. 1983; and 42 U. S. C. Section 1985. These violations of federal rights began as a result of three (3) 1986 consolidated expropriation suits filed by the DOTD in the 1st JDC of Caddo Parish entitled, State of Louisiana, Department of Transportation And Development v. Larry E. Clark and Melvenia S. Clark, Nos. 325,511; 325,512 and 328,772, and is continuing even at this present time in March 2021.

18.

The First Amendment of the U. S. Constitution provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

19.

The Fourteenth Amendment of the U. S. Constitution provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens *of the United States*; nor shall any state deprive any person

of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection *of the* laws."

20.

Through the First Amendment and/or the Fifth Amendment and/or the Fourteenth Amendments, the following federal laws are available to Plaintiff and to The Corporation: 42 U. S. C. Section 1981; 42 U. S. C. Section 1982; 42 U. S. C. Section 1983; and 42 U. S. C. Section 1985.

21.

42 U. S. C. Section 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

22.

42 U. S. C. Section 1982 provides:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

23.

42 U. S. C. Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

24.

42 U. S. C. Section 1985 (2) and (3), and 42 U. S. C. 1986 provide in

pertinent parts: "(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; **or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to**

**enforce, the right of any person, or class of persons, to the equal protection of the laws;**

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

And 42 U. S. C. Section 1986:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action"

25.

This case has such a long and complex history, based upon systemic racism,

blatant discrimination, and governmental civil and criminal corruption resulting in

decades of prior state and federal litigation, and ongoing state litigation. It would require too much time to cover all of the events. But, there are many previously issued state and federal unreported and/or unpublished and/or published opinions that will give some of the extensive history that has been catalogued as a result of denying Plaintiff and The Corporation their federal rights.

26.

In addition to the practice of Systemic and Blatant Racism at the DOTD, by its employees and/or officials and/or contract attorneys and/or experts and/or agents and/or state judges actions to carry out a Conspiracy, to commit Bribery, to commit Extortion, to commit Fraud, and to commit other crimes, the DOTD has been successful in obtaining several **Illegal absolutely void Orders** and/or **Illegal absolutely void Judgments** issued by a state court and/or by a federal court.

27.

As a result of such absolutely void Court Order and/or an absolutely void Court's Judgment, the DOTD has repeatedly filed, and is continuing to file an exception of res judicata and/or exception of no cause of action, based upon such an absolutely void ruling, and resulting in Plaintiff and/or The Corporation not receiving their federal rights. Also, the continuation of the filing of the exception of res judicata has allowed many of the DOTD's former attorneys and present attorneys to milk the State Government and the

Federal Government for billable attorneys fees.

28.

However, the DOTD, before obtaining any of the absolutely void Court Orders and/or absolutely void Court Judgments, from 1984 through April 1986, the DOTD had always informed Plaintiff, his wife, and The Corporation that each of them had their own separate rights in the prospective expropriation of their property.

29.

But, later in 1986, after the DOTD's contract agents and/or the DOTD's officers and/or employees and/or attorneys and/or other representatives of the DOTD had visited the property, they became fully aware that all of the ownership rights of all the property needed for I-49 was owned by African-Americans.   At that point, their actions and/or inactions went into effect, to deny Plaintiff and The Corporation their federal rights as a result of their leases and lease options.

30.

During the visits to the property by the representatives of the state, Plaintiff and/or L & M Hair Care Products, Inc. were told by the DOTD's former officers, and/or employees, and/or former contract attorneys, and/or other agents of the DOTD, that all of Plaintiff's contract agreements as to the

various leases and lease options between Plaintiff and The Corporation were

all invalid, as a result that Plaintiff and The Corporation were one and the

same person.

31.

Sometimes later, after the three (3) 1986 expropriation suits had been filed

against Plaintiff and his wife only, then former contract attorneys, Mr. Ronald A.

Bertrand, with the law firm of Bertrand & Soileau, enrolled as the attorney of

record in the suits on behalf of the DOTD.

32.

Once the DOTD's contract attorney, Mr. Bertrand enrolled, he informed

Plaintiff and/or The Corporation were one and the same person and that if Plaintiff

and The Corporation were to be considered as separate persons, that would allow

for Plaintiff and/or The Corporation to get, "two bites off of the apple," which

would result in Plaintiff and The Corporation receiving millions of dollars in

compensation.

33.

The former contract attorneys for the DOTD also stated to Plaintiff that in a

deal for Two-Hundred thousand Dollars ($200,000.00), Plaintiff and The

Corporation could get "two bites off of the apple" which could allow a return of

millions of dollars.

34.

At time that Mr. Bertrand made that offer, Plaintiff and The Corporation acted if such statement was a joke and Plaintiff was not interested with no deal that could cause Plaintiff to be involved in the criminal violation of the law. The former contract attorney were hinting at a request for a **Bribe and/or a kickback for the former contract attorneys' benefit.** Therefore, based upon Systemic Racism, Governmental Corruption, Retaliation for Political Support, Retaliation for filing a Complaint with the Federal Highway Administration, the litigation regarding the 1986 expropriations (condemnations) suits filed by the DOTD, have been ongoing for decades.

35.

Plaintiff as a result of much intimidation and personal physical threat made directly to Plaintiff by the formers contract attorneys, Plaintiff moved from Shreveport, Louisiana in 1991, and moved to Atlanta, Georgia, and Plaintiff has resided in Georgia since that time.

36.

The ongoing litigation, some of it, is catalogued in the following state and federal cases: State, DOTD, v. Clark, et ux, Numbers 20,579-CA, 20580-CA, 20581-CA, consolidated, 548 So.2d 365 (La.2nd Cir.1989); L & M Hair Care Products, Inc. et al., v. State of Louisiana, DOTD, unpublished opinion #23,124-CA, 590 So.2d 122 (La.App.2nd Cir. 1991); L & M Hair Care Products, Inc., v.

State of Louisiana, DOTD, numbers, 25,154-CW, and 25,196-CW, 622 So.2d 1194 (La.Ap.2nd Cir. 1993), writ denied, 626 So.2d 1126 (La.1993); L & M Hair Care Products, Inc., et al., v. State, DOTD, #29,998-CA, 704 So.2d 415 (La.App.2d Cir. 1997); Clark et al., v. Mangham, Hardy, Rolfs, Abadie, et al, 733 So.2d 43 (La.App.2nd Cir. 1999);Larry E. Clark, President of L & M Hair Care Products, et al., v. State, DOTD, et al., unpublished opinion No. 2007-CA-1364(La.App.1st Cir. 5/2/2008), 2008 WL 2065248, writ denied, #08-C-1549 (La.10-10-2008); Clark et al., v. State, DOTD et al., unpublished opinion #2013 CA-0371 (La. App. 1st Cir. 11-08-2013), 2013 WL 5972214, writ denied, #08-C-1549 (La. 6-13-2013), writ of certiorari #14-6408, denied (12-01-2014); Clark, et al., v Pena, et al., USDC, Shreveport, #cv-1360, unpublished and unreported opinion #97-30715 (U. S. 5th Cir.6-30-1999 **certified copy attached in Supplemental Appendix, see  # Y** ); and Clark v. Pena, et al. unpublished opinion # 11-30724 (U.S. 5th Cir. 6-25-2012) 471 Fed. Appx. 398, 398-99 (5th Cir. 2012); In re: LARRY E. CLARK ,No. 14-31376 (U. S. Fifth Circuit 03/17/2015); and State of Louisiana, Department of Transportation And Development v. Larry E. Clark, et ux, consolidated with L & M Hair Care Products, Inc. et al., v. State of Louisiana, Department of Transportation And Development, 289 So.3d 226 (La.App.2nd Cir. 01/15/2020), writ denied No. 20-C-528 (La. 09/23/2020).  As of March 02, 2021, an application for reconsideration is presently pending at the Louisiana Supreme Court, for No.

2020-C-528.

37.

In the late seventies, African-American immovable property owners, Larry E. Clark and Melvenia S. Clark, envision starting a business, believing that they could make **hundreds of millions of dollars.  The Clarks** would manufacture, market, wholesale, import, export and distribute their own federally registered Trade Mark Brands for Black hair care products and skin care products. In addition, they would import many other hair and skin personal products to be sold.  Some of Clarks' products would, in some ways, be marketed along the multi-level marketing program similar to that of Mary K Cosmetics of Dallas, Texas, Avon, as well as several other multi-level marketing companies.  Also, some of the products would be marketed similar to the way other nationally known companies and Black owned businesses were marketing at that time, such as: Johnson Hair Care Products of Chicago, IL; Fashion Fair Skin Care Products; Soft Sheen; Pro-line; Dudley Products, and other businesses.

38.

The Clarks' black hair care business was started in the mid- seventies in Plaintiff's mother home.  Soon, in the seventies, Plaintiff moved the business from his mother home to the commercial building located at 1539 Pierre Avenue, Shreveport, Louisiana and the business grew exceedingly within a few years.

39.

Due to the growth of the business, Plaintiff purchased additional property directly adjacent to the business's 1539 Pierre Avenue location, all for the purpose of constructing additional buildings to increase manufacturing for the products to be sold locally, nationally as well as internationally.

40.

After acquiring the additional property and preparing to construct additional buildings, Plaintiff was requesting building permits from the City of Shreveport and Plaintiff was informed by the city that permits probably would not be issued because the DOTD was planning for the construction of I-49 through Shreveport.

41.

Later, in the late seventies and/or early eighties, the State of Louisiana, Department of Transportation And Development ("DOTD") and the Federal Highway Administration ("FHA") entered into a contract to build Interstate Highway 49 through Caddo Parish, Shreveport, Louisiana. In the contract, the FHA agreed to pay 90% of the entire cost for the highway project including the DOTD's attorneys fees, as a result of the project.

42.

Later around 1981 or 1982, the DOTD contacted Plaintiff and

informed Plaintiff that all of the business property may be needed for the construction of I-49 through Shreveport.

43.

From 1982 through April 1986, various employees and/or officers and/or agents for the DOTD communicated with Plaintiff and The Corporation orally and by various written letters informing Plaintiff and The Corporation that their property would be needed for the construction of the I-49 project; and their property would be appraised and later compensation would be offered.

44.

As a result of the steady continued growth of the manufacturing business, in 1984, the Clarks had the business of L & M Hair Care Products, Inc. incorporated under the laws of the State of Louisiana.

45.

Once the business was incorporated, The Clarks' children became the owners of all of The Corporation's corporate stock. Afterwards, The Corporation and the Clarks entered into various leases and lease options. The leases and options allowed The Corporation to lease everything from the Clarks from which the Clarks had previously run the business.

46.

Also, in 1984, as a result of the steady growth of the business, and since the business had been delayed for several years during the construction of the additional building on the additional previously acquired property, Plaintiff contacted Mr. Thomas Stephens at the Bossier City regional office of the DOTD, regarding early acquisition.

47.

Mr. Thomas Stephens, submitted an early acquisition request on behalf of the business but the request was denied.   Plaintiff was informed that the request had been denied based upon that the federal highway administration had put a hold on all the federal funds for the project, because at that time it was alleged that Mr. Paul Hardy, the Secretary of the DOTD, had mismanaged and/or misappropriated federal highway funds.

48.

The hair business became a member of the American Health And Beauty Aids Institute ("AHBAI").  AHBAI was a trade association made up of Black owned and operated manufacturing companies, consisting of approximately twenty companies. These minority owned hair care and skin care products companies had combined sales of over Five Hundred Million Dollars.

49.

In 1985, Mr. Thomas Stephens at the Bossier City, regional office of the DOTD contacted Plaintiff and informed Plaintiff that as a result that Paul Hardy was no longer Secretary of the DOTD, and that Robert Graves had become the new Secretary for the DOTD, that the Federal Highway Administration had removed the hold off of the federal funds.  Therefore, the DOTD had approved the business's earlier submitted request for early acquisition of the property.

50.

Later in 1985, Mr. George B. Land, the Real Estate Administrator, at that time for the DOTD, contacted Plaintiff and The Corporation providing them with their property parcels numbers for the planned I-49 project and to which the DOTD had granted contracts to several real estate appraisers to prepare appraisal reports for Plaintiff and The corporation's property.

51.

Around May 1986, two of the DOTD's contract Appraisers, Mr. Keith Everett, and Mr. B. Dan Crooks, appeared at the 1539 Pierre Avenue property to perform their appraisal reports for the DOTD.  Throughout various visits to the property the two continued to make various racial jokes and very hateful racial statements regarding various elected African-

32

Americans elected officials in Louisiana and elsewhere.

52.

Mr. Everette and Mr. Crooks both made mention to Plaintiff as to their disapproval of some African-Americans attorneys in Louisiana that had and/or were about file a suit against the State of Louisiana to allow for African-Americans to be elected as state judges, instead of being appointed by a Governor of Louisiana.

53.

In addition, on that same visit, Mr. Everett and Mr. Crooks were both extremely upset that the Rev. Jessie Jackson had run for President of the United States in 1984 and they believed that Rev. Jackson planned to run again for the office of the President in 1988.

54.

Plaintiff informed Mr. Everett and Mr. Crooks that Plaintiff had personally voted for the Rev. Jessie Jackson in 1984 and had plans to support Rev. Jackson in 1988, if He would decide to run again in 1988.

55.

In response, Mr. Everett and Mr. Crooks informed Plaintiff that they would make sure that Plaintiff and The Corporation did not receive to much money for the taking of the property because that would be more money for Plaintiff and

The Corporation to have to make financial contributions to the campaign of the Rev. Jessie Jackson.

56.

Also, at that time of the visit to the Plaintiff's property in May 1986 by Mr. Everett and Mr. Crooks, they informed Plaintiff that Plaintiff and The Corporation were one and the same person and therefore, they would only prepare an appraisal report regarding the property value for Plaintiff and his wife.

57.

After Mr. Everett and Mr. Crooks had finished their appraiser reports, the DOTD had an additional contractor, Courtney & Associates to appear on Plaintiff and The Corporation's property to present to Plaintiff and his wife offers for their several parcels of property, needed for I-49.  The offers were based upon one of the appraisals performed by Mr. Everett or by Mr. Crooks.

58.

Plaintiff denied the offers presented by Courtney & Associates on behalf of the DOTD.

59.

Later, the DOTD began in August 1986, to file three (3) separate expropriation suits against Plaintiff and his wife.

60.

However, in May 1986 Plaintiff and L & M had one of their Leases

Agreement/Contracts, recorded into the Public Records of Caddo Parish.

61.

In May 1986 and in August 1986, the following Louisiana laws

regarding leases were in effect. LSA-C. C. art. 2697, provided in pertinent part:

"Total or partial destruction of thing during lease

If, during the lease, the thing be totally destroyed by an unforseen [unforeseen]
event, or it be taken for a purpose of public utility, the lease is at an end. If it be
only destroyed in part, the lessee may either demand a diminution of the price, or a
revocation of the lease."

62.

Also in effect in 1986 was what was known as the Public Record

Doctrine Laws, LSA-C. C. Art. 1839; LSA-R. S. 9:2721; LSA-R. S. 9: 2754-56.

They provided as follows:

"Art. 1839 Transfer of immovable

A transfer of immovable property must be made by authentic act or act under
private signature ...

An instrument involving immovable property shall have effect against third
persons only from the time it is filed for registry in the parish where the property is
located.

La.**R.S.** 9:2721 provides:

No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or
mineral lease or other instrument of writing relating to or affecting immovable
property shall be binding on or affect third persons or third parties unless and until

filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties. La.Rev.Stat.Ann. § 9:2721 (West 1965).

La.R.S. 9:2754 provides:

"No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated."

La.**R.S. 9:2756** provides:

All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording."

63.

Also in effect at the time of the filing of the three (3) expropriation suits by

DOTD in 1986 was the former version of LSA-C.C.P. art. 641.   It provided:

"Art. 641.   Compulsory joinder;   indispensable parties

Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.

""**No adjudication of an action can be made unless all indispensable parties are joined therein.**""

64.

Furthermore in effect at the time of the filing of the 1986 expropriation

suits, was La. CCP art. 1880, and it provides in pertinent parts:

"Art. 1880.  Parties

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

65.

Before the filing of the three (3) 1986 expropriation suits by the DOTD, the DOTD, through its officials and/or its employees, provided orally and through various letters written to the Clarks as property owners and to The Corporation, informed immovable property owners Larry E. Clark, Melvenia S. Clark, and The Corporation, namely L & M Hair Care Products, Inc., through its President, Larry E. Clark, that the DOTD was in need of their property for the construction of I-49 in Shreveport.  The forwarded separate letters stated that the DOTD had ordered for appraisal reports to be performed for the Clarks' property and for The Corporation's property.

66.

Later after the DOTD had mailed the letters to the Clarks and to The Corporation, several employees and/or agents, and/or representatives, and/or attorneys representing the DOTD appeared at the buildings located on the property to be expropriated.  At that time and before, the building was begin occupied by The Corporation; it was operating its Black hair care products manufacturing business in the building on the property.

37

67.

While the DOTD representative was visiting the property, Larry E.

Clark, as the President of L & M, was informed that L & M Hair Care Products

Inc., had no separate rights as a result that the Clarks, as the immovable property

owners, could not lease their immovable property to the family owned corporate

business that was operating the business on the property.

68.

The representative of the DOTD stated that the reason that The

Corporation had no separate rights, because the Clarks' children owned all of the

corporate stock of The Corporation, and because the Clarks, personally,

owned all of the immovable property. Therefore, the Clarks and The Corporation

were all one and the same person; and had one and the same right.

69.

Also, around May 1986 or June 1986, two private contract appraisers for

DOTD, Mr. Dan Crooks and Mr. Keith Everette appeared on the property.  They

appeared for an inspection of the property for the preparation of the appraisal for

immovable property owners Larry E. Clark and Melvenia S. Clark.

70.

Mr. Crooks and Mr. Everette also informed The Corporation that no

appraisal would be performed by them for The Corporation, because of the

relationship between The Corporation and The Clarks.

71.

While Mr. Crooks and Mr. Everett were at the property making their appraisal reports these two defendants constantly made racial jokes about the Rev. Jessie Jackson and his past run for President in 1984 and his planned run for President in 1988. They too had problems with other black people in the State of Louisiana trying to become Judges in the State.

73.

Around June 1986, on behalf of the LDOTD, Courtney & Associates, appeared at The Corporation's office offered The Corporation $2500.00 for moving expenses, only. At that same time, Courtney & Associates informed the corporation that it could not and would not receive any other type compensation. The representative stated that The Corporation was a family owned business since the Clarks were the owners of the immovable property. Larry E. Clark as the President, of The Corporation declined to accept the $2500.00 moving expenses offered for The Corporation.

74.

Also on that same visit, the representative of Courtney & Associates, the representative made an offer of about $114,000.00 to the Clarks for their property that was to be expropriated. The offer presented to the Clarks was also rejected.

75.

After the corporation and the Clarks had rejected the offers made by Courtney & Associates, later on or about July 31, 1986, the DOTD's attorney, Mr. Ray Dry, on behalf of the DOTD, filed two expropriation suits, #325,511 and #325,512, only against Larry E. Clark and Melvenia S. Clark.

76.

Immediately, the Clarks and The Corporation retained counsel for the matter. They retained the service of Attorney Robert L. Ledoux. Attorney Ledoux was a former attorney employed by the DOTD.

77.

The two suits were forward to Attorney Ledoux, and after he had reviewed the suits and communicated with his former: colleagues attorneys, officials, and/or other employees of the DOTD, Attorney Ledoux informed Plaintiff and The Corporation that the Clarks and The Corporation were operating an owners occupied, ongoing business.

78.

Later, Mr. Robert L. Ledoux, filed an "ANSWER" on or about August 15, 1986, in suit #325, 511, on behalf of the Clarks only. Suit #325,511, was the suit that expropriated the building that housed the hair care business. At paragraph number IV., in the "ANSWER," it provides:

"Defendants further show that they have suffered and continue to suffer business loss in that they will be forced to completely reestablished their business at another location and will incur expenses as a result of same totaling FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500.000.00)."

79.

Also on August 15, 1986, Mr. Robert L. Ledoux, filed an "Answer" for the Clarks only in expropriation suit No. 325, 512.

80.

Then, Mr. Robert L. LeDoux, filed an "Answer" for the Clarks only in expropriation suit No. 328,772.

81.

Later on or about December 11, 1986, Mr. Robert L. LeDoux filed on behalf of the Clarks only, in suit #325,511 an "AMENDED ANSWER."   At paragraph 1., it provides:

"1.

Defendants wish to amend Paragraph IV of the Answer which was filed on August 15, 1986, so as to make that paragraph read as follows:

"IV.

Defendants further show that they suffered and continue to suffer business loss by virtue of the State's failure to timely expropriate the property and by virtue of the fact that they will be forced to completely reestablished their business at another location and will incur expenses as a result thereof, said damages being in the sum of ONE MILLIION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,500.000.00)."

82.

Each "ANSWER" filed by the attorney for the Clarks, was based upon that the DOTD had informed the Clarks and The Corporation that they were operating an owners-occupied, ongoing business, on the expropriated property. Therefore, Clarks were in the need of replacing their owners occupied, ongoing business facility.

83.

In January 1987, The Corporation came under threat of eviction by the DOTD, as the DOTD requested for The Corporation to pay the DOTD $3000.00 monthly for the renting of the building located on the expropriated property. The Corporation responded that it should not have to pay any rent because it had not been paid for its leases and lease options it had with the Clarks. As a result of alleging racial discrimination and by contacting various public elected officials, The Corporation was required to enter into a month-to-month Lease Agreement with the DOTD for about only $800.00 monthly.

84.

After the "Answers" were filed, later, the three (3) suits were consolidated, and a "JOINT PRETRIAL STATEMENT" was filed which listed the names of all the parties in the three (3) 1986 consolidated suits; the various witnesses who were to appear at trial to testify; etc.

MR. EVERETTE ORDERED TO SUPPLEMENT HIS APPRAISAL

85.

As a result of various complaints made by Plaintiff to the DOTD regarding the racial jokes the DOTD's representatives had made to Plaintiff and complaints regarding the amount of money of the appraisal reports, the DOTD directed its contract appraiser, Mr. Everett to perform a supplemental appraisal report.  The May 1987, supplemental appraisal report increased the appraisal of the Clarks' property for an additional $53,000.00.

86.

Later, Attorney Ronald Bertrand, a contract attorney for the DOTD enrolled in the three (3) 1986 filed suits as counsel for the DOTD.  Once he enrolled, he made many visits to the property.  As Mr. Bertrand made several visits to the property alone, stating that he had other cases in the city; therefore, he decided to just stop by to visit Plaintiff.  On those trips he made statements to Plaintiff regarding how a deal could be made that would allow for Plaintiff to receive the maximum amount of money as compensation. Plaintiff took such statement to be a request for a bribe and/or a kickback. However, Plaintiff did not trust the attorney and never responded to Mr. Bertrand whenever he made such remarks because to Plaintiff, Mr. Bertrand appeared to be a crook and perhaps even a racist.

87.

Unfortunately, Plaintiff did not trust Mr. Bertrand nor any of the officials for the State of Louisiana as a result of the many rumors from people in the community as well as the news stories. The rumors and the news were about the various Bribes and/or Kickbacks regarding the Public officials of Louisiana.

88.

Later at the DOTD, after former Secretary Paul Hardy had resigned, and Robert Graves had become the Secretary of DOTD, it was not too long afterwards that Secretary Graves was convicted in federal court for corruption. See, U. S. A v. Robert Graves, 5 F.3d 1546 (U. S. 5th Cir. 1993).

89.

After Plaintiff had refused to respond to Mr. Bertrand's several hints that Plaintiff had taken to be an attempt to request a bribe and/or a kickback, later Mr. Bertrand appeared to have a big problem with Plaintiff and all black people. Later, whenever I was in his presence, he always had to make negative jokes about black people. He told Plaintiff, directly, that he did not know that "You People even had the knowledge on how to manufacture anything."

90.

Also, Mr. Bertrand did not approve of the Rev. Jessie Jackson running

for the President of the U. S. A in 1984, or that Rev. Jessie seemed to have

been at that time, planning to run for the office of President in 1988. It

appeared that Mr. Bertrand disliked all Black public officials. He refused to

attend a settlement meeting with one of Plaintiff's retained co-counsel,

attorney, Mr. Willie Singleton. Mr. Singleton who was at the time a close

friend of Plaintiff and a Louisiana State Representative, that was representing

a district in the Shreveport, Louisiana.                    91.

Mr. Bertrand, during the entire time that he represented the DOTD,

also continually informed Plaintiff that The Corporation had no separate

rights in the expropriation matter. Mr. Bertrand also stated that since

Plaintiff and his wife owned the immovable property, and as a result that

Plaintiff's children owned all of the corporate stock, the family was operating

an owners occupied, ongoing business; and The Corporation and Plaintiff and

his wife were legally, one and the same person.

92.

Later, Plaintiff's attorney, Mr. Robert L. LeDoux presented several

written settlement offers to Plaintiff. In regards to all of the settlement documents

presented to Plaintiff that required for Plaintiff and his wife's signature,

Plaintiff presented the documents to Attorney Singleton for a second opinion on

all settlement documents. Afterwards, Plaintiff refused to sign any of the

documents presented, and refused to give Attorney Robert L. LeDoux any

authorization to sign any document regarding settlements on behalf of

Plaintiff and his wife as well as on behalf of The Corporation.

93.

Once the Clarks had refused to sign any of settlement documents

presented, later on November 19, 1987, Plaintiff received a letter from

Attorney Mr. Robert L. Ledoux requesting $260.00 for the costs of subpoenas

to be issued to various Plaintiff's witnesses that were to appear at the trial to

testify regarding the: economic losses; business losses; and the costs to replace the

building and/or renovate a replacement facility on behalf of the Clarks'

business.

94.

On about November 24, 1987, Larry E. Clark forwarded to Attorney

Ledoux a check in the amount of $240.00 for the subpoenas to be issued.  It

was $20.00 less than the amount requested because one witness, who lived in

Shreveport, had informed Plaintiff that he would be present and a subpoenas

would needed not to be issued for him.  Mr. LeDoux received the check in the

amount of $240 and he cashed the check.

95.

Later, in December 1987, Attorney Ronald J. Bertrand, on behalf of

LDOTD, prepared a "JOINT STIPULATION" and at paragraph number 6., it

provides:

"6.

In consideration of the waiver of a jury trial by the State and the foregoing stipulations, the defendants judicially admit that they have not suffered and will not suffer any other pecuniary loss as a result of the expropriation of their property and for the construction of the project other than those set out above.   This admission includes, but is not limited to, any claims of economic loss, loss of business, loss of income or expenses involved in moving to another location.  Defendants further agree that this paragraph appies not only to **them but also to the corporation owned by them, namely L & M Hair Care Products, Inc.**"

The Clarks' attorney, Robert L. Ledoux, signed the "JOINT STIPULATION"

on behalf of the Clarks, and Attorney Ronald J. Bertrand signed the "JOINT

STIPULATION" on behalf of the LDOTD.

96.

Later, on or about January 20, 1988, Mr. Ledoux on behalf of Plaintiff and

Plaintiff's wife filed into the three (3)1986 expropriation suits a "PRE-TRIAL

MEMORANDUM OF DEFENDANTS, LARRY E. CLARK AND MELVENIA

SANDERS CLARK" that provided in pertinent part:

"Prior to the expropriation of their property, Defendants operated a business on the site consisting of the manufacture, distribution and sale of black hair care products,"

97.

Shortly afterwards, on or about February 8, 1988, Mr. Robert L. Ledoux

filed into the suits a " SUPPLEMENTAL PRE-TRIAL MEMORANDUM OF

DEFENDANTS, LARRY E. CLARK AND MELVENIA SANDERS CLARK"

that provided in pertinent part:

"The testimony of Mr. Clark will show that Mr. Clark produces hair care products, components are which are initially of a flammable nature........."

98.

Former contract counsel on behalf of the DOTD, also filed a "PRE-TRIAL MEMORANDUM ON BEHALF OF STATE OF LOUISIA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT" and it provided in pertinent part of the first paragraph:

"Several of the parcels were vacant and not in use at the time of the expropriation. One of the parcels had improvements thereon which were used by the defendants in the operation of a business known as L & M Hair Care Products, Inc..........."

99.

Afterwards, a trial on the merits was held beginning on February 8, 1988; where evidence and expert testimony was taken, as well as the testimony of Plaintiff. **AT THE TRIAL, DOTD'S EXPERT MR. EVERETT TESTIFIED THAT THE Clarks' PROPERTY had a VALUE of $260,000.00, which was nearly an additional $160, 000.00 increase from his original appraisal report of $114,000.00, and an additional $100,000.00 increase from his the May 1987, supplemental appraisal.**

100.

At the end of the trial on the February 1988 trial on merits, the Trial Court ordered the parties to file Post-Trial Briefs.

101.

On or about February 19, 1988, Attorney Robert L. Ledoux on behalf of Plaintiff filed a "POST –TRIAL MEMORANDUM OF DEFEDNANTS, LARRY E. CLARK AND MELVENIA S. CLARK." It provided on page one (1) in pertinent part:

"<u>FACTS</u>

These consolidated cases involved the taking of the entirety of /Defendants' owner-occupied, ongoing business……………………………………"

On page four (4) in pertinent parts it provides:

"Two interpretations of the constitutional mandate involve takings of the entirety of an owner-occupied ongoing business as in the case at hand…………………."

Also see pages: 5, 6. 7, 8, 10, 11, 12, 13 and 14, where it is alleged that Mr. Clark was operating his owner occupied, ongoing business, and his business must be awarded the cost to purchase and/or to renovate a replacement facility.

102.

Later, on or about March 4, 1988, on behalf of the DOTD, contract attorney, Mr. Charles E. Soileau, the law partner of Attorney Ronald J. Bertrand, filed a "POST TRIAL MEMORANDUM ON BEHALF OF STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION & DEVELOPMENT." On page one (1), it provides in pertinent parts:

49

"<u>FACTS</u>

Plaintiff herein expropriated three (3) parcels from defendants for the construction of the urban segment of I-49.  The parcel taken in Docket Number 352,511 involved parcels of land on which defendants' business, L & M Hair Care Products, Inc. (hereinafter called L & M ) was situated........................"

On page three (3), the Post Trial Memorandum provides in pertinent part:

 "Mr. Clark attempted to show that it was essential to his business...............Mr. Clark 's reasoning was that: (1) he needed to be located near city bus lines because many of his customers and employees used the public transportation system to get to his business;  that (2) one-third (1/3) of his business was "walk-in" retail customers;  and, (3) his business of selling black hair care products, was geared to sell only to the black community."

On page six (6) in pertinent parts, the LDOTD's Post Trial Memorandum provides:

"**it is important at this juncture to note that Mr. Clark's business, L & M Hair Care, was by his admission, a corporation that leased the subject property by verbal lease**.......there was no testimony from any party concerning losses of rental income to Mr. Clark (i.e. amount).  There was however, a joint stipulation that Mr. Clark and L. & M. Hare Care suffered no business loss as a result of the taking…"

On page seven (7) in pertinent parts, of the DOTD's Post Trial Memorandum

provides:

"In <u>Shannon-Page</u>  ( a total taking) the court found that even though the landowner/lessor had all of its rented warehouse taken, it could have taken the money and reinvested it.  Since Mr. & Mrs. Clark are the **landowners/lessors**, they too have the option of taking One hundred eighty-six thousand nineteen and No/100 ($186,000.00)  Dollars and reinvesting` it in whatever fashion they deem necessary.  They can even buy and renovate a nicer, newer and more modern and functional facility on Lakeshore Drive and **lease it to their corporation, L & M.**"

On page thirteen (13) in pertinent parts of  the DOTD's Post Trial Memorandum

provides:

"CONCLUSION

It is the position of DOTD that Mr. Mrs. Clark have failed to prove that they are entitled to a replacement facility. First, **Mr. & Mrs. Clark are stockholders of a corporation, not owners of a sole proprietorship.** Second, **the corporation is not a party to these suits even though Mr. Clark alleges by answer to the petition that HE will suffer business loss**…(Mr. Clark testified that the corporation was formed in 1984)"

103.

Later, on June 3, 1988, the trial court issued an "OPINION" and in

pertinent part, it provided on page -1-:

" OPINION

Plaintiff herein expropriated three (3) parcels from defendants for the construction of the urban segment of I-49. The parcel in Docket Number 325,511 involved parcels of land on which defendants' business L. & M. Hair Care Products, Inc. hereinafter called L & M) was situated……… …………………………………"

On page -2- in pertinent part the OPINION provides:

"This case involves the taking of the entirety of an owner-occupied on-going business…………………………………… Similar to standard printing case, the Defendants herein have the need to relocate their business………………………..."
Then, on June 24, 1988, the Trial Court for the OPINION, issued a Judgment awarding the Clarks, the immovable property owners the full replacement cost to

construct and/or to purchase a replacement facility.

104.

Thereafter, on August 08, 1988, Mr. Charles E. Soileau, the former contract

attorney on behalf of the DOTD, filed an eviction suit #345,582, against

The Corporation in the 1st JDC of Caddo Parish, seeking money for past due

rent of over $12,835.00, as a result of the lease the DOTD had forced The

Corporation to entered into in January 1987.  <u>State of Louisiana , Department

of Transportation And Development  v. L & M Hair Care Products, Inc.</u>

105.

Also, the DOTD's contract attorney, Mr. Charles E. Soileau, filed an

appeal and  to the Louisiana Second Court of Appeal for the Judgment issued in

June 1988 by the trial court.

106.

On or about December 23, 1988, Mr. Charles E. Solieau, filed an Original

Brief  for the appeals: Docket Numbers 20, 579; 20, 580; and 20;581 consolidated.

The Brief made it clear to the Appellate Court: that  L & M was a corporation and

was a legal separate entity from the Clarks; that The Corporation was a tenant of

the Clarks; that The Corporation was the entity operating the hair care business;

and that The Corporation was not a party to the expropriation suits.

107.

The Brief for the DOTD provided in pertinent parts, beginning on page 2.,

in the first paragraph:

"<u>FACTS</u>

The State of Louisiana, Department of Transportation & Development

expropriated three (3) parcels of land from Mr. Larry Clark and his wife in 1984

(year In Correct ).    One taking involved a complete taking of the land and improvements on which Mr. Clark's business, **L & M Hair Care Products, was conducted**.    Mr. Clark and his wife **leased the property to the corporation and were the owners of the corporation**................................................................"

On page 3., in pertinent part, it provides:

"At trial defendant produces the testimony of Mr. Larry Clark, the landowner of **the corporation which leased Mr. Clark's property**.................................
.....................................................................................
There was no testimony from any expert concerning the value of the business **(only a tenant anyway) known as L & M Hair Care Products, Inc.............."**

On page 10., in pertinent part, it provides:

"Mr. Clark's business (which was **only a tenant and not a party to this lawsuit**)....................................................................."

On page 11., in pertinent parts, of the first paragraph, it provides:

"Mr. Clark himself testified that the Pierre Avenue-Allen Avenue areas and the Lakeshore Drive areas of the black community of Shreveport would provide these requirements for his business (i. **e. the separate entity know as L & M Hair Care Products, Inc.)**.............................................................
......................................................................................
There was no testimony that the building owned by the Clarks and leased by L & M Hair Care Products, Inc.,...................................................."

On page 12., in pertinent part, it provides:

"In this case Mr. Clark was a Lessor who leased a building to a business which also happened to be owned by him.  All of the evidence showed that the **corporation** Relied on the black community for its business.  While Mr. Clark was the owner of this business,  **it is a separate legal entity and was not a party in any way to this litigation**.

The question that should properly be posed is, "what amount of money would place Mr. Clark, as a Lessor, in the same position..............................."

On page 18., at the last paragraph, it provides:

"The law does not require that Mr. Clark be given a "green poultice" to cure his ailing concentration.  The law requires that he be placed in the same position, pecuniarily, after the taking as he was before the taking.   Mr. Clark was a lessor. He happened to lease his property to his corporation.  **That corporation is not a party to this suit.**"

On page 20,at the last paragraph, it provides:

It is respectfully submitted that this case is not one that call for DOTD to but this landowner-**lessor a replacement facility**. .............................................."

108.

The DOTD's Brief heavy relied upon the December 28, 1987 "JOINT

STIPULATION" that the DOTD's contract attorney, Mr. Ronald J. Bertrand, had

prepared.  On page 2., it also provides:

"In this Joint Stipulation the defendant-landowner reserved the right to present evidence as to the cost to purchase or construct a replacement facility...............
.......................................................................................................

Finally, in the Joint Stipulation the defendants judicially admitted that they have not suffered and will not suffer any other pecuniary loss as a result of the expropriation of the property and the construction of the project, including losses caused by claims for economic loss, loss of business, loss of income or expenses involved in moving to another location. (Emphassis supplied).  (Suit #20, 580; Tr. P. 106)"

On page six (6), the "JOINT STIULATION" provides:

"ARGUMENT

ASSIGNMENT OF ERROR #1
THE TRIAL JUDGE ERRED BY IGNORING THE JOINT
STIPULATION AND REWARDING CERTAIN MOVING
EXPENSES AND ATTORNEY FEES TO DEFENDANTS IN

DEROGATION OF THE TERMS OF THE JOINT STIPULATION.

The Joint Stipulation of the parties contains the following explicit language:

"6.

In consideration of the waiver of a jury trial by the State and the foregoing stipulation, the defendants judicially admit that they have not suffered and will not suffer any other pecuniary loss as a result of the expropriation of their property and construction of the project other than those set out above.  This admission includes, but is not limited to, any claims for economic loss, loss of business, loss of income or expenses involved in moving to another location.   Defendants further agree that this paragraph **applies (sic) not only to them but also to the corporation owned by them, namely L & M Hair Care Products, Inc."** (#20580; Tr.  Pg.  105-106)  Emphasis Supplied).

**"It is hornbook law that a written stipulation of the parties is enforceable, is the law of the case as to stipulated items and acquires the quality of a Thing  adjudged.**

**Clearly, the awards made for replacing defendant's outdoor electric sign ($3,513.00), for replacing defendants' telephone system ($7, 484.90), and for moving the tenants'  inventory ($6,383.00) are expenses involved in moving to another location."**

109.

Later, on August 23, 1989, the Louisiana Second Circuit issued consolidated opinions for the three (3) 1986 expropriation suits filed against the Clarks by the DOTD.   The opinion agreed with the DOTD and ruled that L & M, The Corporation, was a legal separate entity from the Clarks; that The Corporation was not a party to the three expropriation suits; and as such The Corporation could not be awarded any compensation. State, DOTD v. Clark, et ux., 548 So.2d 365

(La.App.2nd Cir. 8-23-1989), writ denied, 552 So.2d 395 (La.12-01-89).

110.

In 2017, Plaintiff filed into the original three (3)1986 consolidated filed

expropriation suits, a Petition for nullity and a Rule To Show Cause seeking nullity

of the 1986 proceedings. They sought for the absolute nullity: (1) for all

proceedings to be declared absolutely void based upon the court's lack of subject

matter Jurisdiction and other grounds; (2) for the 1987 "JOINT STIPULATION"

to be revoked; (3) for the 1988 Final Judgment issued in the three suits to be

declared absolutely void; and (4) for the February 4, 1997 Judgment issued in

expropriation suit, L & M Hair Care Products, Inc., et al., v. State of Louisiana,

DOTD, No. 363, 679, 1st JDC of Caddo Parish to be declared absolutely void, also

based upon the lack of subject matter jurisdiction and for the lack of citation and

service.

111.

On February 5, 2018, the Trial Court held a trial on Plaintiff's Rule To

Show Cause and on the DOTD's exception of res judicata, filed as to Plaintiff's

Rule and Petition for nullity.  In open Court on February 5, 2018, the Trial Court

orally ruled to deny nullity and ruled to grant the DOTD's exception of res

judicata, based solely upon a February 4, 1997 Judgment issued in the 1990 filed

expropriation suit, #363,679.

112.

On February 23, 2018, Plaintiff filed into the three (3) 1986 consolidated suits a **"REQUEST FOR WRITTEN NOTICE"** of all Orders and Judgments issued.

113.

Before a Judgment could be signed and filed for the February 5, 2018 oral ruling made by the Judge, Plaintiff filed a motion for a retrial; and later filed a motion to have the exception of res judicata declared unconstitutional because it violate the 5th And 14th Amendments of the U. S. Constitution, as to the granting of compensation for the taking of private property. The Trial Court set a trial date of April 23, 2018 for the motion.

114.

Later, in February 2018, Plaintiff also filed a Petition for nullity directly into the 1990 filed expropriation suit #363,679. The DOTD answered the suit also with an exception of res judicata. The Trial Court also sat the trial date for DOTD's exception of res judicata for trial also to be held on April 23, 2018, as well.

115.

On March 23, 2018, the Clerk of Court For Caddo Parish forwarded to Plaintiff a, "NOTICE OF JUDGMENT BY MAIL," thereby providing Plaintiff with a copy a Judgment that the court had signed on March 21, 2018 for the

three (3) 1986 consolidated expropriation suits that granted the DOTD an

exception of res judicata as a result of the hearing held on February 5, 2018.

116.

On the morning of April 23, 2018, before appearing in court for the trial

regarding the matters placed on the court's docket for that date, Plaintiff filed into

the three (3) 1986 consolidated expropriations suits an:

"PLAINTIFF-IN-RECONVENTION'S EX PARTE MOTION WITH AN ORDER
REQUESTING FOR THIS COURT TO TAKE JUDICIAL NOTICE OF THE
LAWS OF THE UNITED STATES; THE LAWS OF THE STATE OF
LOUISIANA; AND REQUESTING FOR THIS COURT TO OBTAIN SUBJECT
MATTER JURISDICTION BY ODERING THE DOTD TO MAKE L & M A
PARTY, ETC, IN THESE SUITS."

117.

Later, on the morning of April 23, 2018, the parties appeared in court; and

immediately in open court, the Trial Judge informed the counsels for the DOTD

that the Clerk of Court had just provided the court with the filed copy of Plaintiff's

Ex Parte Motion that had been filed that same morning.  Then Plaintiff, in open

court, presented the counsels for the DOTD with a copy of the Ex Parte Motion.

118

In open court, on April 23, 2018, the Judge and the parties agreed, not to

take up Plaintiff's recently filed Ex Parte Motion, but to only deal with those

matters that had been previously placed on the court's docket for a April 23, 2018

hearing.  The parties proceeded with their arguments and the presentation of

evidence regarding matters previously scheduled on the court's docket.

119.

Then, after the parties had finished, in open court, the Trial Judge orally ruled to reaffirmed his February 5, 2018, oral ruling and the Judgment issued on March 21, 2018 that granted the DOTD's exception of res judicata. The trial court also denied Plaintiff's requests to have the exception of res judicata declared unconstitutional as a result that the DOTD's orally requested for an exception of Lis pends be granted based upon pending suit #425,690-D, in 19th JDC of East Baton Rouge Parish, entitled, <u>Larry E. Clark and L & M Hair Care Products, Inc., v. Frank Denton, Secretary of the Louisiana Department of Transportation And Development , et al.</u> Additionally in court, the Judge orally ruled to deny Plaintiff's requests for nullity of all Judgments as well as Plaintiff's request for the 1987 "Joint Stipulation" to be revoked;  the court denied Plaintiff's motion for a new trial as to the hearing as to the March 21, 2018 Judgment issued by the Court that previously granted res judicata to DOTD.

120.

Later, the Clerk of Court for Caddo Parish forward to Plaintiff  a "NOTICE OF JUDGMENT BY MAIL," along with an attached copy of the Judgment signed on May 24, 2018, by Judge for suit #363,679.

121.

Then, the Clerk of Court for Caddo Parish forwarded to Plaintiff a

"NOTICE OF JUDGMENT BY MAIL," issued on May 29, 2018 for the three (3)

1986 originally filed expropriation suits Nos. 325,511; 325, 512 and 328,772

consolidated.

122.

After receiving the Notices, Plaintiff filed an appeal to the Louisiana Second

Circuit Court of Appeal for all three (3) following Judgments: the March 21, 2018

Judgment, and May 29, 2018 Judgment issued by the Trial Court for the three

(3)1986 suits, Nos. 325,511; 325, 512 and 328,772 consolidated; and the May 29,

2018 Judgment issued by the Trial Court for suit #363,679.

## SYSTEMIC RACISM AND/OR INSTUTIONAL RACISM IS PRACTICED BY SOME JUDGES AT THE LA SECOND CIRCUIT COURT OF APPEAL

123.

After filing the appeals to the Second Circuit, before any party had filed a

Brief or any of pleadings, Plaintiff as a result of him being a minority, and having

been informed of a rumor that minorities do not get a fair appeal at the Louisiana

Second Circuit Court of Appeal, Plaintiff filed various motions, nearly all motion

were denied.  One such motion requested for the full court to hear Plaintiff's

appeals.   The court denied Plaintiff's motion.

124.

Plaintiff filed the motion requesting for an en banc hearing, based upon that Plaintiff was aware that Chief Judge Henry Brown of the Louisiana Second Circuit had recently abruptly resigned as a Judge for the appellate court. It was alleged that he had resigned as a result of corrupt practices among the Judges at the Louisiana Second Circuit Court of Appeal. One such case, alleging corrupt practices of Judge Brown, for money favors and illegal actives committed at the appellate in a case involving a very close friend of Judge Brown. The case was, Succession of Fred Langford Houston, 254 So.3d 836 (La.App. 2nd 2018).

125.

Another case that Plaintiff was aware of, and is a reason, that Plaintiff filed the motion requesting an en banc hearing. The case involved racism and/or corruption, in regards to the Judges at the Louisiana Second Circuit Court of Appeal, was the appellate court case of Mercer, LLC. v. State of Louisiana, Through The Department of Transportation And Development, et al., 222 So. 3d 1017 (La.App.2nd Cir. 2017). In the Mercer case, the attorney for the Plaintiff, a minority, business owner, thought that Judge Brown and the other two (2) Judges on the Panel, had ruled against the attorney's client, Mr. Mercer, based upon, that that Judge Brown's father who had previously been employed for many years at the Louisiana Department of Transportation And Development. However, it was

rumored that the true reason for the Judges' ruling, was that the attorney's client:

was a minority business owner; he had refused to pay a bribe and/or kickback to

the officials at the DOTD; had alleged racial discrimination in the sui DOTD; and

that in the trial court millions of dollars had been awarded by a jury to the

attorney's minority client.

126.

Later, on January 15, 2020, the Louisiana Second Circuit Court of Appeal

rendered consolidated opinions for Plaintiff's appeals that affirmed all the Trial

Court's Judgments.   However, the opinion did not address any of the grounds in

Plaintiff's Brief, as to the Assignment of Errors raised regarding Plaintiff's

Petitions requesting for nullity of all previously issued state judgments based upon

the lack of subject matter jurisdiction.

127.

The January 15, 2020 consolidated opinions considered only res judicata

and ruled to affirm based upon all the state and federal previously issued

judgments, and notwithstanding that Plaintiff attached to his Brief, a certified

copy of the U. S. Fifth Circuit's June 30, 1999 unreported and unpublished opinion

#97-30715 Clark, et. al., v. Pena, et al., where the appellate court ruled that the U.

S. District Court and the U. S. Appellate Court neither had no subject matter

jurisdiction in the matter.

128.

In fact, even though Plaintiff attached a certified of copy the U. S. Fifth

Circuit's June 30, 1999 unreported and unpublished opinion #97-30715 Clark, et.

al., v. Pena, et al., the January 15, 2020 consolidated opinions of the Louisiana

Second Circuit, 289 So.3d 226 (La.App.2nd Cir. 01-15-2020) rules in pertinent

parts:

"Clark did not heed the warnings of the federal appellate court. Later in June of
1999, the United States Court of Appeals, Fifth Circuit, **in an unpublished
dismissal without opinion, dismissed another appeal by Clark. See *Clark v.
Pena,* 189 F. 3d 467 (5th Cir. 1999). That appeal was in relation to a separate
federal suit by Clark and L&M against Federico Pena, the United States
Secretary of Transportation. *Id.*** Thereafter, but related to the dismissal by the
federal appellate court, in August of 1999, the federal appellate court issued an
unreported order citing its assessment of sanctions against Clark. See *Clark v.
Pena,* 1999 WL 34844548 (5th Cir. 1999). It approved and imposed $13,025.20 in
sanctions against Clark. *Id.*"

129.

After the Louisiana Second Circuit Court of Appeal issued the consolidated

opinions, Plaintiff filed at the appellate court, a Declinatory Exception for Lack Of

Subject Matter Jurisdiction.  The exception based upon that LSA-C.C.P.  Art. 641,

required for The Corporation to be named as a Defendant in the three (3)

consolidated 1986 filed suits.   The exception was immediately denied on January

28, 2020, by the one Judge that authored the opinions.

130.

Afterwards, Plaintiff filed a motion for reconsideration regarding the lack of

subject matter jurisdiction and requested for the full appellate court to consider

Plaintiff's Declinatory exception for lack of subject matter jurisdiction.   On

January 28, 2020, the same one Judge that authored the opinions, denied the

motion for the full court to consider the lack of subject matter jurisdiction.

131.

Immediately after this denial, Plaintiff filed a recusal motion requesting for

the three (3) Judges on the panel to be recused; and the motion requested for an En

Banc hearing as to the motion.   On February 28, 2020, the Second Circuit Court of

Appeal by an En Banc Court voted to deny the motion for recusal, except for

African-American, **Judge Stone.**

132.

Also on February 28, 2020, five Judges at the Louisiana Second Circuit

Court of Appeal issued a Judgment that denied Plaintiff's timely filed application

for a rehearing as to the January 15, 2020 opinions.  Also, on that same date, an

Order was issued by five Judges denying Plaintiff's timely filed application that

requested an en banc hearing for the consolidated opinions issued on January 15,

2020.

133.

Several months after the Louisiana Second Circuit had rendered the

January 15, 2020 opinions authored by Judge Jay B. McCallum, that refused to

address the lack of subject matter and the lack of personal jurisdiction of the trial

court raised in Plaintiff's Brief filed on appeal, in March 2020, Judge McCallum

authored the consolidated opinions issued by the Louisiana Second Circuit

Court of Appeal in Larkin Development North, LLC. v. City of Shreveport, 297

So.3d 980 (La.App.2nd Cir. 2020).

                                    134.

    Larkin Development North, LLC. v. City of Shreveport  is an

Appropriation (inverse condemnation) proceedings. The lack of subject matter

jurisdiction of the trial court was raised on appeal. In this appeal, Judge McCallum

fully addressed the trial court's lack of subject matter jurisdiction raised on appeal.

Notably interesting is the fact that: (1) this case was an appeal that involved a

company where White people were the owners of the business and the property at

issue; and (2) Judge Stone an African-American is one of the Judges on the panel

with Judge McCallum. This appears to explain why Judge Stone had refused to

participate regarding a vote on Plaintiff's February 2020 filed motion for recusal

regarding Judge McCallum.

                                    135.

    After the Second Circuit's rulings, Plaintiff filed a timely writ application

with the Louisiana Supreme Court. Later, on September 23, 2020, Plaintiff's writ

application No. 2020-C-528 was denied. Plaintiff filed a timely application for

reconsideration and it is presently pending as of March 2021.

136.

Later, Plaintiff discovered that all three (3) of the Trial Court's Judgments issued in 2018 for the four expropriation suits that were appealed to the Louisiana Second Circuit, were all Interlocutory Judgments that had not been certified for an immediate appeal.   Also, Plaintiff realized that he had never been served by the Clerk of Court with a ruling regarding Plaintiff's Ex Parte Motion filed into the three (3) 1986 consolidated expropriation suits on April 23, 2018.

137.

Plaintiff records indicated that Plaintiff on February 28, 2018 filed into the records of three (3) 1986 consolidated expropriation suits a "Request For Notice" as to any and all rulings issued by the trial court.

138.

As a result of never been served with notice a ruling for the Ex Parte Motion, on December 9, 2020, Plaintiff  forwarded a letter to the Caddo Parish Clerk of Court requesting for notice regarding any ruling made by the trial court for the Ex Parte Motion.

139.

Later, on January 16, 2021, Plaintiff filed into the three (3) 1986 consolidated expropriation suits a:

"LARRY CLARK'S DECLINATORY EXCEPTION FOR THE LACK OF SUBJECT MATTER JURISDICTION;MOTION TO STRIKE AND/OR MOTION FOR A REHEARING AND/OR  FOR A RETRIAL ON ALL

PREVIOUSLY ISSUED  INTERLOCUTORY JUDGMENTS AND ALL
PARTIAL JUDGMENTS AND INTERLOCUTORY COURT ORDERS;AND
FOR THE COURT TO STOP DENYING ALL FEDERAL'S RIGHTS
LARRY CLARK'S DECLINATORY EXCEPTION FOR THE LACK OF
SUBJECT MATTER JURISDICTION;MOTION TO STRIKE AND/OR
MOTION FOR A REHEARING AND/OR  FOR A RETRIAL ON ALL
PREVIOUSLY ISSUED  INTERLOCUTORY JUDGMENTS AND ALL
PARTIAL JUDGMENTS AND INTERLOCUTORY COURT ORDERS;AND
FOR THE COURT TO STOP DENYING ALL FEDERAL'S RIGHTS"

and the document had attached to it a Court Order requesting for the Trial Court to

set a trial date for the exception to be set for a trial.   On January 26, 2021, the Trial

Court set the matter for trial to be held on April 12, 2021.

**4TH SUIT-STATE COURT SUIT EVICTION SUIT #345,582, 1ST JDC OF
CADDO PARISH FILED IN 1988 BY THE DOTD AGAINST L & m HAIR
CARE PRODUCTS, INC., FOR PAST DUE RENT AS A RESULT OF THE
LEASE THAT THE DOTD FORCED THE CORPORATION TO ENTER**

140.

After the DOTD had filed the Eviction suit against The Corporation, later

on March 29, 1994, a Judgment of dismissal was filed into suit based upon the
DOTD's  failure to prosecute the suit.


**5TH SUIT -STATE COURT LEGAL MALPRACTICE  #362, 381 FILED IN
MAY 1990 AT THE  1ST JDC OF CADDO PARISH AND IT IS ONGOING
IN 2021 WITH THE VIOLATION OF FEDERAL LAWS COMMITTED BY
STATE DEFENDANTS ALONG WITH MANY OTHER DEFENDANTS**

141.

In May 1990, the Clarks and The Corporation, through newly retained

Counsel, filed in the 1ST JDC OF Caddo Parish a LEGAL MALPRACTICE SUIT,

#362,381, against their former attorneys and the attorneys' law firms.

142.

Years later, in 1996 the legal malpractice suit was amended and supplemented to include additional legal malpractice defendants, and additional causes of actions. In 1996, the added legal malpractice defendants, filed a peremptory exception of preemption/ statute of limitation and an exception of no cause of action. On April 17, 1997, the Trial Court granted the 1996 added defendants a partial final judgment of dismissal with prejudice. Also in April 1997, several of the malpractice defendants obtained a sanction judgment against Plaintiff, as a result that Plaintiff had filed a recusal motion against trial court Judge Scott.

143.

Plaintiff filed an appeal to the Louisiana Second Circuit Court of Appeal on both of the judgment issued in the malpractice suit.

144.

While the judgments were on appeal at the Louisiana Second Circuit, back at the Trial Court in December 1997, Plaintiff filed another amended and supplemental petition into suit #362,381. The December 1997 filed amended and supplemental Petition added the following: (1) a nullity cause of action requesting for nullity of the previously issued state court civil judgments issued in all of the expropriation suits; (2) federal civil rights violations and other state law causes of

actions; (3) the DOTD and some of the DOTD's officers and/or employees, and/or

its agents, and/or attorneys, and/or appraisers were added as defendants; and (4) a

former state court judge was also added.

145.

Once the federal civil rights violations were added, state suit # 362,381 was

removed from the 1st JDC of Caddo Parish to the U. S. District Court, W. D. of

Louisiana, Shreveport-Division #cv98-0217.

**6TH SUIT-A FEDERAL SUIT #CV-98-0217 WAS FILED- AS A RESULT THAT THE 1990 FILED LEGAL MALPRACTICE SUIT #362,381, WAS REMOVED FROM STATE COURT TO FEDERAL COURT AS A RESULT THAT THE MALPRACTICE SUIT WAS AMENDED AND FEDERAL VIOLATIONS AND ADDITIONAL DEFEDANTS WERE ADDED.**

146.

In the federal court, the malpractice suit was known as cv98-0217. There

several defendants filed a joint motion requesting for all of Plaintiff's claims to suit

to be dismissed with prejudice.  Later, in the federal court, on October 5, 1998 the

Magistrate Judge issued a "Report & Recommendation." It provides on page one

in pertinent part:

"This is a case about a man, Larry Clark, who is disgruntled with a state court decision and refuses to accept its finality.  His efforts to rejuvenate his failed state court lawsuit in the guises of a federal civil rights case and to punish everyone involved in the case by suing them for civil rights violations will not be tolerated. After reviewing the pleadings, and for reasons that follow, the court recommends that: (1) all claims, state and federal, by all plaintiffs against Judge Charles Scott and Attorney Richard Ieyoub be  dismissed with prejudice;  (2) all purported

69

federal claims by all plaintiffs be dismissed with prejudice; (3) all state law claims by Mrs. Clark be dismissed with without prejudice for failure to prosecute; and (4) any state law claims asserted by Larry Clark be remanded pursuant to 28 U. S. C. Section 1367 (c) (3)."

147.

Also, the October 5, 1998, Magistrate Judge's "Report & Recommendation" issued in federal suit, No. cv98-0217, provides in pertinent parts beginning in the first paragraph on page six (6); and continuing on in pertinent parts of page seven (7); page eight (8); and page nine (9), in quoting various parts of Plaintiff's Third Amended and Supplemental Petition filed in the state court suit No. 362, 381 and moved to federal court:

"Clark explains in PP 9-25 the history of his hair care business and the initiation of the expropriations. In 1986 two appraisers for the State, Keats Everette and Dan Crooks, visited the property to prepare an appraisal. Clark says that the men told him that if the State paid money to L & M for its lease, then Clark would be paid twice, and the State "would never pay a color [sic] person twice, corporation or no corporation." P26A. The expropriations began, but the State did not tender any compensation for losses to L & M, Clark complains that that failure violates the Louisiana Constitution and various statutes governing expropriation. P30(A)

Attorney Bertrand enrolled as counsel for the DOTD. Clark alleges that while Bertrand was visiting the property prior to trial, Clark advised him that L & M was leasing the property. Bertrand allegedly responded by saying "I did not know that black folks could own a corporation, how in the world did you learn how to do this business anyway?" Bertrand is further alleged to have "made other racial jokes, including some racial jokes about the Rev. Jesse Jackson, who was at that time talking about running for President of the United States." P34(A)    The expropriation cases moved forward and the stipulation that serves as the genesis for this case was entered into. Clark now alleges that the stipulation was not mere malpractice but was actually prepared to deny him his (unspecified) constitutional rights and was illegally signed as a vast conspiracy. P36 and P36(A)    The

stipulation ultimately resulted in the reduction of the judgment on appeal, as described above.

The court has discovered through its own research that L & M was later permitted to assert its claims with the expropriation proceedings. This is reflected in a published opinion which affirms the court's decision that L & M's claim was not prescribed. See. L & M Hair Care v. State, DOTD, 622 So.2d 1194 (La. App. 2d Cir. 1993 ), writ denied, 629 So.2d 1126 (La.). The case proceeded on towards trial, with Clark going through three attorneys before he began handling the matter himself, and with one trial declared a mistrial after certain witnesses for L & M made improper contact with jurors. The case was ultimately dismissed with prejudice because Clark refused to file a pretrial order as directed by the trial court. See L & M Products, v. State, 704 So.2d 415 (La. App. 2d Cir. 1997). Clark alleges that he also filed a suit in Baton Rouge against DOTD officials Frank Denton and James Dousay……………………………………………………..

Defendant H. David Gullette Jr., a contractor, is sued because he provided the DOTD with a replacement cost estimate that Clark claims intentionally contained no money for L & M to purchase property. Of course, Clark alleges that the report was prepared "to help the State Defendant to deny Plaintiff, L & M, its constitutional rights. " P37 Clark cites several cases in which he contends that White landowners and lessees of expropriated property were afforded rights that he was denied, which denial he attributes to the fact that he is African-America. PP43-47 Clark alleges that DOTD officials Norman Scisson, Edward Michel and Neil Wagoner met with him on occasion but refused to give him what he demanded. An unidentified DOTD official is accused of telling Clark that "you people are always trying to get something for nothing,, this is not a welfare program and we are not going to give you or L & M anything else. Attorney Bertrand is said to have told Clark at one of the meetings that the amount requested was too much money because Clark just wanted a Cadillac……………

Clark goes on to detail various other steps in the litigation, including a previous foray into this court in an effort to obtain a mandamus. PP92-104. See Larry E. Clark v. Fredrico Pena, et al., 96 CV 1360 (.W.D. La) The was dismissed by Judge Walter after motion practice and is now on appeal. Rule 11 sanctions were requested but denied. Judge Scott ultimately dismissed the L & M claim, as noted above. Clark attempts to take a second shot at his unsuccessful appeal of the ruling by complaining in this case that when Judge Scott dimissed the case he violated Clark's constitutional rights. Of course Judge Scott did so as part of a continuing conspiracy. P104 (A) The remainder of the complaint

purports to list numerous causes of action against the many defendants. It is filed with countless references to constitutional provisions such asequal protection and due process, plentiful invocation of civil rights statutes, and the incessant, conclusory use of terms such as "Malicious intent", "reckless and malicious disregard", "gross abuse of governmental authority and power", "motivated by a racially discriminatory animus" and the like."

148.

Finally the October 5, 1998, Magistrate Judge's "Report & Recommendation" issued in federal suit, No. cv98-0217, provides in pertinent part on page ten (10):

"The Third Amended Petition strains credulity and is written in an outlandish style most often seen in the most frivolous of prisoner complaints. It deserves the same treatment, dismissal. See also Hagerty v. Succession of Clement, 749 F.2d 217, 220 (5th Cir. 1984), cert. denied, 474 U. S. 968, 106 S. Ct. 333 (1985) (It is a "well settled ruled that a plaintiff may not seek reversal of state court judgment simply by casting his complaint in the form of a civil rights action.")."

149.

In Hagerty v. Succession of Clement, 749 F.2d 217 (5th Cir. 1984), in pertinent part the U. S. Fifth Circuit ruled:

"The federal district court dismissed Hagerty's action under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. We hold that the court was correct in dismissing the action under Rule 12(b)(1). Hagerty presented his constitutional due process claims to the Louisiana Court of Appeals and the Louisiana Supreme Court, but those courts rejected his arguments. The record clearly reflects that Hagerty then 220*220 used his section 1983 action to attack the validity of the state trial court's dismissal of his suit contesting the probate of his aunt's will. He did so notwithstanding the well settled rule that a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action. Sawyer v. Overton, 595 F.2d 252, 252 (5th Cir.1979); see also Williams v. Tooke, 108 F.2d 758, 759 (5th Cir.), cert. denied, 311 U.S. 655, 61 S.Ct. 8, 85

L.Ed. 419 (1940). The constitutional claims presented by Hagerty to the federal district court, if not identical, were "inextricably intertwined with the state court's denial" of relief; therefore the district court could not have properly reviewed the state court decision. _District of Columbia Court of Appeals v. Feldman,_ 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1983); _Howell v. State Bar of Texas,_ 710 F.2d 1075, 1076-77 (5th Cir.1983). To the extent that there was any constitutional error in the Louisiana state courts' decision, sole recourse for Hagerty was to the United States Supreme Court, not to federal district court. _See_ _Kimball v. The Florida Bar,_ 632 F.2d 1283, 1284 (5th Cir.1980); _Sawyer v. Overton,_ 595 F.2d at 252; _accord_ _Wood v. Orange County,_ 715 F.2d 1543, 1546 (11th Cir.1983).

Hagerty raised his constitutional claims in state court but the Louisiana state courts rejected them. He could have appealed to the United States Supreme Court pursuant to 28 U.S.C. § 1257(3), but he failed to do so. Hagerty instead sought review of those same claims in federal district court under section 1983, but Supreme Court and Fifth Circuit precedent clearly prohibits such review. The federal district court, therefore, correctly dismissed Hagerty's suit for lack of subject matter jurisdiction."

150.

However, later on November 5, 1998, the U. S. District Judge for federal suit No. cv98-0217, issued a Judgment that adopted in full the Magistrate Judge's October 5, 1998 "Report & Recommendation" and the case was remanded back to the 1st JDC of Caddo Parish as suit No. 362, 381 and it remains pending as of March 2021.

151.

In 1999, the Louisiana Second Circuit issued an opinion that affirmed a partial judgment of dismissal as to some of the malpractice defendants. Clark et al., v. Mangham, Hardy, Rolfs, And Abadie, et al., 733 So.2d 43 (La.App.2nd Cir. 2-24-1999). Later in the state trial court various motions were filed by the

remaining legal malpractice defendants and by the state defendants.

152.

On March 21, 2000, a Judgment was issued in legal malpractice suit #362, 381, that granted an exception of no cause of action and alternative exceptions of prescription and res judicata to the following employees and/or officers and/or attorneys and/or contractors and/or experts and/or agents: Louisiana Department of Transportation and Development; James M. Dousay; Paul Ray Dry; Edward A. Michel; Frank Denton; Lawrence A. Durant; Burnie L. Malone; Ronald J. Bertrand; Charles E. Soileau; Bertrand & Soileau; H. David Gullette; Keats Everett; Rodger L. Burford; and  Eugene E. Chiarulli.

153.

On April 13, 2000 in suit #362,381, Plaintiff filed in the Trial Court "A PETITION FOR APPEAL" as to the March 21, 2000 Judgment and as to several other Judgments that had been granted by the Trial Court in 2000.   The Trial Court refused to grant Plaintiff's appeal.   The Trial Judge provided hand writing instructions on the Appeal, directing the office of the Clerk of Court to return the appeal to Plaintiff, as a result, that the judgment appealed was not final, and not yet appealable.

154.

Later on November 13, 2000 an additional Interlocutory Judgment was

issued by the Trial Court in legal malpractice suit #362, 381.  Recently in pending

state court suit #362,381, in January 2021, Plaintiff had some the defendants

served with a "REQUEST FOR ADMISSIONS" in the pending legal

malpractice/federal civil rights violation suit.

**7TH SUIT- #363,679 AN ONGOING STATE COURT EXPROPRIATION AT THE 1st JDC OF CADDO PARISH FILED IN 1990 BY L&M AND THERE IS A CONTINUATION OF VIOLATIONS OF MANY CIVIL AND CRIMINAL FEDERAL LAWS BY VARIOUS STATE OFFICIALS OF LA**

155.

The Louisiana Second Circuit in1989 issued its opinion for the three (3)

1986 filed consolidated expropriations suits, ruling therein that L & M Hair Care

Products, Inc., was a separate legal entity from the Clarks and reversed monies

awarded to the Clarks for The Corporation's benefit.  See, 548 So.2d 365

(La.App.2nd Cir. 1989), writ denied, (La.12-01-1989).

156.

As a result of the consolidated opinions issued in August 1989, by the

Louisiana Second Circuit in State, DOTD v. Clark et ux., Plaintiff uncovered,

that Plaintiff and The Corporation had been lied to by the employees, attorneys nad

other representatives of the DOTD regarding all the leases contracts and lease

contract options between Plaintiff and The Corporation.  Therefore, in January

1990, Larry E. Clark, as President of L & M, had a meeting at the DOTD's

Headquarters in Baton Rogue, Louisiana with Mr. Norman Sission, the General

Counsel for the DOTD, and Mr. Edward Michel, the Executive Counsel for the

DOTD. In the meeting Plaintiff requested a <u>settlement for the constitutional</u>

<u>compensation claim</u> of L & M.

157.

In the January 1990 meeting, the two attorneys for the DOTD refused to

discuss a settlement in regards to The Corporation based upon their belief that the

December 28, 1987 "JOINT STIPULATION" filed into the three (3) 1986

consolidated expropriation suits were binding on The Corporation.

158.

In February 1990, Larry E. Clark as President of L & M Hair Care

Products Inc, submitted a complaint to the officials of the U. S. Department of

Transportation alleging that DOTD had practice of racial discrimination against

The Corporation and as a result L & M had been denied constitutional

compensation and Federal Relocation Moving Expenses.

159.

In addition to the 1987 "JOINT STIPULATION" the officials for the

DOTD stated that they were also denying The Corporation's Federal Moving

expenses money as a result that The Corporation owed the DOTD over $12,000.00

in past due rent money as a result that The Corporation in January 1987 had

entered into a lease contract with the DOTD to lease The Corporation's building

back from the DOTD.

160.

In a letter dated March 19, 1990 from Norman L. Sisson, the General

Counsel for the DOTD, addressed to Larry E. Clark, President of L & M Hair Care

Products, Inc.,  L & M was advised that all the contract lawyers for the DOTD

were in agreement that the DOTD should not enter into any settlement discussion

regarding the payments of any money to L & M for moving expenses or for

constitutional compensation, **as a result of the 1987 Joint Stipulation filed into

the three (3) 1986 partially filed expropriation suits.** The letter also denied that

racial discrimination had been practiced towards L & M.

161.

In July 1990, through new counsel, The Corporation filed a "PETITION

FOR COMPENSATION FROM EXPROPRIATION OF PROPERTY" in 1ST JDC

OF Caddo Parish, entitled L & M Hair Care Products, Inc. v. State, DOTD,

#363,679, requesting for compensation due to The Corporation as a result of the

1986 expropriation suits filed by the DOTD.

162.

After the DOTD had been served with The Corporation's expropriation suit,

The Corporation filed a partial motion for summary judgment as to renovation

costs, and on February 11, 1991, the Trial Court granted The Corporation's motion for summary judgment.

163.

On March 7, 1991 counsel for The corporation filed into expropriation suit #363,679, in accordance with LA-R. S. 48:447 a "MOTION FOR RULE TO SHOW CAUSE" requesting a Court's Order to be issued directing the DOTD to comply with Article 1. Section 4., of the Louisiana Constitution and the Quick-Taking Statutes of R. S. 48:441 et seq.

164.

Later, the DOTD appealed to the Louisiana Second Circuit court of Appeal, the Trial Court's ruling granting The Corporation's motion for summary judgment.

165.

On December 4, 1991, the Louisiana Second Circuit Court of Appeal issued unpublished opinion #23,124-CA, 590 So.2d 122 (La. App. 2d Cir. 12/04/91), regarding the DOTD's appeal of the granting of the motion for summary judgment to The Corporation. The appellate court ruled that **suit #363,679 was an expropriation suit. The appellate court also** ruled to grant a joint motion filed by the parties on appeal. The joint motion requested for reversal of the Trial Court grant of summary judgment to The Corporation, and for the case to be remanded back to the trial court for further proceedings.

166.

The DOTD and The Corporation filed the joint motion on appeal as a result that the parties agreed that summary judgment should not have been granted because: The Corporation and the Clarks were not one and the same person; The Corporation was not a party to the three (3) original consolidated 1986 expropriation suits filed by DOTD; and The Corporation was not a party to the 1987 "Joint Stipulation" filed into the three (3) original consolidated 1986 expropriation suits.   The Louisiana Second Circuit granted the parties' joint motion, and the case was remanded back to the trial court.

167.

After the suit was remanded, later on January 03, 1992 ,The Corporation filed an amended petition into suit #363,679.  The DOTD filed an answer giving just a general denial to the amended petition.

168.

Later, on May 1, 1992, the parties filed into expropriation suit #363,679 a "PRETRIAL ORDER" that outlined all issues and claims, and a jury trial was set to begin on December 7, 1992.   In pertinent part the Pretrial Order provides: "The losses and just compensation due to L & M include:

A.   Costs to  renovate  and  relocate  to  another leased property;
B.   Moving expenses;
C.   Loss of business income and loss of  use  thereof  (business disruption); and

D.    Loss of lease-hold advantage."

169.

On December 07, 1992 a jury trial was held for expropriation suit #363,679. A copy of the 1992 trial transcript for the jury trial held on December 7, 8, & 9, 1992, show that as Plaintiff was on the stand testifying, the contract lawyer for the DOTD, entered an objection to prevent Plaintiff from answering a question that The Corporation's counsel had asked Plaintiff.

170.

As a result of the objection raised, the DOTD requested for the trial judge to have the jury removed from the courtroom, in order for the objection to be resolved without the jury being aware of the objection.  The DOTD's contract lawyer did not want the jury to hear Plaintiff's answer to the question asks by counsel for The Corporation, "Did the DOTD offer to pay The Corporation any money for its business to be relocated?"

171.

Once the jury was removed out of the courtroom, the DOTD's contract lawyer informed the trial judge that he did not want the jury to be led to believe that the DOTD had treated L & M DIRTY, AS A RESULT OF NOT PAYING L & M IN ADVANCE  FOR  IT'S PROPERTY.

172.

As a result of the DOTD's contract attorney requesting for jury to be removed out of the courtroom, the Trial Judge ordered the Bailiff to remove the jury from the courtroom, and the Bailiff placed the jury in a vacant room outside of the courtroom.   After the Bailiff had placed the jury in a vacant room, the Bailiff returned to the courtroom.   The Judge and counsel for the parties discussed the objection, and the Judge overruled the objection, ruling to allow for the jury to hear Plaintiff's answer to the question.

173.

Afterwards, the Judge ordered the Bailiff to go and bring the jury back to the courtroom.  However, when the Bailiff returned to room where he had placed the jury, the Bailiff uncovered that the jury and various witnesses for the trial were all in the same room and were all for the trial were all communicating together.   At that point the Bailiff returned to the courtroom without the jury and informed the Judge that he had found the jury and the witnesses in the same room communicating.

174.

After had informed the trial judge of what had happen, the Bailiff again ordered by the judge to bring the jury back into the courtroom as well as all of the witnesses that were in the room with the jury.  Then, in open court, the trial judge questioned all of them as to what they had discussed and how they ended up in the

same room.  The trial judge uncovered, that the Bailiff had mistakenly placed the jury in the room that had been previously selected as a holding room for all the parties' witnesses.  Each witness had been instructed to wait in the room until called to testify in the courtroom.  At the time that the jury was placed in the vacant room, all of the witnesses had left the room.  The judge also was informed that there had not been no discussion regarding the trial.

175.

However, the DOTD's contract attorney, Mr. Charles E. Soileau requested for the trial Judge to declare a mistrial.  He informed the trial judge that he believed that perhaps because some of the members of the jury were African-Americans and some of the witnesses were also African-Americans, then there may have been a personal relationship developed and therefore the DOTD could not receive a fair trial.  The trial judge declared a mistrial.

**FORMER CONTRACT ATTORNEYS FOR THE DOTD BEING TOTALLY CONVICED THAT L & M 'S CLAIM HAD PRESCRIBED DOCUMENTS WERE FILED TO HAVE THE SUIT DISMISSED AND THE DOCUMENTS CLEARLY EXPLAIN THE STEPS IN AN EXPROPRIATION SUIT THAT DOTD MUST TAKE TO GIVE A PERSON VARIOUS  FEDERAL RIGHTS**

176.

After the December 1992 mistrial, later Mr. Solieau, the former contract attorney for the DOTD, filed into expropriation suit #363,679 an exception of prescription, alleging that the claim of the corporation had prescribed.

177.

In support of the exception of prescription filed, on or about January 11, 1993, the former contract attorney, Mr. Soileau on behalf of the DOTD, filed a "MEMORANDUM IN SUPPORT OF DEFENDANT'S EXCEPTION OF PRESCRIPTION," into suit #363,679. It provides in pertinent parts:

"Expropriation" or "eminent domain" as it is so called in the common law, is the power of the sovereign to take property for public use without the consent of the owner. Tennessee Gas Transmission Co. v. Violet Trapping., 176 So. 2d 425 (La.1965) certiorari denied 86 S. ct. 236, 382 U. S. 902. Another term synonymous with expropriation is condemnation.

In Louisiana the Legislature has set up the manner and means for the DOTD to acquire private property for public use without consent of the owner. The Quick-Taking Statutes found in Title 48 provides the <u>sole</u> basis for "expropriation" in Louisiana by the DOTD.................................................................

Under the scheme set up by Title 48, the DOTD must file a suit and deposit money to take property from the owner for a highway purpose. The owner's consent is not required, but the owner does have a limited right to challenge the public purpose of the taking. 48.447.
.................................................................................
Ownership consists of a bundle of real rights which are subject to alienation, encumbrance by the owner or to being damaged by third persons. An owner, such as Mr. & Mrs. Clark, can alienate a portion of their bundle of rights. This can be accomplished by grant of servitudes, leases, other rights to third persons. In the case of a lease, our courts have held that the lessee has a right to seek compensation in the event of either an expropriation or an appropriation. See cases cited above.............................................................................

Since L & M Hair Care was not a defendant in the original lawsuits, no deposit was made to compensate L & M Hair Care for its estimated loss of or damage to its ownership of one the bundle of rights of ownership. La. R. S. 48:444 and 445. The ownership of this indicia of ownership did not transfer to DOTD. Instead, this indicia of ownership terminated with the taking of the bundle of rights owned by Larry E. and Melvenia S. Clark. La. C.C. Art. 2697.

...........................................................................................

From all the evidence, it is clear that Mr. Clark was aware of the expropriation of his property prior to the date of taking. It is also clear that Mr. Clark was the owner of the property taken and was the owner of the stock and president of L & M Hair Care. Mr. Clark signed the lease on behalf of he and his wife and on behalf of L &M Hair Care. There is no way that the period of prescription can be extended by Mr. Clark's or the corporation's "lack of knowledge".

178.

On January 25, 1993, a trial was held on the DOTD's exception of prescription. The transcript for the trial shows, that in open court, the Trial Court denied prescription, based upon a prior Louisiana Second Circuit's ruling issued on December 4, 1991, in unpublished opinion #23,124-CA, 590 So.2d 122 (La. App. 2d Cir. 12/04/91). The 1991 opinion, ruled that suit **#363,679, was filed by L & M against the DOTD, and that the suit was an expropriation.** Also in open court, at that January 25, 1993 trial held on the exception of prescription, the trial court also agreed with the former contract attorney for the DOTD, that the Quick-Taking Statutes of R. S. 48:441 et seq., applied to suit #363,679, instead of R. S. 19:2, et seq., argued by counsel for The Corporation.

179.

As a result of the Trial Court's overruling the DOTD's exception of prescription, and overruling counsel for The Corporation, that expropriation statutes of R. S. 19:2 et seq. applied to suit #363,679, the parties in open court ask that the case be stayed and gave notice to the trial court that the both parties would

file writ a application in the Louisiana Second Circuit Court of Appeal. The trial

court granted the parties' request.

180.

To narrow the issues for the parties' writ applications to be filed with the

Louisiana Second Circuit, on February 3, 1993, the parties entered into a "JOINT

STIPULATION." It provided in pertinent parts:

"1.
Real Estate was expropriated by defendant from Larry E. Clark, Et Ux on the
dates shown and indicated on the Orders of expropriation which are attached
hereto as Exhibit A. The latest date of the expropriation is November 21, 1986.

2.
Larry E. Clark, Et Ux leased the property in question to L & M Hair Care Products,
Inc. prior to the date of the expropriation, copies of the leases are attached hereto
as Exhibit B.

3.
L & M Hair Care Products, Inc. filed suit against the defendant, on July 5, 1990,
a copy of the petition is attached as Exhibit C.

4.
L & M Hair Care Products, Inc. was not a party to the original expropriation
proceedings."

................................................................

181.

On February 22, 1993, Mr. Soileau, the former contractor attorney for the

DOTD filed in Docket Number 25,196-CW, at the Louisiana Second Circuit Court

of Appeal an "ORIGINAL APPLICTION FOR WRIT OF REVIEW BY

DEFENDANT-APPLICANT, THE STATE OF LOUISIANA, DEPARTMENT

OF TRANSPORTATION & DEVELOPMENT". It provides beginning on page

two (2) in pertinent parts:

"ISSUES AND QUESTIONS OF LAW

1. Is this a case of expropriation or appropriation?
2. If this is a case of appropriation, then is the plaintiff's claim prescribed?
3. It this is a case of appropriation, then is the decision of the Trial Court denying defendant's exception of prescription arguably incorrect so that a reversal would terminate the litigation and avoid the waste of time and expense of a possibility useless future trial on the merits? ..."

182.

On page three (3), of the February 22, 1993, filed document, it provides:

"ASSIGNMENT OF ERRORS

ASSIGNMENT OF ERROR NO. 1
The Trial Judge erred in characterizing this case as an expropriation case rather than as an appropriation case.

ASSIGNMENT OF ERROR NO. 2
Trial Judge erred in denying defendant's exception of prescription."

183.

On page four (4) the document in pertinent parts provides:

"On August 1, 1986 and November 25, 1986, in three separate lawsuits, the State of Louisiana, Department of Transportation & Development (sometimes hereinafter referred to as DOTD) expropriated certain land, buildings and improvements in the City of Shreveport which were owned by Larry E. Clark, Et

86

Ux (See p. E-4 to E-12).   A portion of the property was "leased" to L & M Hair Care Products, Inc., a corporation owned entirely by Mr. Clark and his wife. (E-13, 14).

L & M Hair Care Products, Inc. was not made a defendant nor did the corporation in either of the three then pending expropriation lawsuits. ................................................................................................

On July 5, 1990 L & M Hair Care Products, Inc. filed this suit against DOTD alleging that it was due compensation as a result of the expropriation from Mr. & Mrs. Clark (See,  E-15, et seq.)  DOTD filed an answer in the form of a general denial insofar as the allegations that L & M was entitled to any compensation."

184.

On page five (5) the document in pertinent parts provides:

"L & M Hair Care Products, inc., filed a Motion for Summary Judgment which was granted by the Trial Court.   This Court reversed the Trial Court ruling and remanded the case for a trial.  L & M Hair Care Products, Inc. v. State of Louisiana, DOTD, 23, 124-CA  (La. App. 2nd Cir. December 4, 1991).

DOTD filed an exception of prescription in the Trial Court (E-25).   DOTD pointed out to the Trial Court that this case was not an expropriation case because there was no taking by suit and order of expropriation from L & M (See, La. R. S. 48:441 et seq.).  nor had L & M chosen to intervene in the exproonpriaiton suits against the Clarks, its lessor.  (See Joint Stipulation, E-12).  It was and is DOTD's position that, since the lease terminated by operation of law (La. C.C. Art. 2697), there was no taking  by expropriation  from L & M.  Consequently,  the only "taking" by DOTD, vis  a vis L & M, was by virtue of appropriation. ................................................................................

The Trial Court felt that the decisions of this Court in Clark and L & M cases, supra,  dictated that this current suit was an expropriation suit and denied DOTD's exception.

It is DOTD's position that no appellate court has yet determined if L & M's claims sound in expropriation or in appropriation."

185.

On page seven (7) the February 22, 1995 document provides in pertinent

parts:

"ARGUMENT

ASSIGNMENT OF ERROR NO. 1

THE TRIAL JUDGE ERRED IN CHARACTERIZING THIS CASE AS AN
EXPROPRIATION CASE RATHER THAN AS AN APPROPRIATION CASE

ASSIGNMENT OF ERROR NO. 2

THE TRIAL JUDGE ERRED IN DENYING DEFENDANTS'S
EXCEPTION OF PRESCRIPTION

For purpose of this application, both assignments of the error will be argued and
briefed together.   It is clear that, in Louisiana, no governmental or quasi-
governmental entity an take property without compensating the "owner" to the
fullest extent of his loss.  La. Const.  Art. 1 Sec. 4.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...
Prior to 1974, the Department of Highways (predecessor to DOTD) acquired
property for highways by expropriating it under the auspices  La. R. S. 19:51 et
seq.   This group of statutes was repealed in 1974 and replaced by the Quick-
Taking Statutes, i. e., La. R. S. 48: 441 et seq.

Title 48 envisions the DOTD is to expropriate property for highway purposes
under certain restrictive conditions. (e. g.  declaration of need and public purpose,
and prior appraisal of the property to be taken).  DOTD  is also obligated to make a
deposit of just compensation to the owner prior to the Judge signing the document
translative of title to DOTD, i. e., order of expropriation.   The owner does have a
right to challenge the public purpose of the taking.  La.  R. S. 48:447."

186.

On page eight (8) the February 22, 1995 document at the last paragraph

provides:

"The lessee's position in an expropriation case is similar to that of the owner in some respects.    For example, each may be entitled to compensation.   Each loses the ownership of property rights by operation of law.  La. R. S. 48:445 and La. C.C. Art. 2697."

187.

On page nine (9) the February 22, 1995 document provides in pertinent parts:

"In the present case it is clear that there has <u>never</u> been a taking by expropriation from L & M Hair Care Products, Inc.   The <u>only</u> taking by expropriation occurred when DOTD expropriated  from the owner/lessor, Mr. & Mrs. Clark.

The Clarks, as owners, dismembered  a part of their ownership by transferring a portion of the bundle of rights owned by them to L & M via a lease agreement. This transfer was at best,  tenuous  because La. C.C. Art. 2697 provides for a termination of leases by operation of law upon expropriation <u>from the owner/lessor</u>  (the Clarks in this case)."

188.

On page eleven (11) the February 22, 1995 document provides at the last paragraph:

"The question of whether this case is an appropriation or an expropriation is not metaphysical  or a question  of semantics.  It is a question of distinguishing between two clearly  legally,  legislatively  and  jurisprudentially  recognized types of governmental  activity."

189.

On page twelve (12) the February 22, 1995 document provides at the last paragraph:

"Clearly  when  the property was taken from the owner,  Mr. & Mrs.  Clark,  there was no provision  in the expropriation suits for L & M Hair Care Products, Inc....."

190.

On page fourteen (14) the February 22, 1995 document provides in

pertinent parts:

"STATE OF LOUISIANA

<u>AFFIDAVIT</u>

PARISH OF ACADIA

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

BEFORE ME, undersigned Notary, personally came and appeared, CHARLES
E. SOILEAU, who being duly sworn, did depose and say:

That all of the allegations contained in the foregoing application are true and
correct to the best of his knowledge, information and belief; and

That a copy of the application has been forwarded to opposing counsel, the
presiding Judge and the Clerk of Court by depositing same in the Unites States
mail, postage prepaid and properly addressed."

191.

On April 8, 1993, the Louisiana Second Circuit Court of Appeal, in Docket

Nos. 25, 154-CW consolidated with 25, 196-CW, issued an Order that provided:

the parties' writ applications are granted and consolidated; the parties are

instructed to file Briefs addressing Expropriation versus Appropriation;

prescription; and to address which procedure is to be applied to the case.

192.

Once the parties had filed their Briefs, and had appeared at the Second

Circuit for oral arguments, later on August 18, 1993, the Louisiana Second Circuit

issued consolidated opinions Nos. 25,154-CW and 25,196-CW. The opinions

affirmed all rulings made by Trial Court at the trial held on January 25, 1993 . <u>L & M Hair Care Products, Inc.., v. State, DOTD</u>, 622 So.2d 1194 (La.App.2nd Cir. 1993).

193.

Afterwards, Mr. Soileau, on or about September 16, 1993, filed a Writ application with the Louisiana Supreme Court.  It provided in pertinent parts on page one (1):

"The decision of the Second Circuit is an erroneous application of the doctrine of contra valentem to the facts and circumstances of this particular case.  To state that the DOTD was "responsible" for plaintiff's failure to timely file its suit is an absurdity and leads to a result which is incorrect and patently unfair...................

.................................................................................................
By this wrongful "fashioning of justice" the Court of Appeal will force the DOTD to a trial which will, in all probability, be futile given the fact that this case has prescribed....................................................................................."

194.

On page four (4), the September 1993, Supreme Court writ application provides in pertinent parts:

"<u>ASSIGNMENT OF ERROR NO.1</u>

The Trial Judge and the Court of Appeal erred in denying defendant's exception of prescription.   The Trial Court's error was in calling this an expropriation......."

195.

On page five (5), the Supreme Court writ application provides in

pertinent parts:

"On August 1, 1986, and on November 21, 1986, in the three separate lawsuits, the State of Louisiana, Department of Transportation & Development (sometimes referred to as DOTD) expropriated certain land, buildings and improvements in the City of Shreveport which were owned by Larry E. Clark, Et Ux. (See p. E-4 to E-12). The buildings and improvements which were occupied by the Clark's tentant, L & M Hair Care Products, Inc. (sometimes referred to L & M), were expropriated on August 1, 1986..............The buildings and improvements were leased "leased" to L & M by Mr. & Mrs. Clark (E-13, E-14). Mr. & Mrs. Clark were the sole stockholders of L & M.

L & M was not made a defendant to the expropriation proceedings nor did the corporation intervene in either of the three pending expropriation lawsuits. ...........................................................................................

On July 5, 1990, L & M filed this lawsuit against DOTD alleging that it was due compensation as a result of the taking from Mr. & Mrs. Clark. (See E-15, et seq). DOTD answered in the form of a general denial concerning the entitlement to compensation for L & M."

196.

The September 1993 writ application provides on page six (6) in pertinent

parts:

"DOTD filed an exception of prescription in the Trial Court (See p. E-25). DOTD pointed out to the Trial Court that this case was not an expropriation case because there had been no taking by suit and/or order of expropriation from L & M. the exception noted that L & M Had chosen not to intervene in the expropriation suit against the Clarks, its lessor. (See Joint Stipulation, E-2). ..........................................................................................
The Trial Court felt that the previous Court of Appeal decisions in this case and the Clark case indicated that this suit by L & M was an expropriation suit and denied DOTD's exception.

It was and is DOTD's position that the L & M lease terminated by operation of law (La. C.C. Art. 2697) and that there was no taking by expropriation (La. R. S.

48:441, et seq) from L & M. Consequently, the taking by DOTD from L & M could have only been by virtue of <u>appropriation</u>. ......................................."

197.

On page eight (8) of the September 1993 writ application provides in

pertinent parts:

"The District Court denied the exception of prescription filed by the DOTD in the L & M suit.  The transcript of the hearing is appended.  (E-18 et seq).  For purposes of the hearing on the exception, a joint stipulation of facts was entered into by L & M and DOTD.  (E-2 et seq)..................................................

The stipulation clearly shows that the date of the termination of the L & M lease, by operation of law, was November 21, 1986 at the latest.  Loss of leasehold advantage, a clearly compensable item of loss,  and other losses would be computed from this date, i. e. the date of the taking..................................."

198.

Page ten (10) of the September 1993 writ application provides in pertinent

parts:

"In a lame and bizarre attempt to "fashion justice:, Judge Williams found that the second situation was applicable in this case.........................................

In the case of the lessee of expropriated lands, there are three possible ways for its claims to be brought before the Courts.  First, the lessee can be made a party to the expropriation suit filed by DOTD.   However, since the lessee is only a necessary party, no court has ever, held that DOTD is obligated to make lessees a party........................................................................................."

199.

The September 1993 writ application provides on page eleven (11) in

pertinent parts:

93

"The Second Circuit impliedly ascribes a duty to DOTD that is not customary, practical of applied in our adversary judicial system.   In essence, the Second Circuit says that because DOTD did not tell the Clarks or their capable attorney about the distinctions between Lessors and Lessees and which of the two could recover losses associated with a replacement facility, then DOTD created a condition in the proceedings which prevented L & M from suing or acting to protect its interest.

The Clarks, as the sole shareholders of L & M, were aware of the taking.   The Clarks were are of the lease between themselves and their corporation. The Clarks were represented at all stages of these proceedings by able counsel.

Presumably the Court of Appeal is telling DOTD that where there is any potential lessee claim which is not expropriated, the DOTD <u>must</u> tell the owner, his tenant and their attorney,   "Hey guys, the corporate  tenant may  have a claim here and you should either intervene in this suit of file a timely separate suit."  The Court of Appeal  is placing  an  obligation  of  benevolence on this governmental entity which is not placed  on any other litigant.

Is a defendant in a tort claim obligated to tell the plaintiff that he omitted the property damage claim?  Is the plaintiff in a tort suit obligated to tell the defendant that it failed to assert an affirmative defense?  The answer to both questions is a resounding <u>NO</u>!!!   DOTD is obligated, under this holding,  to tell the landowner (who also is the sole owner of the corporate tenant)  that the corporate  tenant has rights  or  claims or any have rights or claims that  can  be  litigated  by intervention,  separate suit  or  filing  an exception of non-joinder.

The Second Circuit  says that DOTD should have filed the exception of non-joinder.  This omits  the Court of Appeal's own  decision  in the Clark case, supra.  L & M  is  only  a <u>necessary</u> party."

200.

The contract attorneys that filed the September 1993 writ application at the

Louisiana Supreme Court on behalf of the DOTD, they are the same attorneys that

represented the DOTD at the Louisiana Supreme Court in expropriation case of

<u>State, Dept. Of Transp. & Development v. Jacob, et al.</u>, 483 So.2d 592

(La.02/24/1986), rehearing denied, 04/10/1986.

201.

Regarding the White property Owners/Lessors and the White Lessees, the

Louisiana Supreme Court in the expropriation case of <u>State, Dept. Of Transp. &</u>

<u>Development v. Jacob, et al.</u>, 483 So.2d 592 (La.02/24/1986), rehearing denied,

04/10/1986, the Court ruled in pertinent parts:

"The public records doctrine is not totally without effect however. The state has a right to rely upon the public records in filing its suits, even if the lessee was a party who could properly intervene. *Shreveport v. Kansas City, S. & G. Ry.,* 184 La. 473, 166 So. 471 (1936). They need only name those defendants whose interests appear in the public records."

200.

Then, on page twelve of DOTD's September 1993 Louisiana Supreme

Court's writ application provides in pertinent parts:

"The power of the sovereign to take property for public purposes without the consent of the owner is known generally as expropriation, condemnation or eminent domain. See e. g. Tennessee Gas Transmission Co. v. Violet Trapping Co., 176 So. 2d 425 (La.1965), cert. denied 86 S. Ct. 236, 382 U. S. 902. In Louisiana, this taking is accomplished through the mechanism of the "quick taking" statute when done by DOTD. La. R. S. 48"441 et seq.

**Title 48 taking has certain mandatory requirements, perhaps the most important of which is the requirement that a deposit of money be made on behalf of the owner. No such deposit was made for or on behalf of L & M. There was no order of expropriation transferring title to DOTD of any of the property owned by L & M.**

L & M, as the tenant under a lease questionable validity (i.e. $1 and OVC), received nothing from DOTD and surrendered nothing to DOTD by written instrument. The only effect of the taking to L & M, vis a vis DOTD, was that its

lease terminated by operation of law and the claims of L & M for losses (such as leasehold advantage) arose at the time and on that date...............................)

201.

On page thirteen and on over to page fourteen of DOTD's September 1993

Louisiana Supreme Court's writ application provides in pertinent parts:

"Must DOTD be its "brother's keeper" in litigation which is, by its nature, adversarial? Must DOTD tell the Clark's and their attorney that its position is that the Clarks were the wrong party to assert this claim and their solely owned corporate lessee is or might be the appropriate party? The Court of Appeal would seemingly answer both questions in the affirmative. The correct answer to both is a resounding, No !!!

If any situation was created in connection with the Clark litigation which prevented L & M from suing or acting, it was the mistaken belief by the Clarks that they were entitled to a replacement facility or to make other claims for the tenant's claimed losses. This mistake was made by the Clarks and not by DOTD! The Clarks, as sole owners of the corporation, were in the best position to appreciate the claims of the corporation and were in the best position to cause their corporation to assert its claims or to choose to assert them incorrectly.

It is clear from the Clark decision that the DOTD's position was that the corporate tenant was the proper party to assert the relocation claim. The Trial court did not think so. The Court of Appeal vindicated the DOTD position by reversing the Trial Court. Further vindication came from the writ denial by this Court in the Clark case. 552 So.2d 395 (La. 1989).

It is important to a resolution of this case to recognized that any claims of L& M arose on the date of taking, which was November 21, 1986. Since whatever bundle of rights of ownership held by L&M on that date were taken by operation of law (La. C. C. Ar. 2679), and not merely damaged, prescription began to run on that date. Since there was no order of expropriation from L 7 M (i. e. no deposit of money, no order of expropriation) it necessarily follows that L & M's property was appropriated......................................................................................

The doctrine of contra non valentem  was inappropriately used in an attempt to "fashion justice" so that L & M to have its day in court. The erroneous rationale of the Second Circuit is that DOTD, under the facts of this case, was in the best position to protect L & M and had some duty to protect L &M.  It is submitted that this is a perverse rationale which subverts fundamental fairness,  which is after all an entitlement of DOTD as a party litigant.  The fact that t his is a governmental entity does not serve to deprive DOTD of its expectation of fundamental fairness, even-handedness  and the right to be treated as any other party litigant, rather than as the benevolent brother's keeper  that the Second Circuit would have make it be."

202.

Page fifteen of DOTD's September 1993 Louisiana Supreme Court's writ

application provides in pertinent parts:

"In truth and in fact, the party in the best position to look out for the interests of this corporation tenant were its sole shareholders and landlord, the Clarks.  The failure of the Clarks to protect their corporation from the tolling of prescription should not be ascribed or designated to DOTD through a woeful misapplication of the doctrine of contra non valentem.

...................................................................................

This case should be dead and buried so as to avoid a useless trial on the merits based on an arguably incorrect application of the law of prescription.  This Court has the power and the supervisory authority to do justice rather than to "fashion justice" by making the writ in this case peremptory and ordering the dismissal of L & M's untimely suit"

203.

The Louisiana Supreme Court on December 10, 1993, denied the

September 16, 1993, writ application filed by the former contract attorneys of

behalf of the DOTD.  629 So.2d 1126 (1993).

**THE CONTRACT ATTORNEYS FOR THE DOTD WERE ALREADY UPSET WITH TWO FEDERAL COURT CASES: CHISOM , ET AL V. GOVERNOR, EDWIN EDWARDS, 839 F.2d 1056 (1988) AND JANICE CLARK, ET AL V. GOVERNOR, EDWIN EDWARDS, 500 U. S. 646 (1991) REGARDING THE ELECTING OF AFRICAN-AMERICANS TO BECOME JUDGES IN THE STATE OF LOUISIANA. THE CONTRACT ATTORNEYS FOR THE DOTD VOWED TO NEVER FOLLOW THE 1993 SECOND CIRCUIT OPINION AUTHORED BY AFRICAN-AMERICAN JUDGE FELICIA WILLIAMS FOR EXPROPRIATION SUIT #363,679**

204.

Later, Larry E. Clark, as President of L & M Hair Care Products, Inc., in a letter dated January 11, 1994, addressed to General Jude Patin, Secretary of the DOTD, as a result of the second complaint that L & M had filed with the U. S. Department of Transportation against the DOTD. Again, L & M, The Corporation alleged in the complaint the practice of racial discrimination against The Corporation by the DOTD. The DOTD was still refusing to pay L & M's moving expenses based upon a lawsuit the DOTD had filed against L & M for allegedly past due rent money owed to the DOTD, for L & M's building, and the 1987 "Joint Stipulation" filed into the three (3) 1986 suits filed against the Clarks.

205.

Through a second investigation performed by the U. S. Department of Transportation, it was found that: The Corporation, L & M, was not a party to the 1987 "Joint Stipulation," filed into the original 1986 expropriation suits filed by DOTD; that L & M did not owe DOTD any rent for leasing L & M's building that

DOTD had never paid compensation to The Corporation for its leasehold advantage, and as such the DOTD had practiced racial discrimination against L & M.

206.

The U. S. Department of Transportation directed L & M to make a second request to the DOTD for L & M's federal rights under the Federal Relocation Act, for the business' moving expenses resulting from the I-49 project. The U. S. Department of Transportation threaten to cut off all federal funds to the DOTD for the construction of I-49.

207.

After the finding made by the U. S. Department of Transportation, in a letter dated March 7, 1994, Mr. Thomas Stephens, Real Estate District Manager for the DOTD, informed L & M, that the DOTD was willing to process L & M's application for federal moving expenses. Later, the DOTD, by check No. 137011, dated March 15, 1994, paid L & M Hair Care Products Inc. $10,000.00 for moving expenses as a result of the 1986 expropriation.

208.

In March 1994, counsel for The Corporation filed into suit #363,679 a second Rule To Show Cause/Motion Contesting the validity of expropriation suit #363,679 as provided by R. S. 48: 447A, requesting for a Court Order to be issued directing the DOTD to comply with R. S. 48:441 through 48:446.

209.

Also in March 1994, after having first filed a Rule To Show Cause in

March 1991, and after the Louisiana Second Circuit Court of Appeal had issued

the consolidated opinions in August 1993, counsel for The Corporation filed a

Memorandum In Support Of The Corporation's Second Rule To Show Cause, that

was filed in March 1994.   It provided in pertinent parts:

"MAY IT PLEASE THE COURT:

On January 25 1993, this Honorable Court ruled that the provision of L. R. S.
48:441 et seq., shall apply to the further proceedings for this case.   In its ruling on
a writ application the Court of Appeals agreed.   Indeed, the State, DOTD has
agreed that the provisions of Title 48 are the exclusive procedures to be followed
in this case.
If the provisions of Title 48 shall apply, the following statutory mandate must be
followed:
   1. The State, DOTD must file a Petition against L & M Hair Care Products,
      Inc. in this District Court pursuant to L.R.S. 48:442(1).   As an
      instrumentality of the State, such a Petition and such an action may proceed
      without the payment of court costs;
   2. The State, DOTD, must file in the District Court an itemized statement of
      money estimated to be the fullest extend of L & M's loss and damages
      pursuant to L.R.S. 48:442 (3) (d);
   3. The State, DOTD must deposit the estimate of L & M's loss into the registry
      of the court pursuant to L.R.S. 48:444 and L & M is allowed to withdraw
      same;  and
   4. The State, DOTD must give L & M the official notice of its Title 48
      "taking" and expropriation as required by L. R. S. 48:446.

   To date,  the State has abided by none of the above Title 48 obligation,  yet it
   has sought to bind L & M by Title 48 trial procedures to its benefit.  Due to
   the fact that this Court and the Court of Appeal has ruled that Title 48
   procedures govern this case,  it is submitted that the Secretary of DOTD
   should be required to appear and show cause why it should not be required

to reimburse L & M for all court costs it has advanced heretofore in this case, file an estimate of L & M's loss and damages and deposit said reasonable estimate into the registry of the Court together with legal interest from the date of the "taking" Any further violation by the State is in obvious and purposeful violation of Article 1, Section 4 of the Louisiana Constitution together with the specific provisions of Title 48."

210.

On or about April 14, 1994, counsel for the DOTD filed into suit #363,679 an exception of res judicata based solely upon the 1987 "Joint Stipulation" that had been filed into the three (3) 1986 consolidated expropriation suits. He filed the exception, notwithstanding that on March 15, 1994, the DOTD had paid The Corporation $10,000.00 for moving expense, and having agreed with the Federal Highway Administration that the 1987 "Joint Stipulation" was not binding on L & M; and that L & M was not a party the 1986 suits.

211.

On April 15, 1994, Mr. Soileau, the contract attorney for DOTD served on counsel for The Corporation, some "REQUESTS FOR ADMISSION OF FACT AND INTERROGATORIES." In pertinent part they provide:

"**REQUEST FOR ADMISSION OF FACT #5**:

Does L&M admit that the document titled "Joint Stipulation" and filed on December 28, 1987 in the record of the three consolidated cases mentioned hereinabove (copy attached hereto) was entered into by the Corporation, through Robert L. LeDoux, upon the authority and consent of Larry E. Clark, its President, insofar as said document applies to L & M?

**INTERROGATORY #5:**

101

If Request for Admission of Fact #5 is denied, please state, with particularity, the reason for such denial and the reason that either Robert L. LeDoux or Larry E. Clark did not have authority to enter such a stipulation or to direct that such a stipulation be entered in said proceedings.

## REQUEST FOR ADMISSION OF FACT #6:

Does L&M admit that its President, Larry E. Clark, was aware of and consented to all of the terms, conditions and agreements the "Joint Stipulation" referred to hereinabove insofar as terms, conditions and agreements are related to the Corporation?

## INTERROGATORY  #6:

I(f Request for Admission of Fact #6 is denied, please state, with particularity, the basis for such denial and identify  by name and address the person (s) who can substantiate, with testimony (admissible or which otherwise may lead to admissible evidence), such denial."

212.

On April 18, 1994, the contract attorney for the DOTD filed a "PREMPTORY EXCEPTIONS OF RES JUDICATA AND TRANSACTION AND COMPROMISE" as to The Corporation's claims based solely upon the Interlocutory December 28, 1987 "JOINT STIPULATION' filed into the original three (3) 1986 consolidated expropriation suits.  However, The Corporation was not a party the suits, and nor to that "JOINT STIPUALTION." The December 28, 1987 "JOINT STIPULATION" consisting of a total of three (3) pages with six paragraphs, filed into State of Louisiana, Department of Transportation & Development  vs.  Larry Clark, et ux., No. 325, 511 Consolidated with; State of Louisiana, Department of Transportation & Development  vs.  Larry E. Clark, et, ux,. No. 325, 512 Consolidated with; and State of Louisiana, Department of

Transportation & Development vs. Larry E. Clark, et., ux., No. 328, 772, provides

in pertinent parts beginning on page one:

"JOINT STIPULATION

It is stipulated by and between the STATE OF LOUISIANA, DEPARTMENT OF
TRANSPORTATION & DEVELOPMENT, plaintiff in the above referenced
consolidated matters, and LARRY E. CLARK and MELVENIA SANDERS
CLARK, defendants in the above referenced consolidated matters, as follow:

1.

In consideration for the stipulations made herein, plaintiff and defendants hereby
agree to waive their right to trial by jury and, in its stead, agree to trial by Judge
alone.

2.

It is further stipulated by plaintiff and defendants that the depreciated market value
of the land and all improvements expropriated form the defendants in these
consolidated matters is One hundred seventy three thousand nine hundred eighty-
five and no/100 ($173,985.00) Dollars, and that the severance damage to the land
remaining to the defendants is valued in the total amount of /Twelve thousand
thirty-four and No/100 ($12,034.00) Dollars indicating a total stipulated value
representing the depreciated value of all land and improvements expropriated
herein well as severance damages to the remaining property of the defendants of
One hundred eighty-six thousand nineteen and No/100 ($186, 019.00).

3.

It is further stipulated that the value of the remaining land still owned by the
defendants herein after deducting the above severance damage is Twelve thousand
thirty-four and No/100 ($12, 034.00) Dollars.

4.

The defendants claim that they are entitled to an additional amount of
compensation in excess of the amounts stipulated to in Paragraph Two (2) above
which will enable them to purchase or construct a replacement facility.

Defendants reserve the right to present evidence as to the cost of purchase or reconstruct a replacement facility. Plaintiff denies that the defendant is entitled to anything other than the amounts set out in Paragraph Two (2) above, but nonetheless reserves the right to put on evidence as to the cost to construct or purchase a replacement facility.

5.

It is further stipulated between plaintiff and defendants that the sole remaining issue to be tried in these consolidated matters is the issue of the sum of money, if any, due and owing to the defendants in excess of the amounts stipulated to in Paragraph Two (2) above which would be necessary to allow the defendants to purchase or construct a replacement facility.

6.

In consideration of the waiver of a jury trial by the state and the foregoing stipulations, the defendants judicially admit that they have not suffered and will not suffer any other pecuniary loss as a result of the expropriation of their property and construction of the project other than those set out above. This admission includes, but is not limited to, any claims of economic loss, loss of business, loss of income or expenses involved in moving to another location. Defendants agree that this paragraph applies not only to them but also to the corporation owned by them, namely L & M Hair Care Products, Inc.

MANGHAM, HARDY, ROLFS BAILEY & ABADIE

BY:_____

  ROBERT L. LEDOUX,
  ATTORNEY-AT-LAW
  SUITE 800, CITY PLAZA
  POST OFFICE BOX 3551
  BATON ROUGE, LA 70821-3551
  PHONE: (504) 343-0700
  ATTORNEYS FOR LARRY E. CLARK
  & MELVENIA SANDERS CLARK

STATE OF LOUISIANA, DEPARTMENT
OF TRANSPORTION & DEVELOPMENT

BY: _____
      RONALD J. BERTRAND
      ATTORNEY-AT-LAW
      POST OFFICE BOX 5
      RAYNE, LOUISIANA 70578-0005
      PHONE: (318) 334-2139"

213.

On April 22, 1994, counsel for The Corporation filed in response to

DOTD's exception of res judicata, a "MEMORANDUM IN SUPPORT OF RULE

AND IN OPPOSITION TO PEREMPTORY EXCEPTION." It provides

beginning on page one (1):

"MAY IT PLEASE THE COURT:
The reading ascribed by the State, DOTD to the position by the Court of Appeal
for the Second Circuit is truly incredible.   In its recent writ application on the issue
of prescription, the DOTD argued strenuously for the Court to categorize this case
as one of appropriation rather than expropriation.   Anyone present at the oral
argument on the Court of Appeal argument can still probably hear Judge Marvin
cutting  DOTD's counsel short and stating that in essence an expropriation of a
lessor's property does not create an appropriation as to the lessee  (in this L & M
Hair Care, Inc.).  Judge Marvin furnished counsel a copy of the opinion he ahd
recently authored in Packard's Western Store, Inc.,  v.  State, DOTD, 618 So.2d
1166 (La.App. 2Cir. 1993), writ denied ____So.2d ___, and asked counsel prior to
the oral argument for the DOTD  to distinguish his argument  and position for
appropriation  from the holding for the leasee in Packard's.   DOTD's counsel
could not distinguish  it then  and he cannot do so today.  This remains an
expropriation case.
.................................................................................................................
Undeniably, the State has never made an estimate of L & M's loss.  An estimate is
mandatory not discretionary.  Indeed, all plaintiff's Rule does is to require the

Secretary and DOTD to show why it should not be bound by the Constitution and the statutory procedure it has strenuously and successfully argued for and make and estimate and a deposit.   The adherence to statutory procedure is a ministerial duty.  A failure to do so is either a mal or mis-feasance.  The Rule has been properly issued and the State's exception should be denied.

Finally, the State strains to argue that an estimate of loss is not required in this case because there has been no "taking" and that L & M is not seeking constitutional compensation for loss of "leasehold advantage."  Such an argument is, at this stage of these proceedings, incredible and not in good faith.   Throughout the pleadings, the First Amended Petition, the Pretrial order and the filed and proposed jury instructions L & M has requested and presented evidence for compensation for loss of "leasehold advantage."  For counsel for the State or argue otherwise is simply untrue and is not in good faith.

On the issue of what estimated loss ought to be deposited into the registry of this Court,  the Court need only look to three documents already in the Record in this case:

    A. The two leases between the Clarks and L & M Hair
       Care previously filed by plaintiff into evidence
       which granted L & M a lease to a suitable premises
       through the years 2025 (attached hereto Exhibits
       A(1)  and A (2); and

    B. The lease that DOTD had L & M execute when the
       State expropriated the leasehold  (attached hereto
       As Exhibit "B").

…………………………………………………………………………………………………..
Plaintiff's Rule should be allowed and the State should be required to deposit the sum of $2,060,169.84 into the registry of this Court pursuant to the requirements of Title 48 plus 25% attorney's fee…………………………………………………………………… "

### 214.

The Trial Court, on April 25, 1994, held a hearing for The Corporation's

March 7, 1991, R. S. 48:447A Rule/Motion Rule and The Corporation's March 30,

1994, filed R. S. 48:447A Rule/Motion Rule, arguing that the DOTD had not complied, at all with the applicable State Constitution nor the Expropriation laws.

215.

At the April 25, 1994 hearing, in open court, the Trial Court and the parties agreed, that the Trial Court would issue a ruling on the pending The Corporation's Rules/Motions.  Especially as to the issue as to whether the DOTD was required to make a deposit into the registry of the court, for The Corporation's benefit.  After the agreement, the Court ordered counsel for the parties to submit post-hearing briefs to the Court on the issue regarding must a deposit be made.

216.

On about May 2, 1994, in compliance with the April 25, 1994 oral order given by the Trial Court, counsel for L & M, The Corporation, filed a "SECOND MEMORANDUM IN SUPPORT OF RULE AND IN OPPOSITION TO PEREMPTORY EXCEPTION".  It provided in pertinent parts:

"At the schedule hearing on the Rule on April 25, 1994 the parties stipulated that before the matter should proceed to the taking of evidence as to how much L & M estimate of loss ought to be, the threshold question for this Honorable Court to decide ought to be whether the DOTD was going to be required to make an "estimate" as required by LSA-R.S. 48:442. L & M's position is clear that if, as the DOTD has successfully argued, Title 48 of the Revised Statutes is to procedurally govern the trial of this case, then the DOTD should be required to follow the procedures of all of the provisions of title 48.  Title 48, Section 442, in its pertinent part, states (in a true Title 48 case, the plaintiff is the DOTD):

"SS 442.  The rights of expropriation granted by this Part **Shall** be exercised in the following manner:
A Petition shall be filed  by the plaintiff in the district court of the parish in which the property to be expropriated is situated.

...

(3)     The petition **shall** have annexed thereto the following:

....

(d)     An itemized statement of the amount of money estimated
To be the full extent of the owner's loss for the taking or the
damage, or both, as the case may be. It **shall** be signed by
those who made the estimate, showing the capacity in which
they acted, and the date on which it was made. The real
estate administrator of the department or, in his absence,
the assistant real estate administer, **shall** signify his approval
on the face thereof....."
""(emphasis added)""

Additionally, it provides in pertinent parts beginning on page two (2), in the

first paragraph:

"It has long been held that expropriations are in derogation of the common rights
of individuals to own property and that the laws governing such proceedings must
be strictly construed and that the statutory proceedings highly scrutinized so that
property owners are afforded every opportunity to protect their property interests
consistent with equity and the Louisiana Constitution. State, DOTD v. Boudreau,
401 So.2d 428 (La.App. 1Cir. 1981). In fact, when the DOTD has not strictly
followed the procedures required for an expropriation, an order of the
expropriation has been vacated, until the4 procedures are followed. State, DOTD
v. Bordages, 156 So.2d 617 (La. App. 3 Cir. 1963), writ denied application
denied 158 So.2d 612 (La.1963). Private property shall not be taken by the DOTD
except after just compensation based thereon is filed and deposited in accordance
with statutory procedure. State, DOTD v. Baddock, 170 So.2d 5 (La. App.
1Cir. 1965), writ refused 170 So.2d 867 (La. 1965).

From the above it is clear that this Court ought to require the DOTD to make an
estimate of L & M's loss. There is no law or jurisprudence to the contrary and the
making of an "estimate" is non-discretionary on the part of the DOTD. The
Secretary of the DOTD should be ordered to follow the law. Once the estimate is
made , the DOTD is then statutorily required to deposit into the registry of the

court. LSA-R.S. 48:445.   L & M then believes the amount deposited in adequate (and that is likely to be the case) then a trial as to the amount of its full losses will proceed at a later date......................................................."

217.

On or about May 6, 1994, the DOTD's contract lawyer, Mr. Charles E.

Soileau filed into expropriation suit #363,679 a "SUPPLEMENTAL BRIEF ON

BEHALF OF DEFENDANT (ON THE ISSUE OF DEFENDANT'S

PEREMPTORY EXCEPTION TO RULE TO SHOW CAUSE)."  It provides in

pertinent part:

"Plaintiff filed a Rule to Show Cause asking this Court to Order DOTD to "remit and pay into the registry of the Court a reasonable sum of money for the taking of property and damages to a corporate lessee as a result of an expropriation." Defendant filed a Peremptory Exception of No Right of Action.

......................................................................

At trial of the exception, the parties agreed that the "threshold issue" is presented by the DOTD's exception, i.e. can DOTD be ordered by this Court to make an estimate of just compensation and, thereafter, a deposit of money into the registry of the Court (presumably money which could be withdrawn by plaintiff prior to a trial on the merits) and how is the amount of the deposit, if any, to be determined.
......................................................................
The relief sought by this rule is nothing more or less than a mandamus action. Clearly, if the Secretary of DOTD were to certify "that the expenditure of such funds would have the effect of creating a deficit on the funds of such agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature" , then this action would not lie  and the rule would have to be dismissed.  La. C. C.P. Art. 3862.

For the reasons which follows,  such a certification has not been sought by undersigned counsel even though one or both of the above might be certifiable by the Secretary of DOTD.

If one accepts plaintiff's premise that Title 48 mandates a "deposit for a taking" one must ignore the existence of appropriation in the law.   If one accepts plaintiff's premises that Title 48 mandates a "deposit for a taking" , one must accept that the methodology for estimating such sum (in a non "real estate" sense) is discretionary and non-ministerial.

To determine an estimate or an amount to be deposited, judgment of an expert (other than the public officer) is required, i. e. generally an expert real estate appraiser.   See La. R. S. 48:442 (3)(d)  and 48:443.

While the Secretary may not have discretion concerning the appointment of persons to make an estimate, discretion (in the form of opinions as to value)  is  a given  in  every  case where an estimate and/or a deposit are required."

218.

On or about May 6, 1994, when the former contract attorney for the DOTD filed the Supplemental Brief on behalf of the DOTD, the DOTD's expert appraiser, Mr. Keats Everett, had already prepared a leasehold valuation report for the benefit of L & M Hair Care Products, Inc.  However, L & M had no knowledge that such Report had been prepared.  The Report dated November 2, 1992.  On page three (3) in pertinent part provides:

"The potential **annual market rent** for the subject property as of the date of the taking, August 1, 1986 is estimated at $19, 320.00 (7,728 SF@ $2.50/SF)."

 The counsel for The Corporation also was not aware of the existing Appraisal Report for The Corporation. The DOTD had concealed the Report until 1995. A Court Order was issued that allowed for the Corporation to be provided with a copy.

219.

But, in addition to the Report dated November 2, 1992, DOTD's Expert Real Estate Appraiser, Mr. Keats Everett, along with the DOTD's Expert Builder, Mr. Gullette, they both testified in the February 1988 trial held for the original three (3) 1986 consolidated suits.

220.

Under oath in the February 1988 trial, Appraiser Keats Everette stated in the trial, that the renovation due cost to The Corporation was $254,000, and builder, Mr. Gullitte stated that the renovation costs due to the corporation was $199,000.00 was due to The Corporation.

221.

On May 13, 1994, L & M Hair Care Products, Inc., served the DOTD with its **"RESPONSE TO REQUEST FOR ADMISSION OF FACT AND INTORROGATORIES"** that the DOTD had served on The Corporation on April 15, 1994. In pertinent parts they provide:

**"Response to request For Admission of Fact #5:**

No.

**Response to Interrogatory #5:**

Mr. Clark made no such representation for the corporation in the "Joint Stipulation." Mr. LeDoux did not have any authority or consent from Mr. Clark or the corporation to enter into the "Joint Stipulation."

**Response to Request For Admission of Fact #6:**

No.

## Response to Interrogatory  #6:

The Request is denied because Mr. Clark did not give authority or consent  to enter into the stipulation.  The stipulation appears to be signed  by  Mr. LeDoux without any knowledge whatsoever by anyone with Plaintiff."

222.

Later on October 28, 1994 the former contract counsel for the DOTD, Mr. Charles E. Solieau, and former counsel for The Corporation, L & M prepared, signed, and filed, into the record of expropriation suit #363,679 a second "PRETRIAL ORDER."  It provided in pertinent parts:

1. Plaintiff's claim and supporting legal authorities:
   Plaintiff, L & M Hair Care Products, Inc. (hereinafter "L&M") seeks compensation from the State of Louisiana as a result of its loss of its lease due to I-49 expropriation.  The State expropriated the land from the land owners, Mr. and Mrs. Larry Clark.  At the time of the expropriation L & M had in existence a written lease for the buildings on the subject land from which L 7 M operated a hair care manufacturing, advertising, packaging, wholesaling and retailing business. The business was directed to a particular group and need.  At the time of the expropriation, L & M had many years left on its lease for which L & M had paid only $1.00 (one dollar).  As  a  result of the expropriation by the State, L & M had the need to relocate and renovate another facility with a view toward a particular market and location.  It did  not have the money to do so and was forced to cease its operations.

The losses and just compensation due to L & M include:

   A. Costs of renovate and relocate another
      Leased property;
   B. Moving expenses;
   C. Loss of business and income and profit
      And loss of use thereof  (business
      disruption);

D. Loss of lease-hold advantage;
E. Alternate rent;
F. Costs to regain market share.


2. ……………………………………………………………………..
3. ……………………………………………………………………..
4. Established facts:
   (a) L & M Hair Care Products, Inc, is a Louisiana corporation owned
      by Mr. Larry E. Clark.
   (b) Defendant expropriated land from Larry E. Clark, et ux. (See State,
      of Louisiana, DOTD v. Clark, Civil Docket Number 325, 511
      325,512 and 328,772, First Judicial District Court, Parish of Caddo).
   (C) A lease for the buildings occupied by L & M was in effect at the time
       the State expropriated the land on which the buildings were located.
   (d )At the time of the expropriation, L & M was in the business of
   (e) The State has paid L & M no compensation as a result
      of the expropriation"

5. ……………………………………………………………………..

   The losses and just compensation due to L & M include:

A. Costs to renovate and relocate to another leased property;
B. Moving expenses;
C. Loss of business and income and profit and loss of use thereof
   (business disruption);
D. Loss of lease-hold advantage;
E. Alternate rent;
F. Costs to regain market share
……………………………………………………………………….."

223.

On November 21, 1994 counsel for The Corporation filed a "MOTION

FOR EXPEDITED AND PREFERENTIAL TRIAL SETTING" and the attached

Order is signed by the Trial Judge on November 22, 1994 setting a trial to be held

on March 6, 1995.

224.

Several months later, on January 16, 1995, counsel for the DOTD filed a "MOTION IN LIMINE" alleging that as a result that the two (2) leases between the Clarks and The Corporation were invalid, and/or, as a result that based upon the December 28, 1987 "JOINT STIPULATION" filed in to the three consolidated 1986 expropriation suits, all of the testimony to be given by The Corporation's experts at the March 6, 1995 trial to be held, should be excluded.

225.

In February 1995, counsel for The Corporation filed a motion requesting a Court Order, directing the DOTD to provide a copy to the Corporation of all of DOTD's Experts Reports to be introduced at the jury trial.  In response to The Corporation's motion, an "AMENDED PRETRIAL Order" was issued by the Trial Court on February 21, 1995, ordering all experts' reports to be submitted to opposing counsel no later than February 24, 1995.

226.

Because of the Trial Court's February 21, 1995 "Amended Pretrial Order, counsel for the DOTD provided counsel for The Corporation, a copy of  the DOTD's  contract Appraiser expert, Mr. Keats Everette's leasehold valuation report, prepared on the behalf of  L & M Hair Care Products, Inc.  The Report, dated November 2, 1992.  On page three (3) in pertinent part the Report provides:

114

"The potential annual market rent for the subject property as of the date of the taking, August 1, 1986 is estimated at $19,320.00 (7,728 SF @ $2.50/SF)."

On page four (4), Mr. Everette's report provides in pertinent part:

"Contract Rent

I have been provided with two leases affecting the subject property. The first lease is dated December 30, 1979 and is recorded at the Caddo Parish Clerk of Court's office. This document is recorded on May 22, 1986 under DRN #01091363:

| | |
|---|---|
| Lease Signing Date | December 30, 1979 |
| Lessor | Larry E. Clark |
| Lessee | L & M Hair Care Products (Larry E. Clark) |
| Leased Premises | 1539 Pierre Street, Shreveport, LA |
| Specified Use | Executive office and warehouse space |
| Lease Term | Twenty (2) years |
| Lease Start Date | January 1, 1980 |
| Lease Termination Date | December 31, 2000 |
| Cited Consideration | $1.00 & Other Value Consideration per month |

The second lease is dated November 1, 1985. I am unaware if this lease instrument was recorded:

| | |
|---|---|
| Lease Signing Date | November 1, 1985 |
| Lessor | Larry E. Clark |
| Lessee | L & M Hair Care Products, Inc. (Larry E. Clark) |
| Leased Premises | 1539 & 1601-1603 Pierre Street, Shreveport, LA |
| Specified Use | Executive office and warehouse space |
| Lease Term | Forty (40) years |
| Lease Start Date | November 1, 1985 |
| Lease Termination Date | December 31, 2025 |
| Cited Consideration | $1.00 & Other Valuable Consideration per month |

Included in the Addenda, please fin reduced photocopies of these two lease documents. I am assuming that this second lease supersedes the first lease and that also this was the lease instrument in effect as of the date of the taking. The annual contract rent stipulated in the lease is comprised of two components. The cash

equivalent value of this vague lease payment structure is exacerbated by the fact that **the subject lease is between related parties**."
(Emphasis provided by this writer).

227.

On February 27, 1995, as a result that Plaintiff and L & M Hair Care Products, Inc., for many years had refused to entertain paying a money Bribe and/or a money Kickback to DOTD's contract lawyers, Bertrand & Solieau, had the Trial Judge to issue an Order directing the former attorneys and the former appraiser, of Plaintiff, and of The Corporation, to appear in court, on March 6, 1995 regarding a trial to be held on DOTD's exception of res judicata filed based solely upon the Interlocutory December 28, 1987 "JOINT STIPULATION" filed into the three 1986 consolidated expropriation suits.

**FORMER CONTRACT LAWYERS FOR THE DOTD AND TRIAL JUDGE SCOTT HOLDS A TRIAL ON DOTD'S EXCEPTION OF RES JUDICATA BASED SOLELY UPON THE INTERLOCUTORY DECEMBER 28, 1987 "JOINT STIPULATION" FILED INTO THE 1986 FILED SUITS AS THEY CONTINUE THEIR CONSPIRACY TO DENY THE CORPORATION ITS FEDERAL RIGHTS AND FOR THE FAILURE OF PLAINTIFF AND/OR L & M TO ENTERTAIN A REQUEST FOR A MONEY BRIBE BE PAID**

228.

At the March 6, 1995 trial, the Trial Court cancelled the jury trial and instead held a trial for three days on DOTD's exception of res judicata, based solely upon the 1987 "Joint Stipulation". At the trial, Plaintiff, and the Clarks' former attorneys and many others were called to testify during the three (3) days

trial held regarding the 1987 "Joint Stipulation."  Various documents of evidence were  introduced, all of this was in an effort to have The Corporation made a party to the December 28, 1987 "Joint Stipulation" filed into the 1986 consolidate suits.

229.

At the trial held in March 1995, Plaintiff was threaten with physical bodily harm and was harassed throughout  the trial by the DOTD's former contract attorney, Mr. Bertrand.  The Trial Judge during the trial continually asked Plaintiff "which hat are you wearing now your individual hat or your President hat."  Also, during the three (3) day trial, the Trial Judge would continually have The Corporation's counsel and the contract counsel for the DOTD to approach the bench to inquire as to whether enough pressure been put on Plaintiff and The Corporation for them to agree that they had given their former attorney Mr. Robert L. Ledoux, the approval to agree to the "Joint Stipulation" on behalf of Plaintiff and The Corporation.   Plaintiff and The Corporation never agreed, and eventually during the trial, the Trial Court ruled to take the matter under advisement, and ordered counsel for the parties to file a Post Trial Brief.

230.

As ordered by the Trial Court, on or about March 27, 1995, DOTD's contract attorney, Mr. Soileau, filed into expropriation suit No. 363,679, a "<u>POST –TRIAL MEMORANDUM ONBEHALF OF DEFENDANT-EXCEPTOR</u>" that

117

provides in pertinent parts on the first page:

"Defendant, the State of Louisiana, Department of Transportation & Development (hereinafter sometimes referred to as DOTD), filed exceptions of res judicata and transaction and compromise to the petition of L & M Hair Care Products, Inc.(hereinafter sometimes referred to as L&M).  Trial of the exceptions was held on March 6, 7, and 8 1995.  A total of five witnesses testified.

The first witness to testify was Mr. Ronald J. Bertrand.  He testified that he was the attorney for DOTD and that Mr. Robert LeDoux was the attorney for Larry and Melvenia Clark and L&M in the three consolidated expropriation suits entitled "State of Louisiana, DOTD  v. Larry E. Clark, et ux".  This suit dealt with property owned by the Clarks and "leased" to their corporation.
Mr. Bertrand testified that he and Mr. Ledoux had many ongoing settlemtn discussions regarding the Clark suit.  Bertrand stated that LeDoux prepared a "Joint Stipulation" concerning the settlement agreement finally confected.

Bertrand testified that the modified the settlement agreement originally prepared ny LeDoux, signed it and sent it back to Ledoux on December 10, 1987.  (Tr. P. 25).

LeDoux signed the amended "Joint Stipulation" and it was sent to the Clerk's office where it was stamped "filed on December 28, 1987."

231.

On page three, the March 27, 1995 "<u>POST –TRIAL MEMORANDUM</u>

<u>ON BEHALF OF DEFENDANT-EXCEPTOR</u>" of the DOTD provides in pertinent

parts:

"Mr. LeDoux examined  this case in 1987 which was early in the evolution of the law concerning "full extent of the tenant's loss".  This was just after the <u>Jacob</u> decision and long before the <u>Packard's</u> decision.  He also saw that L & M was continuing to operate its business, even after the taking, at the same location.  He had extensive discussions  with Mr. Clark, Dr. Rice and Mr. Tom Simms concerning the business of L & M.  He considered,  but  rejected,  the idea of filing an intervention in the expropriation law on behalf of L & M (Tr. Pp.  40-115).

............................................................................................................"

232.

The March 27, 1995 "POST –TRIAL MEMORANDUM ON BEHALF OF

DEFENDANT-EXCEPTOR" on page four of the DOTD provides in pertinent

parts:

"Mr. Clark's corporation and the Clarks' individually are bound by the Joint
Stipulation.  That document clearly shows, when couple with the testimony of Mr.
Bertrand and Mr. Ledoux, that the only issue to be resolved is that of the
entitlement to and the cost of a replacement facility for the business.

**La. C. C. Art. 3071 provides that transaction or compromise is an agreement
between two persons, not between two parties.  This agreement is made for
the purpose of preventing or putting an end to a lawsuit  (or an intervention).
The agreement must be reduced to writing.**

A compromise or transaction is an agreement where each person balances the hope
of gain with the danger of losing.  In this case the gain for the Clarks and L & M
was additional money to the Clarks,  the waiver of a jury trial and the right to
litigate the issues surrounding the relocation cost to another facility for the
business (L&M).  The gain to the DOTD was that economic loss issues and
moving cost issues  were off  of the table and the depreciated market value and
severance damages to the Clarks property was fixed.  Each person balanced the
potential  losses and the known gains to reach a settlement."

223.

When the December 28, 1987 Joint Stipulation was filed into the three (3)

1986 consolidated filed expropriation suits, La. C.C. Arts. 3071; 3077; and 3078

provided:

La. C. C. Art. 3071: Transaction or compromise, definition

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

La. C.C. Art. 3078: Res judicata; error; lesion

Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.

La. C.C. Art. 3077: Transaction by one of interested parties, effect as to others

A transaction made by one of the interested parties is not binding for the others, and can not be opposed by them."

234.

On page five, the March 27, 1995 "<u>POST –TRIAL MEMORANDUM ON</u>

<u>BEHALF OF DEFENDANT-EXCEPTOR</u>" of the DOTD provides in pertinent

parts:

"This transaction or compromise was reduced to a writing called a "Joint Stipulation", so that portion of La. C. C. Art. 3071 requiring a written compromise is satisfied.   That writing <u>clearly</u> reflects the balancing of gain and loss made by each affected person.

From the testimony at trial of the exception  it is clear that Mr. Clark (individually and as representative of L & M) knew of and understood the terms of the "Joint Stipulation".   It is clear that Mr. Clark assented to the "Joint Stipulation" by his words,  actions and inaction.   It is clear that Mr. Clark had full legal authority to act for L & M (see Exhibit D-3; Request for Admissions of Fact and Interrogatories and accompanying answers).

It is clear that Robert LeDoux was the attorney for the Clarks and the corporation. La. C. C. Art. 1853 (and comments thereunder), 3000 and 3021, when read together, give Mr. LeDoux the power and authority to act for and to bind the Clarks and L& M to a "Joint Stipulation".

Insofar as the DOTD is concerned, whether or not Mr. Clark approved, the Joint Stipulation binds the Clarks and L & M.   DOTD, even if Mr. Clark is believed, had every legal right to rely on Mr. LeDoux's representations concerning settlement of the case.  DOTD had every right to rely on Mr. LeDoux's signature on the Joint Stipulation as putting to rest all issues, and claims of pecuniary loss, except for that issue and claim dealing with the cost of relocation of the business to another facility…………………………………………………………………………."

235.

The March 27, 1995 "POST –TRIAL MEMORANDUM ON

BEHALF OF DEFENDANT-EXCEPTOR" on page six provides in pertinent

parts:

"DOTD submits that Art. 1853  also applies to L & M because there substantial discussions concerning an intervention by L&M into the Clark case.  La.  C.C. Arts. 1853 and 3071  when read in pari material  indicate that persons need not be parties to settle differences in a judicial proceeding  where it is clear that a non-party  person (L&M) was every right to participate in the "judicial proceeding". The settlement which included L & M was confected to "prevent a lawsuit" (intervention) within a pending "judicial proceeding".  See La. C.C. Art. 1853 and 3071……………………………………………………………………………. ………………………………………………………………………………….

La. C.C. Arts. 3000  and 3021  deal with the subject of agency.  It is clear from the Answers  to the Request  for Admissions  (Exhibit D-3) that Mr. LeDoux was the attorney for L & M and that Mr. Clark had the authority of L & M's Board of Directors  to initiate and to terminate litigation.

As agents  for L & M,  then under Articles 3000 and 3021, DOTD was legally entitled to rely on Mr. LeDoux and/or Mr. Clark (who was trying to settle the case

on his own) concerning the terms of a settlement to put an end to important and substantive issues in the litigation, i. e. the L & M claims."

236.

On page seven the March 27, 1995 "POST –TRIAL MEMORANDUM ON BEHALF OF DEFENDANT-EXCEPTOR" provides in pertinent parts:

"Mr. LeDoux is an attorney, i. e. a professional. His authority to act need not be specified but maybe presumed. La. C.C. Art. 3000. Since Mr. LeDoux was the attorney for the Clarks and L & M, the power so confided in him included the power to file an answer seeking money, in excess of that initially deposited by DOTD, for such things as economic loss, moving expenses, leasehold advantage, lost profits and costs associated with relocation to another facility. (See, Exhibits D-2, DEFENDANT-EXCEPTION, IN GLOBO). Having made these claims, he also had the power to bind the principal (L&M). "to execute the engagements contracts contracted by the attorney, conformably to the power confided to him".
...........................................................................................

237.

The March 27, 1995 "POST –TRIAL MEMORANDUM ON BEHALF OF DEFENDANT-EXCEPTOR" on page nine provides in pertinent parts:

"L & M and DOTD were parties to the "Joint Stipulation". The claims deposed of in the Joint Stipulation are the same claims that L & M seeks compensation for in the current suit. L & M and DOTD are in the same position and quality as in the Clark litigation, with the sold exception that L & M was not a party to any of the Clark suit except the Joint Stipulation. For purposes of that Stipulation, L & M was really a party to the Clark litigation. This is especially important in view of the proposed intervention by L & M......................................................."

238.

Later on April 17, 1995, counsel for L & M, filed a "MEMORANDUM IN

OPPOSITION TO PEREMPTORY EXCEPTION" with it providing on page one

and on page two in pertinent parts:

"The DOTD has filed a peremptory exception of res judicata based upon a Joint Stipulation entered into the underlying <u>DOTD v. Clark</u> case. ........................
........................................................................................................
Indeed, the question simply is: Can a non-party to a lawsuit be held to the terms of a Stipulation that it did not sign or approve.......................................................
........................................................................................................
The State asks this Honorable Court to enforce the terms of the Joint Stipulation ................The Stipulation was signed by the attorney for the Clarks, Mr. Robert LeDoux, but not by the Clarks or L & M or any corporate representative of L & M. Much can be written about the lack of authority of LeDoux to sign the Stipulation, but actual or apparent authority (or lack of it) is not a decision that the Court needs to make in order to resolve the pending peremptory exception. A copy of that lawsuit is attached hereto as Exhibit A. The plaintiff in this case (L & M Hair Care Products, Inc.) did not sign the Stipulation in the Clark case, was not a party to the case, and accordingly, cannot and is not bound by its terms.................
.............................................................................................. "
........................................................................................................

239.

On page three of L & M's April 17, 1995, "MEMORANDUM IN

OPPOSITION TO PEREMPTORY EXCEPTION" provides in pertinent parts:

"A copy of Mr. Solieau's brief to the Second Circuit is attached (and highlighted) on this issue (Exhibit B). As the court can read, Mr. Solieau (on behalf of the DOTD) judicially admitted to the Second Circuit no less than 3 (three) separate times that L & M "was not a party <u>in any</u> way" to the Clark litigation and as the DOTD and Soileau desired at the appellate level, the money was taken away because L & M was not a party. Today, however, is a new day and Mr. Soileau's new brief states that "L&M was really a party to the Clark litigation" (for purposes of the Stipulation). (Is this a case of loss of memory or is it one of double talk on the part of counsel for DOTD?)."

240.

In <u>State, DOTD v. Larry E. Clark et, ux</u>, 548 So.2d 365 (La.App.2nd Cir.

1989), the Second Circuit ruled in pertinent parts as to L & M Hair Care Products,

Inc:

"However, as previously stated, because the corporation was not a party to the lawsuit, this award of compensation for its benefit was inappropriate. **See LSA-C.C.P. Arts. 681, 927(5) and 1201."**

241.

The above three laws, LSA- **C.C.P. Arts. 681, 927(5) and 1201,** cited by

the Louisiana Second Circuit's 1989 opinion, provided in 1989 as follows:

"Art. 681.  Real and actual interest required
Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts;

Art. 927.  Objections raised by peremptory exception
A.  The objections which may be raised through the peremptory exception include but are not limited to the following:
(5)  No right of action, or no interest in the plaintiff to institute the suit; and

Art. 1201.  Citation; waiver; delay for service
A.  Citation and service thereof are essential in all civil actions except summary and executory proceedings, divorce actions under Civil Code Article 102, and proceedings under the Children's Code.  Without them all proceedings are absolutely null.
B.  The defendant may expressly waive citation and service thereof by any written waiver made part of the record."

242.

Furthermore, since the three (3) consolidated 1986 expropriation suits,

State, DOTD v. Clark et., ux, were filed before 1991, the applicable res judicata

laws for any Judgment issued in the three 1986 suits, are former, LSA- C. C. Art.

124

2286; and LSA- C. C. Art. 3506, and/or LSA-C.C. Art. 3556(31). They provided:

"LSA-C.C. Art. 2286

The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.

LSA-C.C. Art. 3506(31) [formerly LSA-C.C. Art. 3556(31) prior to its redesignation in 1991] defines the term "thing adjudged" as follows:

Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal."

243.

In <u>Greer, et al., v. State of Louisiana, et al.</u>, 616 So.2d 811 (La.App. 2nd Cir. 1993, the Louisiana Second Circuit Court of Appeal, ruled in pertinent parts:

"The law of res judicata applicable to the present case is set forth in former LSA-C.C. Art. 2286[2]:

The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.

Additionally, LSA-C.C. Art. 3506(31) [formerly LSA-C.C. Art. 3556(31) prior to its redesignation in 1991] defines the term "thing adjudged" as follows:

Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.

For res judicata to apply, there must be (1) an identity of the parties; (2) an identity of "cause"; and (3) an identity of the thing demanded. *Slocum v. Daigre*, 815*815 424 So.2d 1074 (La.App. 3d Cir.1982), writ denied, 429 So.2d 128 (La.1983).

The doctrine of res judicata is strictly construed. Any doubt as to compliance with its requirements is to be resolved in favor of maintaining the plaintiff's action. *General Truck Drivers, Warehousemen and Helpers Local Union No. 5 v. Altex Ready-Mixed Concrete Corporation*, 385 So.2d 325 (La.App. 1st Cir.1980); *Kennedy v. Ebarb*, 563 So.2d 1341 (La.App. 3d Cir.1990).

...................................................................................

[2] LSA-C.C. Art. 2286 was redesignated LSA-R.S. 13:4231 by Acts 1984, No. 331, § 7. This statute was substantially amended in 1990. Acts 1990, No. 521 provided for an effective date of January 1, 1991, and stated that the new provisions applied to all civil actions filed on or after January 1, 1991. However, it also stated that the "preclusive effect and authority of a judgment rendered in an action filed before the effective date of this Act shall be determined by the law in effect prior to January 1, 1991." Therefore, since the concursus was filed in 1985, we will examine the preclusive effect of the judgment in that case according to the provisions of the "old" res judicata law."

244.

After the March 1995 trial on DOTD's exception of compromise and res judicata had been held, from March 1995 through October 1995 Plaintiff and The Corporation were continually pressured to agree that The Corporation was a party to the Interlocutory December 28,1987 "JOINT STIPULATION" and Plaintiff was informed, that if he did not, the Trial Judge would find a way to rule that The Corporation was a party to the 1987 Joint Stipulation. Plaintiff and The Corporation still refused to agree. Later, on July 3, 1995, the Trial Court issued an

Opinion for DOTD's exception of res judicata and compromise.   On page one (1)

at the second paragraph, the Opinion provides in pertinent part:

"Robert Ledoux signed a stipulation during what was though to be the culmination
of many settlement proposals which would put to rest multiple party litigation
except for relocation costs.   The Stipulation was signed by Ledoux on behalf of
Mr. and Mrs. Clark and it was admitted that he had authority to sign for L & M
Hair Care Products, Inc. 1(footnote)."

...................................................................................................

_____

( 1 footnote)  The admission  was  in response  to a request for admissions.

245.

Afterwards, on October 10, 1995, the Trial Court issued an Interlocutory

Judgment in support of the Trial Court's Opinion issued on July 03, 1995, that

granted the DOTD's exception of res judicata and compromise based upon the

Interlocutory December 28, 1987 Joint Stipulation filed in DOTD v. Clark et ux.

246.

As a result of all of the pressure placed upon Plaintiff at the trial and as a

result of the pressure that the trial judge had placed upon The Corporation's

attorneys to force Plaintiff and The Corporation to accept the terms of the 1987

"Joint Stipulation"  in April 1996, Plaintiff, as President of The Corporation,

prepared an Assignment.   The Assignment stated that Plaintiff  had transferred a

partial interest of The Corporation's claim to Plaintiff.  Based upon the

Assignment, Plaintiff filed into expropriation suit #363,679 a "Petition For

Intervention with an attached Order requesting for the Trial Court's approval for

Plaintiff to be allow to Intervene into the suit.

247.

The Trial Court granted Plaintiff's Petition for Intervention. Afterwards, on May 10,1996, Plaintiff, as the President of The Corporation, and Plaintiff, in his personal capacity, filed into the record of expropriation suit #363,679, a:

**"NOTICE TO THE DEFENDANTS PLAINTIFF WILL NOT PROCEED TO TRIAL UNTIL PLAINTIFF HAS RECEIVED ALL OF ITS CONSTITUTIONAL AND STATUTORY RIGHTS GIVEN BY THE LAW"**

providing in pertinent parts:

"This notice is to inform The defendant that the plaintiff have not and will not waive Its U. S. Constitutional Rights nor its Louisiana Constitutional Rights. Plaintiff respectfully says:

1.

The Fifth Amendment of the U. S. Constitution states that; No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or Naval Forces, or in the Militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself; NOR BE DEPRIVED OF LIFE, LIBERTY, OF PROPERTY, WITHOUT DUE PROCESS OF LAW; NOR SHALL PRIVATE PROPERTY BE TAKEN FOR PUBLIC USE, WITHOUT JUST COMPENSATION.

2.

THE Fourteenth Amendment of the U. S. Constitution states that: All persons born or naturalized in the United States, and subject to the jurisdiction Thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; NOR SHALL ANY STATE DEPRIVE ANY

PERSON OF LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF THE LAW; NOR DENY TO ANY PERSON WITHIN ITS JURISDCITION THE EQUAL PROTECTIOIN OF THE LAWS.

3.

LSA-CONST.  Art. 1, Section 4.  Provides that,  Every person has the right to acquire, own, use, enjoy protect and dispose of private property.   This right is subject to reasonable STATUTORY  RESTRICTIONS  AND THE REASONABLE  EXERCISE  OF  THE POLICE POWERS.  PROPERTY SHALL NOT BE  TAKEN OR  DAMAGE  BY  THE STATE OR  ITS POLITICAL SUBDIVISIONS  EXCEPT  FOR  PUBLIC  PURPOSE  AND WITH JUST  COMPENSATION  PAID  TO  THE OWNER OR INTO THE COURT FOR THE OWNER BENEFIT.

4.

LSA. R. S. 48:442 (1).  Requires that LDOTD file a petition against L & M Hair Care Products, Inc.,  in the District Court for each parcel taken.  As an instrumentality of the State,  such a  petition  and  such  action  may  proceed without the payment of court costs.

5.

LSA. R. S. 442(3) (d) provides that LDOTD must file in the District Court a (3)   Itemized statement of money estimated to be the fullest extent of L & M's Loss and damages for each parcel taken or damaged and/or both.

6.

LSA. R. S. 48:444 provides that the LDOTD  must deposit the estimates of L &M's losses and damages into the registry of the court and L & M is allowed to withdraw.

7.

Attached is a copy of the defendant's estimates for L & M, but defendant has not followed the Constitutions,  or the Statutes  (Exhibit -1).

8.

Also attached is a copy of Plaintiff's experts affidavits, and a stipulation between plaintiff and defendant.   See Exhibits (1-8).

9.

This notice is to serve as notice to everyone, that Plaintiff has not waive any of its Constitutional Rights, nor its Statutory Rights, and WILL  NOT  proceed to trial until  all of its  Constitutional  and Statutory  Rights has been given by the defendant.

L & M Hair Care Products, Inc.

Larry E. Clark,  President
L & M Hair Care Products, Inc.

Larry E.  Clark, Pro Se
1316 Preakness,  Drive
Alpharetta,  Georgia 30202

### CERTIFICATE

I HEREBY  CERTIFY  that a copy  of the above notice has been forward to defendant, through their attorney of record Mr. Charles E. Soileau by certified mail #P337 763 903,  to P. O. Box 5, Rayne, Louisiana 70578.  Postage Prepaid.  This 8th Day  of May 1996.

Larry E. Clark, Pro Se
1316 Preakness  Drive
Alpharetta,  Georgia  30202"

248.

The May 10, 1996 was filed into the record in order to try to prevent any

counsel representing the corporation from waving any of the **federal and/or state**

**constitutional and statutory rights of the corporation and/or of Intervenor**.

In other words, to try to prevent a repeat of what had previously happened in State,

DOTD v. Clark et ux., with the filing of the December 28, 1987 "JOINT

STIPULATION" filed into the three (3) 1986 consolidated suits of DOTD.

250.

The May 10, 1996, notice was also filed as a result of the pressure, threats, and intimidation that had been applied by; the Trial Judge, the DOTDs' contract Attorneys, etc., to force Plaintiff and/or L & M Hair Care Products, Inc., to agree to the terms in the 1987 "JOINT STIPULATION" filed in the three (3) expropriation suits.

251.

Before filing the May 10, 1996 notice, on May 9, 1996, the **Civil Division of the Caddo Parish District Court issued an Order** that was signed by the following Civil Division Judges:

Judge Charles R. Scott of Division A;  Judge Scott Crichton of Division B; Judge Frank H. Thaxton III of Division C; and Judge Leon L. Emanuel, III of Division

G. The Judges' **ORDER** was filed on May 30, 1996, and it provided:

"IT IS HEREBY ORDERED that the attached Rules 9 and 10 of the Civil Division Rules are changed effective May 9, 1996, THUS DONE AND SIGNED in Chambers on May 9, 1996."

Attached to the Judges' Order was a document that provided in pertinent part:

"MAY 9, 1996

## CIVIL  DIVISION  RULES

Rule 9.  TRIAL  SETTINGS—SCHEDULING/STATUS CONFERENCES

Section 1.   After all parties have answered, made a general appearance, or had a Preliminary default entered against them, any party or counsel may request in writing a scheduling/status conference with the assigned judge.   The original and one copy of the request shall be delivered to the Clerk of Court.   The Clerk shall ascertain the correct assignment of the case and shall file the original in the suit record and stamp "Filed" on the copy and route the copy to the assigned judge. Within thirty (30) days following receipt of a request for a scheduling conference, the assigned judge shall:

(b) Issue a Scheduling Order which shall include a trial date, which trial date Shall be no earlier than 60 days following issuance of the Scheduling Order and shall not be later than 180 days following the issuance of the Scheduling Order.  See App. A"

252.

Later, on June 25, 1996, the Trial Court, for expropriation #363,679,

issued a "SUPPLEMENTAL SCHEDULING ORDER—JURY".   In pertinent

part, it provided:

"The foregoing is hereby made an order of the court and the case is set for **JURY** trial on the 3rd day of February, 1997 at 9:30 a. m.   This order being signed on this 25 day of June, 1996, in chambers/..................................................

_____

JUDGE

FIRST JUDICIAL DISTRICT COURT"

The Scheduling Order set a civil trial past 180 days, all in violation of the May 9,

1996 Court Order issued by the Civil Division Judges of the 1st JDC of Caddo

Parish.  The Scheduling Order also violated R. S. 48:447A; 48:451 LSA-C.C.P.

Art. 1201.

**DOTD'S FORMER CONTRACT ATTORNEYS, MR. RONALD J. BERTRAND, MR. CHARLES E. SOILEAU, AND TRIAL JUDGE CHARLES R. SCOTT CONTINUE THEIR CONSPIRACY TO DENY THE 5TH AND 14TH AMENDMENTS U. S. CONSITUTIONAL RIGHTS OF THE CORPORATIONAND PLAINTIFF REGARDING PROCEDURAL & SUBSTANTIVE TO NOTICE/DUE PROCESS-TO COMPENSATION FOR TAKING OF PROPERTY-ANDEQUAL PROTECTION OF THE LAWS**

253.

In December 1996, Larry E. Clark, as a result of having been granted Court Order to Intervene into suit #363,679, filed a R. S. 48:447A Rule/Motion requesting for an Order to be issued to the DOTD directing it to comply with the: 5th & 14th Amendments of the U. S. Constitution and/or Article 1. Section 4., of the LA Constitution and for compliance with the Quick-Taking Statutes of R. S. 48:441 through 48:446.   The Trial Court issued an Order setting the Rule for a hearing to be held on February 3, 1997.

254.

On February 3, 1997, Larry E. Clark and a newly enrolled attorney for L & M, Mr. Hilry Huckaby, both appeared in court on that date.  Once in court, they immediately informed the Court that they were present only for a hearing on the Rule To Show Cause filed in December 1996 and set for trial to be heard on February 3, 1997.  The Trial Transcript for the February 3rd & 4th Hearing shows in pertinent parts the following:

MR. HUCKABY: Your Honor, L & M intends to ask the
Court to hear the rule to show cause that was filed some

months ago before proceeding to trial.

THE COURT:  Which rule is that Mr. Huckaby?

MR. CLARK:    October 7th,  91  and also—

THE COURT:   For the record Mr. Clark is no present.

MR. CLARK:  Your Honor, I would also like it be made known on the record that I am not here for the jury trial, I'm only here on the rule.
THE COURT:  This case is set for jury trial today, Mr. Clark.

MR. CLARK:  Could we reset it because I never agreed.

THE COURT:  Hold on just a minute.  I have not continued this case.   I have denied the motion for continuance in this case.  You filed a motion to continue the case based on what gathered to be a proceeding in some other court,  perhaps a United States District Court.

MR. CLARK:  Your Honor, in addition to that particular motion for continuance I'm also bring up prior motions that had been filed back in '91 and '94 contesting the validity of the taking.

THE COURT:   It those motions have not already been ruled on then I consider them abandoned at this point. If there has been no move to set them for hearing for that period of time,  and  now here we 're in February of 1997 and we 're ready for a jury trial, I will consider the motions whatever rules that have been filed within appropriately filed in the last few months.  I know there was a rule filed back on December.

MR. CLARK:  Your Honor, in addition to that particular Motion for continuance I'm also bring up some prior motions

That had been filed back in '91 and '94 contesting the validity of the taking.

THE COURT: If those motions have not already been ruled on then I consider them abandoned at this point. If there has been no move to set them for hearing for that period of time, and now we're in February of 1997 and we're ready for a jury trial, I will consider the motions whatever rules that have been appropriately filed within the last few months I know there was a ruled filed back in December.

MR. HUCKABY: Your Honor, we wish to make an objection to the ruling of the Court. It is our appreciation of the law that the law mandates that the rule so show cause be heard prior to setting of the trial. These rules were filed some several months ago.

THE COURT: When was that?

MR. CLARK: One of the rule was filed March 7, 1991. An Addition rule was filed March 30, 1994. In addition to filing of the rule on May 10, 1996 the plaintiff and intervenor mailed a notice to defendant informing the defendant that the plaintiff had no intention of proceeding to trial until they complied with the constitution and the statutes.

MR. SOILEAU: May it please the court, intervenor or plaintiff Can't tell the Court when it chooses to proceed to trial. The Court only has the right to do that. If it further please the Court, both the rules to show cause is subject to exceptions, and the one that most recently filed we are also requesting sanctions. We also have a pending motion to compel in light of Your Honor's discussion concerning the pretrial order. We also seek attorney fees and costs in that motion as well.

MR. CLARK: Your Honor, I'd like to bring to the Court's Attention that this is not a personal injury case, this is a constitutional case which follows the federal constitution, Fifth Amendment and Fourteenth Amendment, due process and taking of property without compensation.................."

135

256.

In open court at the February 3, 1997 hearing, the trial court ruled to not have a hearing on the December 1996 filed R. S. 48:447 A Rule/Motion, and refused to make a ruling regarding all the other pending R. S. 48:447 A Rules/Motions.   The Trial Court Ordered the parties to prepare a pretrial order and have it filed before the Courthouse closed at 5: p.m, that same day and for the parties to proceed to a jury trial on the merits to start on the next morning of February 4, 1997.

257.

On February 4. 1997, Plaintiff, Larry E. Clark, and/or the Corporation's attorney, Mr. Huckaby, they did not appeared in court for the jury trial to be held on the merit.  Because, in a LSA-R. S. 48:441 et seq., expropriation (condemnation) proceedings, a pretrial order is not required at all before a deposit of money is made into the registry of the court for the property expropriated. However, a deposit is required and the property owner is allowed to withdraw that amount of money as totally compensation and the proper does not have to, have a trial at all.

258.

However, on February 4, 1997, the former contract counsel for DOTD, Mr. Charles E. Soileau, appeared in court, and he and the Trial Judge agreed to

dismiss expropriation suit #363,679 with prejudice, because of the continuation of their planned conspiracy against Plaintiff and The Corporation. The conspiracy was a result of Plaintiff and The Corporation refusal to entertain the requests made by the former contract attorneys for a payment of a Bribe and/or a Kickback, and because of Systemic Racism. A Judgment was issued on that same day by the Trial Judge, thereby violating various federal constitutional and statutory laws, applicable to Plaintiff and to The Corporation.

259.

The February 4, 1997 Judgment of dismissal with prejudice denied The Corporation and Plaintiff the right to federal constitutional notice/due process that the private property of the corporation had been taken; the right to federal notice/due process that a jury trial had been set for February 3, 1997; denied the right to federal constitutional compensation; denied the federal constitutional right to equal protection of the laws, such as, but not limited to, the right to accept a deposit of money into the registry of the court as compensation for property expropriated without having to proceed to a trial to obtain compensation.

260.

The February 4, 1997 Judgment was appealed, and on appeal, the Louisiana Second Circuit affirmed the dismissal, based solely upon the failure to file a pretrial order and to appear in court for a jury trial. L & M Hair Care Products,

Inc., et al  v.  State of Louisiana, DOTD, 704 So.2d 415 (La.App. 12-10-1997),

rehearing denied (La.App.2nd. Cir. 01-15-1998).

261.

However, the February 4, 1997 Judgment is absolutely void based upon:

The Corporation had not legislative authority to even file expropriation suit

#363,679; that LSA-R. S.48:447A ; LSA-48:451 prevented the setting of a trial on

the merits and/or required for the Sheriff to serve Plaintiff and The Corporation

with notice/due process of the setting of the jury trial.  Also, the May 09, 1996

Court Order issued by the Judges for the Civil Division of the 1st JDC of Caddo

Parish, denied the Trial Court the right to set the case for a trial past 180 days of

the issuing date of the Court's June 25, 1996 Scheduling Order .  The case was set

for trial over 200 days past the issuing date of  the June 25, 1996 Scheduling

Order.  Also, the February 4, 1997 Judgment violated LSA-R. S. 48:456 and

federal constitutional law as it denied constitutional compensation.

262.

Afterwards, litigation between the parties continued in various other state

and federal courts and after two decades, later, in suit #363,679, the Trial Court, in

February 2018, granted Plaintiff's motion to proceed In Forma Pauperis and

Plaintiff was allowed to file directly into the 1990 filed expropriation suit

#363,679, based upon the violation of state and federal constitutional law, etc., a:

"Petition for Absolute Nullity of the Final Judgment Issued By This Court on February 4, 1997, and for the Absolute Nullity of the Opinion Issued On December 10, 1997, by the Louisiana Second Circuit Court of Appeal That Affirmed this Court February 4, 1997 Judgment."

This Petition was filed by Plaintiff in 2018, because in 2002, Plaintiff legally

purchased a partial interests in the claim of L & M, The Corporation.  In 2011, the

19th JDC of East Baton Rouge Parish also allowed Plaintiff to file a suit, also based

upon Plaintiff's 2002 legal partial interests in the claim of The Corporation.

263.

On or about March 8, 2018, the DOTD, after being served Plaintiff's

February 2018 filed petition, DOTD filed an exception of res judicata.  The

exception of res judicata was based solely upon the February 4, 1997 Judgment,

previously issued in the suit.

264.

The Trial Court set the DOTD's exception of res judicata for a trial to be

held on April 23, 2018.

265.

On April 23, 2018, the parties appeared in the trial court for the trial.  In

open court, the Trial Court orally ruled to grant the exception.  On May 24, 2018,

the court issued a Judgment attempting to grant DOTD's March 2018 exception of

res judicata filed into expropriation suit #363,679.

266.

Plaintiff appealed the May 24, 2018 Judgment, and the Louisiana Second

Circuit ruled to affirm the judgment in the consolidated opinions issued by the appellate court on January 15, 2020.

267.

Later, Plaintiff filed a writ application with the Louisiana Supreme Court; and on September 23, 2020, the application was denied. Plaintiff filed a motion for reconsideration in the Louisiana Supreme Court and that motion is presently pending in March 2021. Also in January 2021, Plaintiff uncovered that all the Judgments issued for the expropriation suits by Trial Court in 2018 were Interlocutory. None of Judgments were final, and were none were certified as an appealable Judgments, and neither had all issues and all claims had been decided. Therefore, other motions were filed by Plaintiff in 2021 into the expropriation suits at the 1st JDC of Caddo Parish. The Court set a trial date of April 12, 2021 for Plaintiff's January 2021 filed motions.

## 8TH STATE COURT SUIT #425,690-D 19TH JDC EAST BATON ROUGE PARISH FILED IN MARCH 1996; IS ONGOING IN 2021 AS A RESULT OF THE THREE (3) CONSOLIDATED EXPROPRIATION 1986 FILED SUITS AND THERE IS PRESENTLY A VIOLATION OF FEDERAL LAWS

268.

While the May 1990 filed legal malpractice suit #362,381 was pending in the 1st JDC of Caddo Parish and while the July 1990 filed expropriation suit #363,679 was also pending in the 1st JDC of Caddo Parish, later on March 08,1996,

140

Plaintiff, as the President of L & M, filed Mandamus suit #425,690-D, at

the 19th JDC of East Baton Rouge. The Mandamus was filed against Secretary

Frank Denton and Administrator James M. Dousay.  In pertinent part of the

Mandamus suit it provided on page two in pertinent parts:

      "5.

The Plaintiff , L & M Hair Care Products, INC., the lessee (owner) of the property
expropriated, had two leases before LDOTD expropriated the property.  One of the
leases was RECORDED in the public records before LDOTD filed its suits to
expropriate the property from the Clarks, lessor (owners).  L & M's lease was a
Jus Ad Rem  which encumbers the right of full ownership of the property and
property rights that LDOTD expropriated from the Clarks.

      6.

The FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION
recognizes a lease as property, and the lessee rights to compensation,  and  States
are to do the same through the FOURTEENTH AMENDMENT OF U. S.
CONSTITUTION.   States  who receive financial assistance must also follow the
UNIFORM RELOCATION  ASSISTANCE AND REAL PROPERTY
ACQUISTION POLICIES ACT OF 1970, Sections 301, 305, 42 U.. S. C. A.
Section 4651, 4655, and the grant recipient must offer the real property interest
owner the full appraised value of the interest.  Also, see TITLE III-UNIFORM
REAL PROPERTY ACQUISITION POLICY 49 CFR subtitle A(10-1-92)
Edition) Office of the Secretary of Transportation, Subpart B-Real Property
Acquisition Section 24.101.  the provisions of Sections 24.103, 24.104, and 25.105
must apply to the greatest extent practicable under State law. (See section  24.4 (a).
Additionally,  when the State or State agency  takes  property, State laws governs
what a property interests is, a property interests, as well as how the property is to
be taken, and the method of compensation.   In this case, Louisiana Constitution
Article 1. Section 4., and the Statutory Restrictions of Title 48 of the Revised
Statutes of 1950,  Sections 48:441 through 48:460, inclusive as amended and
reenacted apply to this case"

269.

After the East Baton Rouge Mandamus suit was filed, the Judge for the 19th

JDC of East Baton Rouge Parish ruled that Plaintiff as President and as a non

Attorney, could not represent The Corporation for the mandamus in the state court.

270.

Later in May 1996, Attorney Hilry Huckaby enrolled as counsel of

record in this suit, #425,690-D 19th JDC, to represent the corporation, L & M

Hair Care Products, Inc.

271.

On July 3, 1996, Attorney Huckaby, in this suit, #425,690-D 19th JDC,

filed a "MOTION AND ORDER FOR ALTERNATIVE WRIT" to be issued

to Secretary Frank Denton and an Order was signed on July 9, 1996.

272.

On November 4, 1996, the 19th JDC issued a good faith Order in which

court directed the parties to try to reach a settlement of the case.

273.

On November 6, 1996, the former contract Lawyer for the DOTD gave the

19th JDC Notice that the DOTD will file a writ application with the Louisiana First

Circuit regarding the Court's ruling that directed the parties to try an attempt to

reach a settlement of the case.

274.

On November 22, 1996, Attorney Huckaby in the 19th JDC suit #425,690-D, filed a "FIRST AMENDED PETITION FOR DAMAGES AND WRIT OF MANDAMUS" with an attached Order requesting for an alternative writ of mandamus to be issued, directing the Secretary of DOTD to make deposits into the registry of the court for the benefit of L & M, or for the Defendants to appear in court on March 18, 1997 and show cause as to why a deposit should not be made.

275.

On February 3, 1997, the Louisiana First Circuit Court of Appeal issued a ruling that granted the DOTD's writ application filed regarding the 19th JDC's ruling directing the parties to discuss settlement of the suit; and the appellate court reversed the ruling issued by 19th JDC, that directed the parties to try to settle the case.

276.

On February 5, 1997, A "WRIT OF MANDAMUS" was issued by the Clerk of Court for the 19th JDC to Secretary Frank Denton as directed by this Honorable 19th JDC in suit #425,690-D, and Secretary Frank Denton was served on February 7, 1997.

277.

Into the East Baton Rouge Parish, 19th JDC mandamus suit, #425,690-D, the DOTD filed an exception of res judicata based solely upon the Interlocutory

December 28,1987 "Joint Stipulation" filed in the Caddo Parish 1986 expropriation

suits.  Later, the Trial Court for the 19th JDC, on February 13, 1997, issued an

Interlocutory JUDGMENT that in part granted DOTD's Res Judicata/Transaction

and Compromise as to Larry Clark, but denied the Res Judicata/Transaction and

Compromise as to L & M.

278.

Later, as a result of the 1st JDC of Caddo Parish issuing a February 4,

1997 Judgment of dismissal with prejudice for expropriation suit #363,679, and

along with a February 20,1997, Judgment of dismissal with prejudice issued in

federal Mandamus suit #cv96-1360 filed in June 1996 at the U. S. District Court,

W. D. of Louisiana-Shreveport-Division, the former contract lawyers for the

DOTD in #425,690-D, 19th JDC of East Baton Rouge filed a motion to re-urge

their exception of Res Judicata/Transaction and Compromise as to February 13,

1997 Judgment that denied res judicata at to The Corporation, L & M.

279.

The Trial Court set the DOTD's motion to re-argued res judicata as to L &

M, for a hearing and afterwards, the Trial Court denied the motion based upon that

the Caddo Parish and the Federal Judgment were both subject to an appeal.

280.

The DOTD unhappy with the Trial Court's ruling not to grant res judicata,

as to L & M, the former counsel for the DOTD filed another writ application with

the Louisiana First Circuit Court of Appeal.  The DOTD writ argued that if res

judicata was not applicable then exception of Lis pendens, had to be applicable.

281.

While the DOTD's writ application was pending at the Louisiana First

Circuit, on February 06, 1998, counsel for the Corporation filed an amended and

supplemental petition; therein, adding additional defendants and added federal civil

rights violations, into the East Baton Rouge 19th JDC suit .

282.

 Later, the First Circuit issued a reported an unpublished opinion,

regarding the DOTD's writ application concerning the 19th JDC denying res

judicata as to the claims of L & M.   But, the appellate court ruled that Lis pendens

was applicable based upon that Caddo Parish expropriation suit #363,679, was

filed in 1990 and that the 19th JDC suit #425,690-D was not filed until 1996.

Therefore, the appellate court directed the 19th Judicial Trial Court to dismiss suit

#425,690-D, or to the stay the suit pending finality of  the pending appeal of Caddo

suit #363,679.   The Trial Court ruled to stay the 19th JDC suit #425,690.

283.

Several years after the 19th JDC suit had been pending, later on October 7,

2002, Attorney Paula Cobb, enrolled as counsel for L & M Hair Care Product, Inc.,

and she filed a motion to lift the Stay.

284.

On October 8, 2002, the 19th JDC issued an Order lifting the Stay of suit #425,690-D.

285.

After the Stay was lifted, the former contract lawyer for the DOTD in suit #425,690, again, filed an exception of res judicata based upon various past and pending state and federal suits litigated between the parties.

286.

Then, the 19th JDC Ordered the DOTD to file into the record of the 19th JDC suit, #425,690-D, the entire record of every related state and federal court suit that had been filed regarding the parties and/or for in support of the DOTD's exception of res judicata.

287.

After the entire record of all related state and federal suits had been filed into suit #425,690-D, counsel for L & M on February 4, 2003 filed an amended petition requesting for absolute nullity of the following Judgments:(1) The Interlocutory December 28, 1987 Joint Stipulation filed into DOTD, v. Clark Docket Nos. 325,511, 325,512, and 328,772, 1st JDC, Caddo Parish; the February 4, 1997 Judgment, Docket No. 363,679 1st JDC of Caddo Parish; the October 9, 1995 Judgment, Docket No. 363,679, 1st JDC, Caddo Parish; the July 28, 1998 Judgment, Docket No. 429,240, 1st JDC, Caddo Parish.

146

288.

As a result of the many volumes of state and federal suits filed into the Record in support of the DOTD's exception of res judicata, the Trial Judge appointed a Special Master to assist the Trial Court, on the exception. The former contract lawyer for the DOTD objected to the appointment of a Special Master. Therefore, a third writ application was filed with the First Circuit Court of Appeals. The writ application argued that the DOTD had not agreed with the Trial Court regarding the person selective to serve as the Special Master.

289.

Later, the First Circuit granted the writ application and the First Circuit reversed the Trial Court's Order appointing a Special Master based upon that the DOTD had not agreed and that the statute mandates for all the parties to agree.

290.

Afterwards, the 19th JDC held a status conference with counsel for each party, and on October 13, 2004, the 19th JDC issued an Order appointing Commissioner Rachel Pitcher Moran to make a recommendation to the Trial Court regarding the DOTD's exception of res judicata.

291.

On October 6, 2005, Commissioner Morgan issued a twenty (20) page "REPORT" that provided in pertinent part:

"SUMMARY OF ANALYSIS

Based upon my review of the records, having reviewed the records, and having considered the old res judicata standard for all suits filed before January 1991 and the new standard for all suits filed thereafter I suggest that the following judgments/suits are res judicata as to the issues noted hedrinafter and raised in the current petitions by L & M.

1.  <u>L & M Hair Care Products, Inc., v. La. DOTD</u>, filed in 1990 in the 1st Judicial District Court in Caddo Parish as # 363,679 appears to be res judicata as to all issues raised therein between the same parties, L & M and DOTD, including the claim for money damages and mandamus based on the expropriation of L & M's property in 1986. (It is not res judicata as to the nullity claims raised in the current amended petition filed in 2003).

2.  <u>Larry E. Clark and L & M Hair Care Products, inc v. Pena</u> filed in or about 1996 as #96-1360 in U. S. Western District also appears to be res judicata between L & M and DOTD as to all claims for monetary damages or mandamus relief as a result of the 1986 expropriation.

3.  <u>Clark, et al., v. DOTD  # 98-1753</u> appears to be res judicata as to any claim by damages as a result of federal/civil rights violation claims made in the current suit in connection with the expropriation of 1986.

The action for nullity sought by L & M does not appear to have been finally adjudicated by any Court, although the same claims appears to be still pending in Caddo Parish District Court in the previously filed suit number 429,240 after remand by the federal court."

292.

On October 31, 2005, the 19th JDC issued an Order that adopted the

Commissioner's Report and the stated in pertinent parts:

"  <u>ORDER</u>

After a careful de novo consideration of the entire record herein, together with, any traversal timely filed and the Court adopting as reasons, the Commissioner's Report filed herein.

IT IS ORDERED, that Defendant's Exception of Res Judicata as to monetary relief due L & M by mandamus or by claims of civil rights violations, as a result of the 1986 expropriation, is maintained and granted.
IT IS FURTHER ORDERED, that the Exception of Res Judicata, as to nullity of prior judgments rendered in connection with the 1986 expropriation suit is overruled as no final judgment, dispositive of all claims has been rendered."

293.

After the 19th JDC issued the Order adopting the Commissioner's Report

the DOTD filed an exception of no cause of action and an exception of mootness.

The exception argued that as a result that two federal judgments had been selected

to sustain res judicata, the 19th JDC suit #425,690-D had to be dismissed because

the state court had no jurisdiction to declare federal judgments void; and therefore,

the issue of nullity regarding the state court judgment issued in the 1st JDC of

Caddo Parish was moot.

294.

Later, On January 3, 2006, counsel for L & M filed a MOTION TO

AMEND PETITION TO DECLARE FEDERAL JUDGEMENTS NULL; TO

DECLARE ASSIGNMENT OF NON LAWYLER ASSIGNMENT TO

LEGALLY REPRESENT A CORPORATION TO BE ILLEGAL AND ALL

RESULTING JUDGMENTS VOID" and on January 4, 2006 the Trial Court

issued an Order that denied the motion to amend.

295.

After the denial of the motion to amend, the Trial Court held a hearing on the exceptions of mootness and no cause of action and ruled to sustain.   On September 11, 2006 a Judgment was issued by the 19th JDC.  An appeal was filed on the September 11, 2006 Judgment.

296.

On May 2, 2008, the LA First Circuit issued Unpublished Opinion No. 2007 CA 1364, therein affirming the September 11, 2006, Judgment of the 19th JDC based solely upon the March 20, 2000 federal civil rights judgment issued in federal suit cv98-1753.  A writ application was filed and later, on October 8, 2008, the Louisiana Supreme Court denied the writ application filed.

297.

Later, on March 6, 2009, into the pending Bribery, Fraud, Conspiracy, Shakedown, and Extortion, Nullity of Judgments suit, #429,240 1st JDC of Caddo Parish, the former contract lawyer for the DOTD filed a Motion Requesting For A Judgment Of Dismissal Without Prejudice Based Upon The Failure Of Larry E. Clark and L & M To Prosecute State Court Nullity Suit #429,240.

298.

On March 9, 2009, into the pending Bribery, Fraud, Conspiracy, Shakedown, and Extortion, Nullity of Judgments suit, #429,240 1st JDC of Caddo

Parish, a Judgment of Dismissal Without Prejudice, was rendered by the court.

299.

Although the Judgment of dismissal without prejudice was issued on March 9, 2009, the DOTD did not have Plaintiff, Larry E. Clark, served with a copy of the Motion and the Judgment as required by law until July 2010. Then as of this present time in March 2021, L & M Hair Care Product, Inc., still has not been served with a copy of the Motion and Judgment, as required by law.

300.

Once, Larry E. Clark was served as required by law, a timely motion to set aside the March 09, 2009 Judgment of dismissal without Prejudice filed into suit #429, 240. After a hearing, the Trial Court denied the motion, and Larry E. Clark filed an appeal.

301.

As a result of the issuing of the March 09, 2009 Judgment of Dismissal Without Prejudice in Nullity Suit #429,240, that Judgment also dismissed without prejudice federal civil rights suit #cv98-1753.

302.

Therefore, while the appeal of the March 09, 2009 Judgment was pending at the Louisiana Second Circuit Court of Appeal, Larry E. Clark as a result that he had, in 2002, purchased a partial legal interests in the claim of L &M, on May 24, 2011, he filed into suit #425,690,19[th] JDC, a motion to proceed In Forma Pauperis;

151

a Petition seeking for nullity of September 11, 2006 Judgment issued by the 19th

JDC; for the absolutely nullity of all the judgments issued in all of the Caddo

Parish expropriation suits; for a Mandamus; and for other state and federal causes

of actions. The Trial Court granted the motion to proceed IFP.

303.

In addition to filing the May 2011Petition into suit #425,690-D, also a

Rule To Show Cause was filed, seeking for nullity of the September 11, 2006

Judgment issued by the 19th JDC, as well as for nullity of the many Judgments

issued in the various suit filed in the 1st JDC of Caddo Parish.

304.

On August 12, 2011 the DOTD, through newly enrolled contract counsel

filed an Answer that incorporated various exceptions to the May 2011 filings. One

such exception was directed at the use of summary proceeding seeking for the

nullity of the September 11, 2006 Judgment.

305.

After several trials had been held for the various filings of the parties, later

the 19th JDC in September 2012, issued a minute entry that denied Plaintiff's Rule

To Show Cause filed requesting for the absolute nullity of the Court's September

06, 2011 Judgment.

306.

Then, on December 10, 2012, the 19th JDC, issued a judgment that denied

the request for the absolute nullity of the Court's September 11, 2006; the

Judgment granted some of the exceptions filed by the DOTD; and as dismissed

some of the previous petitions filed by L & M.

307.

Plaintiff, filed an appeal to the Louisiana First Circuit Court of Appeal as to

the December 10, 2012 Judgment issued by the 19th JDC.

308.

Later, the Louisiana First Circuit Court of Appeal, issued unpublished

opinion number 2013 CA 0371 La.App.1[st] Cir. 2013), Clark et al., v. State, Dept.

of Transportation And Development, ruling, therein, to affirm the December 10,

2010 Judgment of the 19th JDC. The First Circuit affirmed the December 10, 2012

judgment based upon a June 30, 1999 unreported and unpublished opinion, #97-

30715 issued by the U. S. Fifth Circuit Court of Appeal, and based upon

unpublished opinion #11-30724, issued on June 25, 2012, also by the U.S. 5th

Circuit. Plaintiff filed a writ application with the Louisiana Supreme Court as to

the First Circuit's opinion #2013 CA 0371. The Louisiana Supreme Court denied

the writ application. Then, Plaintiff filed a writ application with the U. S. Supreme

Court, and it too was denied.

309.

After the U. S. Supreme Court had denied the writ application, later Plaintiff realized that the December 10, 2012 Judgment of the 19th JDC was a non appealable, Interlocutory Judgment. The judgment had not been certified and/or not designated by the Trial Court for an immediate appeal. As such, Plaintiff realized that the Louisiana First Circuit had no subject matter jurisdiction on appeal of the December 10, 2012 Judgment issued by the 19th JDC.

310.

Therefore, Plaintiff, in April 2015, filed into suit #425,690-D 19th JDC, a Petition for nullity of the opinion issued by the Louisiana First Circuit Court of Appeal regarding the December 10, 2012 Judgment.

311.

Then, in March 2016, Plaintiff filed into suit #425,690-D 19th JDC, an additional amended and supplemental Petition. It added federal civil rights violations claims; state law claims; and requested for nullity of following judgments: (1)nullity for the Trial Court's September 06, 2006 Judgment and the December 10, 2012 Judgment; (2) absolute nullity for all of the 1986 consolidated expropriation proceedings;(3) nullity of the July 1988 final Judgment issued in three consolidated expropriation suits; (4) for the absolute nullity for the February 4, 1997 judgment issued in expropriation suit #363,679; and(5) for nullity of all

proceedings in suit, #363,679 for lack of subject matter jurisdiction.

312.

Later in 2016 or 2017, Plaintiff filed a motion into suit #425,690, 1st JDC of East Baton Rouge Parish, requesting the Trial Court to declare the DOTD's exception of res judicata unconstitutional, based upon the Fifth and Fourteenth Amendment of the U. S. Constitution. The motion alleged that the granting of DOTD's exception of res judicata, it will result in the denying of: constitutional compensation; due process; and equal protection of the laws. The motion was denied.

313.

Years, later, in early June 2020, in suit #425,690-D, 19th JDC of East Baton, Plaintiff forwarded a letter to the Clerk of Court and to the Trial Judge requesting the court's permission for Plaintiff to file a motion to set a hearing date for Plaintiff's 2011 pending Mandamus cause of action. The Mandamus requested for the Secretary of the Louisiana Department of Transportation to be ordered to perform his ministerial duties in accordance with LSA-R. S. 48:441 through 48:446 as required by Art. 1. Section 4., of the Louisiana Constitution.

314.

Afterwards, on June 12, 2020 the Court issued an Order setting the Mandamus for a hearing to be held on July 28, 2020. The Order provided that: "All exhibits and documentary evidence must be exchanged and provided to the

155

court 15 days prior to the hearing."

315.

On June 15, 2020, Clerk of Court for the 19th JDC of East Baton Rouge

Parish issued a notice that provided in pertinent part:

> "YOU ARE HEREBY NOTIFIED OF THE FOLLOWING ACTION
> FOR THE AFOREMENTIONED CASE ON07/28/2020 AT 09:30 AM
> FOR HEARING. COMMENTS: A Mandamus Hearing is scheduled
> in this matter on the 28th day of July 2020 at 9:30 am. MEMO IN
> OPPOSITION TO BE SUBMITTED TO THE JUDGE NO LATER
> THAN EIGHT (8) DAYS PRIOR TO HEARING."

316.

In early July of 2020, Plaintiff, in accordance with the 19th JDC's Order

forwarded copies his evidence to the Trial Court Judge and to counsel for the

DOTD, for in support of a Mandamus to be issued to the Secretary of the

Louisiana Department of Transportation & Development.

317.

On July 28, 2020, Plaintiff and counsel for the DOTD appeared in the 19th

JDC for trial on the Mandamus. Counsel for the DOTD did not present

any evidence in court and none had been previously provided to Plaintiff or to the

court. At the trial, counsel for the DOTD, just argued that he had recently

filed a motion to strike Plaintiff's motion requesting a hearing to be set for the

Mandamus, because Plaintiff had not obtained permission from the court.

318.

Also in open court on July 28, 2020, counsel for the DOTD, acknowledged that he had failed to have the Court to sign an Order setting a trial date for of his motion to strike. Plaintiff learned of the motion to strike as a result that Plaintiff had called the office of the Clerk of Court to inquire if the trial for the Mandamus would still be held on July 28, 2020, or was the trial postponed as a result of COVID-19. Also, Plaintiff has never been served by the Clerk of Court nor the counsel for the DOTD with a copy of the Court's Order setting a time and a trial date for the motion to strike and for sanctions.

319.

A the July 28, 2020 held trial, the Trial Court allowed Plaintiff to proceed with presentation of his arguments and the introduction of his evidence, and the Trial Judge acknowledged in open court that the court had received all of Plaintiff's evidence submitted for in support of the issuing of the Mandamus. The only response from counsel for the DOTD in was a requests to be allowed to file a post-trial memorandum. The Court ruled orally to allowed both parties the right to submit a post trial memorandum.

320.

Later, in October 2020 or early November 2020, counsel for the DOTD, by U. S. Certified Mail forwarded to Plaintiff, a copy of a proposed Judgment that had been submitted to the Court regarding DOTD's motion to strike and for sanctions. The proposed Judgment provided that a hearing had held been held in October

2020 on the motion to strike and sanctions.  The proposed Judgment requested for

the Trial Court to sign the Judgment striking the Mandamus and the issuing of

sanctions against Plaintiff.

321.

Later, in November 2020 or early December 2020, Plaintiff submitted a

letter to the Clerk of Court for the 19th JDC, and to the Trial Judge requesting

the Court's permission for Plaintiff to file several Ex Parte Motions.   The Ex Parte

Motions entitled:

**"EX PARTE MOTION UNDER THE AUTHORITY OF <u>IN RE</u>
<u>MANSFILED NORTHEASTERN  R. V. NABORS, 135 La. 807, 66 So. 229</u>
<u>(La.9/29/1914),</u> TO HAVE  DECLARED ABSOLUTELY VOID
EXPROPRIATION SUIT #363,679 FILED BY L & M HAIR CARE
PRODUCTS, INC. AGAINST THE STATE OF LOUISIANA,
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT; TO
HAVE DECLARED ABSOLUTELY VOID THE 1987 JOINT
STIPULATION/TRANSACTION AND COMPROMISE
/AGREEMENT/JUDGMENT FILED INTO THE THREE (3) 1986 FILED
SUITS UNDER THE AUTHORITY OF <u>KRUEGER V. TABOR,546 So. 2d</u>
<u>1317 (La.App.3[rd] Cir. 1989)</u> AND <u>RABORN v. RABORN</u>, UNPUBLISHED
N0. 2013 CA 1211, La.App.1[st] Cir. 11-13-2014) AS TO L & M HAIR CARE
PRODUCTS, INC.; AND UNDER THE AUTHORITY OF <u>ANSLAVE v.</u>
<u>STATE FARM MUTUAL INSURANCE COMPANY</u>,  669 So.2d 1328
(La.App. 4th Cir. 1996) AND <u>BIOSONIX, LLC v. OLSON,</u> 185 So. 3d 924
(La.App. 3rd Cir. 2016) TO DENY FULL FAITH AND CREDIT TO ANY
FEDERAL JUDGMENT AS TO L & M HAIR CARE PRODUCTS, INC.
<u>SINCE THE CORPORATION NEVER APPEARED IN FEDERAL COURT</u>**

And

**EX PARTE MOTION UNDER THE AUTHOURITY OF  THE FORMER
VERSION OF INDISPENSABLE PARTY LAW C.C.P. ART. 641; C.C.P.
ART. 1880; C.C.P. ART. 1201; AND  <u>MULLANE V.  CENTRAL HANOVER</u>
<u>BANK  &  TRUST CO</u>. 339 U. S.  306 (1950); <u>CEDRIC  RICHMOND  V.</u>**

**BOARD OF COMMISSIONERS OF ORLEANS LEEVE DISTRICT**, 2 **So.485 (La.App. 4th Cir.2008);** HERNANDEZ V. STATE OF LOUISIANA, DEPT. OF TRANSP. & DEVELOP., **841 So.2d 808 (La.App.4[th] Cir. 2002), WRIT DENIED, 842 So.2d 399 (La. 2003); AND** L & M HAIR CARE PRODUCTS, INC. V. STATE OF LOUISIANA, DEPT. OF TRANSP. AND DEVELP. , **622 So.2d 1194 (La.App.2[nd] Cir. 1993), WRIT DENIED 629 So.2d 1126 (La. 1993), TO HAVE DECLARED ABSOLUTLEY VOID FOR LACK OF SUBJECT MATTER JURISDICTION & FOR LACK OF PERSONAL JURISDCITION,** STATE OF LOUISIANA, DEPT. OF TRANSP. AND DEVELP. V. LARRY E. CLARK AND MELVENIA S. CLARK, **#325,511; #325,512; AND #328,772 CONSOLIDATED, 1ST JDC OF CADDO PARISH, FOR THERE ARE DEFECTS PATENT ON THE FACE OF THE RECORD AS SEEN IN THE OPINION** STATE OF LOUISIANA,DEPT. OF TRANSP. & DEVELP. V. LARRY E. CLARK AND MELVENIA S. CLARK, **548 So.2d 365 (La.App.2d Cir.1989), WRIT DENIED, 552 So.2d 395 (La.1989).**

322.

In response to Plaintiff's two Ex Parte Motions forwarded to the Clerk of Court and to the Trial Judge, later Plaintiff received notice from the Clerk of Court's Office that Plaintiff's Ex Parte Motions were filed on December 1, 2020, and the Trial Judge set the Ex parte Motions for a hearing to be held on March 29, 2021. The Clerk's Notice provided that opposition memorandum should be filed eight days before the trial to be held.

323.

On March 25, 2021, by U. S. Certified Mail, Plaintiff received from Mr. Terrence J. Donahue, Jr. the counsel of record for the DOTD a "RESPONSE IN OPPOSITION TO EX PARTE MOTIONS AND REQUEST FOR SANCTIONS" along with various exhibits.

324.

One such exhibit attached to the "RESPONSE IN OPPOSITION TO EX

PARTE MOTIONS AND REQUEST FOR SANCTIONS" was an "**ORDER**

filed into suit No. 425,690-D on November 19, 2020, and it provided:

"**ORDER**

This matter came before the Court pursuant to the Motion to Strike and for Sanctions filed by defendant, the State of Louisiana, Department of Transportation and Development ("DOTD"), Considering the record, evidence, and argument of counsel:

IT IS ORDERED that DOTD"s Motion to Strike and for Sanctions is GRANTED.

IT IS FURTHER ORDERED that the "Motion to Set a Hearing for the Pending Mandamus Petition" filed on behalf of L & M Hair Care Products, Inc. is hereby stricken from the record.

IT IS FURTHER ORDERED that plaintiff L & M Hair Care Products, Inc. and its principal, Larry E. Clark are prohibited from making any filing into the record of this suit that do not bear the signature of an attorney admitted to practice in the State of Louisiana.

IT IS FURTHER ORDERED that plaintiff L & M Hair Care Products, Inc., must first obtain leave of court and pay all outstanding court costs before filing additional filings in connection with this suit.

ORDER RENDERED in Open Court on October 19, 2020.
ORDER READ AND SIGNED in Chambers in Baton rouge, Louisiana on this_____ day of November, 2020."

Judge Janice Clark 12/14/2020
HON. JANICE CLARK, JUDGE"

325.

The above Court's Order was prepared and was obtained from the Judge by the counsel for the DOTD in the continuation of the conspiracy to deny Larry E. Clark his personal rights granted to him by the 5th & 14th Amendments of the U. S. constitution. The Federal Constitution gives Plaintiff the right to due process and/or to notice for a date and a time in regards to a trial to be held for the taking away federal recognized rights of Plaintiff. For the so called Motion to Strike and for Sanctions, it was obtained to also deny federal constitutional rights for that of L & M Hair Care Products, Inc. The record confirms that no notice of a date and a time for the trial for the Motion to Strike and for Sanctions were never provided to Plaintiff by counsel for the DOTD, nor the Clerk of Court before the trial was held. The record also does not show that notice of a date and time for the trial was ever served on the attorney of record for The Corporation, Ms. Paula Cobb, by counsel for the DOTD or the Clerk of Court. The Order was obtained in an attempt, to deny Plaintiff his day in court as to his person's rights.

**8TH SUIT-#CV96-1360, A FEDERAL MANDAMUS FILED IN JUNE 1996 AT THE U. S. DISTRICT COURT-WESTERN DISTRICT OF LOUISIANA, SHREVEPORT-DIVISION IT ALSO FILED AS RESULT OF THE THREE 1986 SUITS; AND FILED WHILE SUITS: #362,381; #363,679; AND #425,690 WERE ALL PENDING IN THE VARIOUS STATE COURTS**

326.

In May 1996, Plaintiff, as President of L & M Hair Care Products, Inc.,

contacted the office of the Clerk of Court for the U. S. District Court, Western

District of Louisiana, Shreveport-Division, to obtain information regarding the

filing of a mandamus in Proper Person, in federal the court.  Plaintiff was informed

by the Clerk of Court that Judge Donald E. Walter' office was contacted and that

Judge Walter's office stated that a person who is the President of a corporation,

that person could file a mandamus suit, on behalf of  that corporation.

327.

Later on June 05, 1996, at the federal court, Plaintiff filed a Petition For

Writ Of Mandamus, entitled  <u>Larry E. Clark and L & M Hair Care Products, Inc.,</u>

<u>v.  Frederico Pena, Secretary of United States Department of Transportation;</u>

<u>Rodney Salter; Administrator of United States Department of Transportation;</u>

<u>Frank Denton, Secretary of Louisiana Department of Transportation And</u>

<u>Development; and James M. Dousay, Administrator of Louisiana Department of</u>

<u>Transportation And Development</u>, No. cv96-1360, W. D. of LA-Shreveport.

328.

After, the federal mandamus suit had been served on the State defendants,

later on September 27, 1996,  the DOTD's former contract attorney, Mr. Charles E.

Soileau, on behalf of the State Defendants, filed a Rule 12 (b) motion.  It provided

in pertinent part:

"1.

162

The complaint filed by Plaintiffs is one involving State law issues concerning Mandamus of State officials and is one over which this Court lacks subject matter jurisdiction. La. C.C.P. Art. 3862, 3863.

2.

The complaint filed by plaintiffs is one involving employees of the State of Louisiana, who are entitled to Sovereign Immunity under the 11th Amendment to the U. S. Constitution from suit in Federal Court and, therefore, this Court lacks jurisdiction over the person of the State of Louisiana or its employees acting in their official capacity.

2A.

L & M HAIR CARE PRODUCTS, INC., is a Louisiana corporation and Frank Denton and James M. Dousay are Louisiana residents. Therefore, there is no diversity of citizenship and this Court lacks personal jurisdiction over these non-diverse parties.

..............................................................................................

5.

The issue for which plaintiff seeks to have money deposited by defendants, i. e., lost leasehold advantage, has previously been compromised and settled by the parties and said compromise acts as a bar to any recovery by plaintiffs form defendants under Louisiana law. La. C.C. Art. 3071, et seq. See Exhibits 1, 2 and 3 attached to and made part of this motion.

6.

Plaintiff has already sued the State of Louisiana, DOTD and its officers two officers two times in two different State Courts seeking the same relief sough herein against the State of Louisiana, DOTD and/or its officers and both suit are currently pending. (Copies of pleadings in the two other suits are attached to and made a part of this Motion)............................................................."

329.

Also, DOTD's former contract attorney, Mr. Charles E. Soileau, on behalf

of the State Defendants, filed a "MEMORANDUM IN SUPPORT OF

DEFENDANTS' MOTION TO DISMISS MOTION FOR SANTIONS AND

ALTERNATIVELY, FOR ABSTENTION". It requested dismissal of suit based

upon the lack of subject matter jurisdiction and on the lack of personal jurisdiction

because of the immunity granted to the state defendants by the 11th Amendment of

the U. S. Constitution; based upon the failure to state a claim in which relief can be

granted; and based upon a 1987 "Joint Stipulation" filed into the three (3) 1986

consolidated expropriation suits filed in <u>State DOTD, v. Larry E. Clark and</u>
<u>Melvenia S. Clark</u>.

330.

Later, on behalf of the federal defendants named in the federal mandamus,

an assistant U. S. counsel enrolled in the mandamus on their behalf, and a motion

was filed raising the court's lack of jurisdiction, based upon the federal defendants

also having immunity from suit.

331.

Plaintiff filed into the federal mandamus a motion for summary judgment.

Attached to the motion were various documents which included a copy of the

leasehold appraisal report that the Louisiana Department of Transportation And

Development's expert contract appraiser, Mr. Keats Everett, had prepared back in

1992 on behalf of L & M Hair Care Products, Inc., but had been with held for

years and a court order had to issued in 1995 for a copy to be provided to counsel

for L&M.

332.

On February 20, 1997, the federal district, for the mandamus suit, issued

a "Memorandum Ruling And Order" providing in the pertinent parts:

"Pending before the Court is a motion for summary judgment filed by L & M Hair Care Products, Inc., ("L & M"), represented by its owner and president, Larry E. Clark, against only one of the defendants, Frank Denton, Secretary of the Louisiana Department of Transportation and Development ("DOTD").

Also pending before the Court is a motion to dismiss under Fed. R. Civ. Pro. 12, motion for sanctions under Fed. R. Civ. P. 11, and, alternately, motion for abstention filed by defendants Frank Denton and James M. Dousay, Real Estate Administrator of DOTD. For purposes of this ruling all of the above referenced motions will be consolidated.

For the reasons stated herein, the plaintiff 's motion for summary judgment and the defendants' motion for sanctions or alternatively abstention are DENIED. Defendants' motion to dismiss, however, is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE and the cost are to assessed against the plaintiff.

## BACKGROUND

In 1986, the DOTD expropriated three parcels of property from Larry E. Clark and Melvenia Clark for the construction of I-49 in Shreveport, Louisiana. A building, owned by the Clarks, on the property was occupied by a lessee, L & M, a corporation also owned by the corporation by the Clarks...........................

L & M, represented by Larry Clark, now comes to court requesting that this Court issue a writ of mandamus ordering the DOTD to deposit a large sum of money for the benefit of L & M in the Registry of the Court. This sum is equal to the lease hold advantage L & M claims to have lost due to the expropriation of the land. Under the lease contract, which had remainder of 39 years and three months when the expropriation suits were filed, L & M paid the Clarks $1.00 per month for rent, giving L & M an alleged leasehold advantage of $19,320.00 per year. ..............

...................................................................................................
One of the grounds for dismissal proffered by the defendants is that L & M has compromised any claims it may have had for loss of a leasehold advantage when the Clarks entered into a Joint Stipulation agreement with the DOTD.

## LAW AND ANALYSIS

...................................................................................

In the present case, the compromise settlement was reduced to writing in the form of a document entitled "Joint Stipulation."   The Joint Stipulation settlement was signed by the Clarks's attorney, Robert LeDoux, who had the authority to bind both the Clarks and their wholly owned corporation, L & M...........................
...................................................................................
For reasons stated above, the plaintiff's motion for summary judgment is DENIED; the defendants' motion is GRANTED  and the plaintiff's claims are DISMISSED  WITH  PREJUDICE  with costs to assessed against the Plaintiff..
..................................................................................."
...................................................................................

On the same date of the issuing of the Court's Memorandum Ruling and Order, the

federal district court issued a Judgment of dismissal With Prejudice.

### 333.

Later, the federal district court issued a separate judgment that dismissed

the suit as to the federal defendants based upon the exact same grounds that it

dismissed the suit for the state defendants.

### 334.

Afterwards, Larry E. Clark, the only plaintiff in the suit, filed an appeal to

the U. S. Fifth Circuit Court of Appeal as to all the 1997 judgments issued by the

federal district court in the mandamus suit.

### 335.

Once the federal mandamus record was lodged at the U. S. Fifth Circuit

Court of Appeal, Plaintiff was informed by the Clerk of Court that no attorney

had enrolled in the district court for the representation of the corporation, and as a

result, only Plaintiff's appeal was effective.  And, that Plaintiff, as a non-attorney,

could not represent the corporation on appeal; but Plaintiff was welcome to file a motion on appeal requesting Courts' permission to represent the corporation on appeal.

336.

Plaintiff filed a motion on appeal requesting the Courts' permission to represent the corporation on appeal based upon the federal district court had allowed Plaintiff, as the President of the corporation, to represent the corporation in the district court.

337.

The U. S. Fifth Circuit denied Plaintiff's motion requesting permission to represent the corporation on appeal. Thereafter, Plaintiff retained the services of Attorneys, Hilry Huckably and Henry Jones, to assist Plaintiff, with his appeal.

338.

Afterwards, on appeal, Plaintiff and the attorneys filed motions: to have the 1987 "Joint Stipulation" filed into the 1986 consolidated state court expropriation suits; to have the October 1995 Judgment and the February 4, 1997 Judgment declared void that were issued in the 1990 filed state court expropriation suit, #363,679.

339.

Following the motions filed on appeal for the nullity of the state court's judgments, the counsel for the state defendants filed a motion on appeal, requesting

for sanctions to be issued.

340.

Briefs were filed on appeal on behalf of all of the parties. The federal defendants' briefs continued to argue that the federal district court had no jurisdiction at all in the mandamus suit. However, the state defendants' brief completely dropped their jurisdictional defense that was raised in the district court and only argued that the district court had correctly found that the 1987 "Joint Stipulation" filed into the 1986 consolidated suits binds, L & M, the corporation.

341.

Then, the U. S. Fifth Circuit Court of Appeal, on June 30, 1999, issued unreported and unpublished opinion, No. 97-30715, <u>LARRY E. CLARK; L & M HAIR CARE PRODUCTS, INCORPORATED v. FREDERICO PENA, Secretary of United States Department of Transportation; RODNEY SALTER, Administrator of United States Department of Transportation; FRANK DENTON, Secretary of the Louisiana Department of Transportation and Development; JAMES M. DOUSAY, Administrator of the Louisiana Department of Transportation and Development</u>, for the all the judgments appealed, by Plaintiff, Larry E. Clark. In pertinent parts, the unreported and unpublished opinion provides:

"……………………………………………………………………..
……………………………………………………………………..

There is no federal jurisdiction basis for the pleadings filed in the district court by Larry Clark and L & M Hair Care Products, Inc.   Likewise there is no jurisdictional basis for the motions to nullify various state court judgments  filed by Appellants  in  this  court.   We DISMISS Appellants' motion for lack jurisdiction and DISMISS the appeal as FRIVOLOUS.

..............................................................................................

Furthermore,  the Appellants filing in the district court and in this court constitute a blatant attempt to relitigate a matter resolved adversely to them in the state court and over which the district court has no jurisdiction.   Consequently, we impose the following sanctions.   We award double costs and attorney fees to the Louisiana defendants and ORDER each of Clark, Attorney Huckaby, and Attorney Jones  To PAY to the Louisiana defendants one-third of the total amount of this sanctions. The Louisiana defendants are DIRECTED TO SUBMIT to the Clerk of this Court an itemized list of their fees within 15 days of this Order.

Additionally,  Clark, L & M, Attorney Huckaby, and Attorney Jones  are each ORDERED TO PAY to the treasury of the United States damages of $1,000.00, for a total of $4,000.00, as partial reimbursement of the costs incurred by the government in defending the Secretary of the U. S. Department of Transportation (DOT) and DOT administrator John Salter in this matter."

(A copy of the June 30, 1999 Opinion is Attached  As Exhibit #A).

342.

Also, a "JUDGMENT" was issued by the U. S. Fifth Circuit on June 30,

1999 for the unreported and unpublished opinion.   The Court's June 30, 1999

"JUDGMENT" provides in pertinent parts:

"JUDGMENT
This cause came on to be heard on the record on appeal and was taken under submission on the briefs on file.

ON CONSIDERATION WHEREOF, it is now here ordered and adjudged by this Court that the appeal in this cause is dismissed as frivolous.

IT IS FURTHER ORDERED that double costs and attorney fees are awarded to the Louisiana defendants and each of Clark, Attorney Huckaby, and Attorney Jones to pay to the Louisiana defendants one-third of the total amount of this sanctions.   The Louisiana defendants are directed to submit to the Clerk of this Court an itemized list of their fees and expenses within 15 days of t his order.

Additionally, Clark, L&M, Attorney Huckaby, and Attorney Jones are each ordered to pay to the Treasury of the United States of the costs incurred by the government in defending the Secretary of the U. S. Department of Transportatioin (DOT) and DOTD administrator John Salter."

343.

Then on August 11, 1999, the U. S. Fifth Circuit issued a memorandum as a result that the state defendants had submitted their costs to the Clerk of Court for the U. S. Fifth Circuit, as they had been directed to do so in the Court's June 30, 1999 unreported and unpublished opinion.   In pertinent part, the memorandum provides:

"By opinion entered on June 30, 1999, sanctions were assessed against Larry E. Clark, Hilry Huckaby and Henry B. Jones, and the Louisiana defendants were ordered to submit an itemized list of their fees and expenses to the Clerk. They have done so in the amount of $13,025.20. That amount is hereby APPROVED and shall be used to determine the amounts due pursuant to the June 30, 1999 opinion of this court."

344.

After the U. S. Fifth Circuit had issued the three (3) separate rulings on appeal in June 1991 and in August 1999, Then in 2010, over a decade later, Plaintiff filed a Fed. R. Civ. P. 60(b)(4) motion into the federal district court mandamus suit #cv96-1360.

345.

Plaintiff filed the Federal Rule 60(b) motion as a result that in October 2005, the 19th JDC of East Baton Rouge, in suit #425,690, issued an Order that granted the DOTD an exception of res judicata, based in part upon the February 20, 1997 Judgment issued by the district court, and, in part based upon an Interlocutory Federal Judgment issued in federal civil rights suit cv98-1753. Based upon these two federal judgments issued by the federal district court in Shreveport, the 19th JDC of East Baton Rouge Parish dismissed the state suit by a final Judgment issued on September 11, 2006.

346.

In cv96-1360, the federal district court construed Plaintiff's Rule 60 (b)(4) motion as an attack on the 1999 rulings and sanctions judgments that had been granted by the U. S. Fifth Circuit, in No.97-30715. The district court ruled it had no jurisdiction regarding the sanctions judgment and the Court denied the 60 (b)(4) motion. Plaintiff appealed the judgment issued by the district court that denied the Rule 60(b)(4) motion.

347.

As a result Plaintiff's appeal of the denial of his Rule 60(b)(4) motion, on June 25, 2012, the U. S. Fifth Circuit Court of Appeal, issued unpublished opinion No. 11-30724 Clark v. Pena, et al., ruling in pertinent part:

"Clark sued the heads of various federal and state agencies in 1996, in an attempt to compel the United States Department of Transportation to withhold all federal highway construction funds for Interstate 49 from the State of Louisiana and to compel the Louisiana Department of Transportation to deposit into the registry of the court a sum of money equal to his alleged leasehold advantage in a property allegedly expropriated by the State Department.

The Appellees successfully moved the district court to dismiss Clark's complaint under Federal Rule of Civil Procedure12, and the district court dismissed Clark's claims with prejudice and entered judgment for the Appellees in 1997. After the district court denied Clark's motion for reconsideration, Clark appealed. In 1999, this court dismissed his appeal as frivolous and for lack of subject matter jurisdiction and imposed sanctions on Clark, including a sanction to be paid directly to the Appellees. Through 2002, the district court's docket reflected activity related to the Appellees' garnishment of funds belonging to Clark income to pay this sanction. Between 2002 and 2010, no documents were filed in the district court. In 2010, Clark moved the district court to set aside the judgment it entered in 1997, claiming that the district court's judgment should be declared void for a lack of subject matter jurisdiction. The district court denied this motion and then denied Clark's Rule 59 motion, explaining "it appears that Plaintiff's motivation in attempting to void and/or upset this Court's previous February 21, 1997, judgment is to collaterally attack the imposition of significant sanctions levied by the Fifth Circuit Court of Appeals . . . . This Court cannot and will not interfere with the sanctions imposed by the Fifth Circuit." Clark appeals. On appeal, Clark realistically raises one issue for our review whether the district court abused it discretion by denying Clark's Rule 60(b) motion. This court reviews the district court's denial of Clark's Rule 60(b) motion for an abuse of discretion. See, e.g., Travelers Ins. Co. v. Liljeberg Enterprises, Inc., 38 F.3d 1404, 1408 (5th Cir. 1994).

Rule 60 (b) provides: On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:(1)mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud(whether

previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Clark asserts that this court should void the district court's 1997 judgment because the district court lacked subject matter jurisdiction to review his complaint. The Appellees respond that Clark should have raised the argument she raises now in his direct appeal. Construing his pro se brief liberally, Clark raises no argument that entitles him to relief.  We AFFIRM and DISMISS  his  1appeal.

Footnote:

1.It appears that Clark's Rule 60(b) motion practically seeks to displace the effects of this court's sanctions order. Despite this court's conclusion that the district court lacked subject matter jurisdiction over his complaint, this court retained the power to impose sanctions for Clark's frivolous conduct. See Cooter & Gell v. Hartmarx Corp., 496 U.S.384,395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."). Thus, to the extent Clark attempts to avoid sanctions arising out of the district court's 1997 judgment, his appeal lacks merit."

**9TH SUIT –#97-1266 FOR FEDERAL CIVIL RIGHTS VIOLATION  FILED IN SEPTEMBER 1997 AT THE U. S. DISTRICT COURT E. D. LOUISIANA NEW ORLEANS –DIVISION, AND FILED AS A RESULT OF THE THREE (3) 1986 STATE SUITS, AND WAS FILED WHILE THESE SUITS WERE PENDING IN COURT: #362,381; #363,679; #425,690 AND SUIT #CV96-1360**

348.

In September1997, Plaintiff  in his personal capacity only, filed in the U. S. District Court Eastern District of Louisiana, New Orleans, Louisiana, a suit entitled, <u>Larry E. Clark  v. GEORGE B. LAND, ROBERT G. GRAVES; PAUL RAY DRY; JAMES M. DOUSAY; FALCON A. MORGAN; THOMAS R.</u>

STEPHENS; BURNIE MALONE; RONALD J. BERTRAND; ROBERT L. LEDOUX; ATTORNEY'S LIABILITY ASSURANCE SOCIETY, INC; H. DAVID GULLETTE; KEATS EVERETTE; NEIL WAGONER; FRANK DENTON; NORMAN L. SCISSON; CHARLES R. SCOTT; EDWARD A MICHEL; W.P. PATIN; LAWRENCE A. DURANT; ANNA E. DOW; ROGER L. BURFORD; E. B. NOBELS; EUGENE E. CHIARULLI, JR.; LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT; BROOK, PIZZA & VAN LOON LLP, and MANGHAM, HARDY, ROLFS, BAILEY & ABADIE, No. CV97-1266.

349.

Federal suit #97-1266 contained all of the exact same state claims, federal claims, and defendants as Plaintiff's amended and supplemental December 1997 petition that was filed into Plaintiff's original 1990 filed, legal malpractice state suit #362,381 pending in the 1st JDC Caddo Parish.

350.

Federal suit #97-1266 was filed by Plaintiff in regards to the violations of Plaintiff's federal civil rights and for various state law violations, against the named defendants, such as the State of Louisiana and its officials, employees, agents, as well as in-house and contract attorneys.  Also, the suit has as a legal malpractice cause of action against Plaintiff's former attorneys and their law firms.

351.

The New Orleans Federal District Court granted various defendants a judgment of dismissal based upon prescription and/or preemption. Various appeals were filed regarding the judgments; and on appeal, the judgments were affirmed, and/or, the appeal was dismissed as not appealed timely. And later, the U. S. Supreme Court denied Plaintiff's application for review.

**10TH SUIT –A STATE COURT 1ST JDC CADDO PARISH SUIT #429,240 BASED UPON: BRIBERY FRAUD; AND CONSPIRACY FILED ON JANUARY 23, 1998 AS RESULT OF THE THREE (3) 1986 SUITS; AND THE 1990 SUIT; AND IT WAS FILED WHILE SUITS: NOS. 362,38; 363,679; 425,690; CV96-1360 AND CV97- 1266 WERE ALL PENDING**

352.

On December 10, 1997, the Louisiana Second Circuit Court of Appeal, issued opinion No. 29,998-CA, L & M Hair Care Products, Inc., et al., v. State of Louisiana, DOTD, 704 So.2d 415 (La.App.2nd Cir. 1997) that affirmed the February 4, 1997 Judgment issued by the 1st JDC of Caddo Parish in expropriation suit #363,679. On January 15, 1998 the Second Circuit denied Plaintiff's timely filed application for a rehearing. Before Second Circuit's ruling became final, instead of Plaintiff filing a writ application with the Louisiana Supreme Court, Plaintiff, on January 23, 1998, filed in the 1st JDC of Caddo Parish, Nullity Suit, #429,240, Larry E. Clark and L & M Hair Care Products, Inc., v. State, of Louisiana Department of Transportation And Development, under LSA-C.C.P.

Art. 2005.

353.

Plaintiff 's Nullity Suit #429,240 requested that the February 4, 1997

Judgment issued in expropriation suit #363,679 to be declared void, based upon the

judgment had been obtained based upon Bribery, Fraud, Conspiracy and other

illegal grounds.

354.

Before Plaintiff's Nullity Suit could be served on the DOTD, the contract

counsel for the DOTD, Mr. Charles E. Soileau, learned of the filing of the suit

from Trial Judge, Charles R. Scott and immediately various exceptions were in

response to the Nullity Suit.

355.

Later, Plaintiff received, through the U. S. Mail several Judgments that had

been rendered in the nullity suit against Plaintiff, as a result of several trials had

been held for the various exceptions filed by DOTD's contract attorney.  However,

Plaintiff  had never been given any notice that a hearing date, and time had been

set for the exceptions and/or motions filed by the contract counsel for the DOTD.

356.

As a result of the Judgments issued against Plaintiff and as a result of

Plaintiff not having been provided with notice of the trials held, Plaintiff filed an

amended and supplemental petition into nullity suit #429,240; therein, Plaintiff

added federal civil rights violations; added additional judgments issued from various state court civil suits to be declared a nullity; and added additional defendants.

357.

Once the federal civil rights violations and the additional defendants were added, several of the defendants filed a joint motion in the Shreveport Federal District Court, requesting for an Order for state nullity suit #429,240 to be removed from the state court to the federal court.

**11TH SUIT –FEDERAL SUIT #CV98-1753-A RESULT THAT STATE SUIT #429,240 WAS REMOVED FROM THE STATE COURT TO THE FEDERAL COURT; ALSO FILED AS A RESULT OF THE THREE 1986 SUITS; AND THIS SUIT WAS FILED WHILE: #362,381; #363,679; #425,690; #CV96-1360 AND #CV97- 1266 WERE PENDING IN COURT**

358.

After the Defendants filed their motion for removal, the U. S. District Court, W. D. of Louisiana, Shreveport-Division, issued an Order of Removal, and state Nullity Suit #429, 240 was removed from 1st JDC of Caddo Parish to the federal district court; and the suit in federal court was then known as No. cv98-1753.

359.

While the original state nullity suit, #429,240, was pending in the Shreveport federal district court as suit #cv98-1753, the parties filed various motions. One such motion was filed by the state defendants and the legal malpractice defendants.

They filed a joint motion for summary judgment and/or a motion for the failure to state a claim for which relief can be granted.   The motion requested for dismissal of all of Plaintiff's claims with prejudice.

360.

In regards to the Joint Motion in February 2000, the Magistrate Judge in cv98-1753 issued a Report & Recommendation that granted the joint motion for summary judgment, in part, and denied the motion, in part.   The Report & Recommendation stated that summary judgment should be granted to the defendants as to all of Plaintiff's civil rights violations and that summary judgment be denied as to nullity of state court judgment claims.  It recommended that all state law claims be remanded back to the state court for additional proceedings.

**STATE NULLITY SUIT #429,240 REMANDED BACK TO STATE COURT**

361.

On March 20, 2000, as a result of the February 2000 Magistrate Order, the District Court Judge adopted the Magistrate Judge's Report & Recommendation, in full, and the case was remanded back to the state court.

362.

After the federal court remanded the suit back to the state court, around 2004, Attorney Paula Cobb enrolled in suit #429,240 as counsel of record for The Corporation, L & M.  Either Plaintiff and/or counsel for L & M served the DOTD

178

with pleadings to prevent suit #429,240 from becoming abandon under C.C.P. Art. 561, and while litigation was being conducted in the 19th JDC of East Baton Rouge Parish, in suit #425,690.

363.

However, on March 6, 2009, counsel for the state defendants filed a motion into pending state nullity suit #429,240, requesting for a judgment of dismissal without prejudice for the failure the prosecute, in according with LSA-C.C.P. Art. 561.

364.

On March 9, 2009, the 1st JDC of Caddo Parish issued a Judgment of dismissal without prejudice for nullity suit #429,240.

365.

In July 2010, the counsel for the state defendants had the March 6, 2009 motion and the March 9, 2009 Judgment of dismissal without prejudice served as required by the law, but only upon Plaintiff, Larry E. Clark.

366.

After being served in 2010 as required by law, Plaintiff filed a timely motion to set aside the March 9, 2009 Judgment of dismissal without prejudice.

367.

The Trial Court set Plaintiff's motion for a trial. After parties appeared in court for oral arguments are parties, the Trial Court took the matter under

advisement, and ordered the parties to submit post-trial briefs.

368.

Later, on February 02, 2011 a Judgment was rendered by the Trial court that denied, Plaintiff's motion to set aside the March 9, 2009 Judgment of dismissal without prejudice. Plaintiff filed a motion for reconsideration and it was denied.

369.

Plaintiff appealed to the Louisiana Second Circuit Court of Appeal the Trial Court's Judgment that denied Plaintiff's motion to set aside the March 9, 2009 Judgment of dismissal without prejudice.

370.

On appeal at the Louisiana Second Circuit Court of Appeal the case was Docket 46,743-CA. The Clerk of Court gave notice of the docketing of the appeal and set a date for the parties to file their Briefs.

371.

Afterwards, Plaintiff decided not to file a Brief on appeal, and the Louisiana Second Circuit Court of Appeal, in December 2011, dismissed Plaintiff's appeal, No. 46,743-CA , for the failure to file a Brief on appeal.

**12TH SUIT, No. 14-31376, FILED IN THE U. S. 5TH CIRCUIT COURT OF APPEAL; ALSO FILED AS A RESULT OF THE THREE (3) 1986 FILED STATE COURT SUITS AND FILED AS A RESULT OF THE FEDERAL JUDGMENT ISSUED BY THE U. S. DISTRICT COURT IN THE FEDERAL MANDAMUS SUIT, <u>CLARK, ET AL V. PENA ET AL</u>, #96-1360**

372.

Many years after the U. S. 5th Circuit Court of Appeal had, on June 30, 1999, issued unreported and unpublished opinion No. 97-30715, <u>Clark et al., v. Pena, et al.</u>, USDC No. 5:96-CV-1360, U. S. Dist. Ct. W. D. of Louisiana, Shreveport-Division, later on December 15, 2014, Larry E. Clark filed in the U. S. 5th Circuit Court of Appeal, a "Petition for a Writ of Mandamus and for Other Extraordinary Writ to the United States District Court for the Western District of Louisiana, Shreveport".   This Petition was filed as a result that the Louisiana Department of Transportation & Development had continually filed in the State Courts a peremptory exception of res judicata based upon the Federal February 20, 1997 Judgment issued by the district court in the Federal Mandamus suit <u>Clark et al., v. Pena, et al.</u>, No. 5:96-cv96-1360.  Also, the state court had continually granted the exception of res judicata, based upon the Federal February 20, 1997 Judgment and/or upon unpublished opinion No. 11-30724 issued by the U. S. Fifth Circuit on June 25, 2012.

373.

As a result of the 2014 filing by Larry E. Clark in the U. S. Fifth Circuit, later on March 17, 2015, the U. S. Fifth Circuit issued In re: Larry E. Clark,

unpublished opinion No. 14-31376, ruling therein:

"Larry E. Clark has filed in this court a pro se petition for a writ of mandamus under 28 U. S. C. Section 1651 or other extraordinary writ under 28 U.S.C. Section 2283. Clark's motion to supplement his petition with additional documents is GRANTED.

In his petition, he asks that we order the district court to revise a February 24, 1997 judgment to reflect that it is without prejudice, and that we lift the sanctions imposed against Clark and two attorneys in Clark v. Pena, No. 97-30715 (5th Cir. 1999) (unpublished) (orders entered on June 30, 1999, and August 11, 1999). He also asks that we void three state court judgments that says erroneously rely on the 1997 federal court judgment.

The mandamus remedy is an extraordinary one, which we grant only in the clearest, most compelling cases. A party seeking mandamus relief must show both that he has no other adequate means for achieving the requested relief and that he has a clear and indisputable right to mandamus relief. In re Willy, 831 F.2d 545 (5th Cir. 1987).

The All Writs Act, 28 U. S. C. Section 1651 (a), is the source of our mandamus authority. It is not an independent grant of jurisdiction; it grants us authority only to "issue all writs necessary or appropriate in aid of [our] jurisdiction ()." 28 U.S.C. section 1651 (a); see In re McBryde, 117 F.3d 208, 220 (5th Cir. 1997). Clark appealed the 1997 judgment as well as the later denial of a Federal Rule of Civil Procedure 60(b) motion. There is no case currently pending in the district court, and we have no mandamus authority to order the district court to rule on a close case. Nor does our mandamus jurisdiction extend to vacating orders or opinions entered in earlier appeals.

Finally, we have no jurisdiction over any state court where mandamus is the only relief sought. Moye v. Clerk, Dekalb County Superior Court, 474 F.2d 1275 (5th Cir. 1973). Clark cites to the Anti-Injunction Act, 28 U. S. C. Section 2283, which sets forth limited circumstances under which a federal court may issue an injunction to stay state court proceedings. None of those circumstances are present in this case. Further, Clark asks us to void state district court judgments entered in 2006 and 2012 as well as a state appellate decision entered in 2013, but these are not ongoing proceedings to which a stay could apply even if one of these

exceptions under Section 2283 might be applicable.  The petition for a writ of mandamus is DENIED."

374.

Plaintiff filed an application for a rehearing with the U. S. Fifth Circuit Court of Appeal and it was denied; and afterwards, Plaintiff filed at the U. S. Supreme Court, writ application, No.15-5680.  The U. S. Supreme Court denied the application on October 13, 2015.  Larry E. CLARK, petitioner, v. UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF LOUISIANA, 136 S.Ct. 355 (2015) 193 L. Ed. 2d 240.

**RELITIGATION OF THE ORIGINAL STATE COURT CASE #425,690-19TH JDC OF EAST BATON ROUGE PARISH, AND LATER ,THE THREE (3) ORIGINAL 1986 FILED EXPROPRIATION CASES AT THE 1ST JDC OF CADDO PARISH AND THE 1990 FILED EXPROPRIATION CASE**

375.

Before the U. S. Supreme Court denied Plaintiff's writ application on October 13, 2015, earlier on April 28, 2015, Larry E. Clark had filed into suit #425,690-D at the 19th JDC of East Baton Rouge Parish a "PETITON TO ANNUL FINAL JUDGMENT ISSUED BY THIS COURT ON DECEMBER 10, 2012," therein requesting for the Trial Court to declare void the December 10, 2012 Judgment as well as the 2013 CA 0371 issued by the First Circuit Court of Appeal.

376.

Later in March 2016, Larry E. Clark filed into suit #425,690-D at the 19th JDC of East Baton Rouge Parish, an amended and supplemental petition in

regards to his 2011 filed petition and to his 2015 filed petition.

377.

As a result of Plaintiff's: May 2011 filed petition; April 2015 filed petition and his March 2016 filed petition all filed into 19th JDC East Baton Rouge's suit , as recently as July 28, 2020 the Trial Court held a trial on the Petition for a Mandamus filed in the suit.   There is presently ongoing litigation in state suit #425,690-D at the 19th JDC of East Baton Rouge Parish; and a trial date of March 29, 2021 has been set for several issues to be heard in the case.

378.

Additionally, in regards to the four expropriation suits filed in the 1st JDC of Caddo Parish, litigation in those suits are also ongoing.  An Amended And Supplemental Petition For Nullity of all the Judgments issued in 2018 by the Trial Court along with the January 15, 2020 consolidated opinions issued by the Louisiana Second Circuit was filed on March 26, 2021.  Also, earlier in January or February 2021 an exception for lack of subject matter jurisdiction was filed into the consolidated suits, and the Trial Court  set a trial date of April 12, 2021 for the exception.

**THERE WAS NO TYPE OF FEDERAL JURISDICTION FOR THE FEDERAL COURTS THAT ISSUED THE FEDERAL JUDGMENTS THAT THE DOTD CONTINUES TO USE FOR THE BASIS FOR FILING THE PREMPTORY EXCEPTION S OF RES JUDICATA  IN STATE COURTS**

379.

It is well established that the U. S. Fifth Circuit on June 30, 1999, issued unreported and unpublished opinion No. 97-30715 regarding the federal mandamus suit entitled Clark et al., v. Pena et al., No. cv96-1360 USDC, W. D. of Louisiana, Shreveport-Division, ruling therein that the federal district court had no type of federal jurisdiction, as well as ruled therein that the U. S. Fifth Circuit Court of Appeal had no jurisdiction to void the state court judgments.

380.

Also, in the June 30, 1999 unreported and unpublished No. 97-30715, the federal appellate court ruled that the Appellants as prior losers in the state court could not come into the federal court for relief, and in such a suit, the federal court has no federal jurisdiction.   Therefore, on appeal, the federal appellate court, in the opinion, issued heavy monetary sanctions to the state and federal defendants, against Plaintiff and his attorneys.

381.

Furthermore, it is well established that the U. S. Fifth Circuit on June 25, 2012, issued unpublished opinion No. 11-30724, also regarding the federal mandamus suit entitled Clark et al., v. Pena et al., No. cv96-1360 USDC, W. D. of Louisiana, Shreveport-Division, ruling therein that the federal court had no type of federal jurisdiction, except that the appellate court did have jurisdiction on appeal

to award monetary sanctions for the filings in the federal court.

382.

The DOTD also continues to file in the state court a peremptory exception of res judicata based upon unpublished opinion No. 11-30724 issued by the U. S. Fifth Circuit Court of Appeal.

383.

Except for a Petition filed for an Injunction and/or for a Declaratory Judgment, and/or in support an Injunction and/or for a Declaratory Judgment, federal laws are clear regarding the jurisdiction of case filed in the lower federal courts.

384.

The facts for this matter clearly show that every federal related suit filed, is a result of the state court suits filed in Caddo Parish: the original three (3) 1986 file state court expropriation suits and/or of the original 1990 filed state court legal malpractice suit #362,381 and/or the original 1990 filed expropriation suit #363,679 and/or; the original East Baton Rouge Parish suit #425,690-D, 1996 filed state mandamus suit.

385.

Therefore, as a result of the Federal Rooker-Feldman Doctrine and/or the Federal Barrow Rule, except for this Sub Judice Injunction relief and/or Declaratory Judgment relief Complaint filed in March 2021, the federal district court in any previously related filed federal suit, the lower federal court, no subject

matter jurisdiction and/or personal jurisdiction.

**THERE WAS NO SUBJECT AND/OR NO PERSONAL JURISDCITION AS TO L & M FOR THE CADDO PARISH STATE COURTS TO ISSUED JUDGMENTS AND SUCH JUDGMENTS ARE THE BASIS FOR DOTD'S EXCEPTION OF RES JUDICATA THAT DOTD CONTIUES TO FILE**

386.

It is clear that before the DOTD filed the (3) 1986 consolidated

expropriation suits in the 1st JDC in Caddo Parish, against the Clarks only, a lease

between the Clarks and L & M Hair Care Products, was recorded into the Public

Records of Caddo Parish in May 1986, recorded, accordance with, at that time,

LA-R. S. 9: 2721-22 and/or R. S. 9:2754-56.

387.

Also in effect, in 1986, was LSA-C.C. Art. 2697 and it provided:

"LSA-C.C. art. 2697 provides:

"If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages."

388.

In accordance with the U. S. Supreme Court case of <u>Mullance v. Central</u>

<u>Hanover Bank & Trust Co.</u>, 339 U. S. 306 (1950), as a result of the recorded

lease, both the lessor, Larry E. Clark, and the lessee, L & M Hair Care Products,

Inc., had to be given notice/due process under the 5th and/or 14th Amendment of the

U. S. Constitution, as to the taking of the leased property, in the filing of the 1986, expropriation suit of the DOTD.

389.

Additionally, patent on the face of the August 1989 three (3) consolidated opinions issued by the Louisiana Second Circuit Court of Appeal confirmed that the DOTD, the Trial Court, and the Louisiana Second Circuit Court of Appeal were fully aware that L & M Hair Care Products, Inc., a corporation, had all of the expropriated property under a lease; but neither of them moved for the corporation to be made a party in the suits.

390.

Furthermore, it is clear that before the filing of the three (3)1986 consolidated expropriation suits by the DOTD, at that time, and up until 1995, the pre-amended version of LSA-C.C.P. Art. 641 is applicable the applicable law to the three 1986 suits; and it provided:

"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.

No adjudication of an action can be made unless all indispensable parties are joined therein."

391.

Also applicable to the three 1986 consolidated suits, were LSA-C.C.P. Art.

1880 and it provides:

"Art. 1880. Parties
        When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard. If the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

392.

Furthermore applicable to the three consolidated 1986 suits were LSA-

C.C.P. Art. 1201; and it provided at that time in 1986, in pertinent part:

"1201. Citation; waiver

    Citation and service thereof are essential in all civil actions except summary and executory proceedings. Without them all proceedings are absolutely void."

393.

After the three (3) 1986 expropriation suits were filed and the DOTD had

refused to make L & M Hair Care Products, Inc., a defendant, years later, the

DOTD forced L & M Hair Care Products, Inc., on July 05, 1990, to file an

expropriation suit against the DOTD, for its federal constitutional rights, knowing

it had no authority to file such a suit.

394.

The records for the three (3) 1986 consolidated expropriation suits clearly

confirm that all proceedings are absolutely void for lack of subject matter

jurisdiction, for lack of Indispensable Party L & M Hair Care Products, Inc. Also void since Plaintiff and L & M Hair Care Products, Inc., were denied notice/ due process under the 5th And 14th Amendment of the U. S. Constitution as to the taking and/or cancelling and/or damaging of their lease. Plaintiff and L & M Hair Care Products, Inc., were denied compensation as to their leases and other contracts as granted by the 5th and 14th Amendment of the U. S. Constitution. Plaintiff and The corporation was denied the right to enter in to contracts as allowed by the 1st Amendment of the U. S. Constitution.

395.

As a result of the DOTD in the three (3) 1986 expropriation suits, denying Plaintiff and L & M Hair Care Products, Inc., their First, Fifth, and Fourteenth Amendments rights, the state court record for expropriation suit No. 363,679, confirms that former counsel for L & M Hair Care Products, Inc., was forced to file expropriation suit No. 363,679 against the DOTD on July 05, 1990, also the East Baton Rouge Parish State Court Suit.

396.

Once expropriation suit No. 363,679 had been filed, appeals were later filed for several judgments issued by the Trial Court; and on appeal, the Louisiana Second Circuit Court of Appeal ruled that suit No. 363,679 was an expropriation (condemnation) suit and/or confirmed such ruling of the Trial Court in the

following opinions: <u>L & M Hair Care Products, Inc. et al.,  v. State of Louisiana,</u>

<u>DOTD</u>, unpublished opinion #23,124-CA, 590 So.2d 122 (La.App.2[nd] Cir. 1991);

<u>L & M Hair Care Products, Inc., v. State of Louisiana, DOTD</u>, numbers, 25,154-

CW, and 25,196-CW, 622 So.2d 1194 (La.Ap.2[nd] Cir. 1993), writ denied, 626

So.2d 1126 (La.1993); and <u>L & M Hair Care Products, Inc., et al., v. State, DOTD,</u>

#29,998-CA, 704 So.2d 415 (La.App.2d Cir. 1997).

397.

Expropriation (Condemnation) laws applicable to Louisiana Department of

Transportation And Development are found in LSA-R. S. 48;441 et seq.  They

are patterned after the federal Condemnation laws found in Rule 71 of the Federal

Rules of Civil Procedures, to insure that the Government complies with the 5th And

14th Amendments of the U. S. Constitution.  But in these matters, the State

Officials of Louisiana have refused to follow the procedures; and as a result, they

are continuing in the ongoing state court expropriation suits, refusing to comply

with the 5th and 14th Amendments of the U. S. Constitution.

**EXTRAORDINARY CIRCUMSTANCES EXIST IN THIS MATTER FOR THE FEDERAL COURT TO INTERVENE AT THIS STAGE OF THE PROCEEDINGS, NOTWITHSTANDING YOUNG V. HARRIS DOCTRINE**

398.

The State Officials at the DOTD committed Fraud from the beginning in

1986 and continue to commit Fraud in 2021, in order to deny Plaintiff and L &

M Hair Care Products, Inc. their federal constitutional rights as well as

other federal rights.    The Officials committed Fraud by informing Plaintiff and

The Corporation that they are one and the same person; and by continuing

having the courts to enforce the 1987 "JOINT STIPULATION" filed into the three

(3) 1986 consolidated expropriation suits, when the document was in regards to the

Clarks' immovable property.  Louisiana law, required the Clarks' attorney to

have expressed authorization from the Clarks to enter into such document on the

Clarks behalf.  Also, patent on the face of the suits, and the 1987 "Joint

Stipulation" show that L & M Hair Care Products, Inc. was neither a party to the

suits, nor a party to the 1987 "JOINT STIPULATION".

399.

The ongoing litigation in the state courts have been denying federal rights

for nearly 35 years.   As a result of, Plaintiff and L & M Hair Care Products, Inc.,

beginning with their declining to accept an invitation: to pay a bribe, and you will

be able "to get two bites off the apple"  and/or to follow that saying that, "In

Louisiana You Must Pay To Play" these were the suggestions made by the former

contract lawyers for the Louisiana Department of Transportation & Development.

400.

It is extremely clear that the Officials of the State of Louisiana have for, 35

years acted in bad faith, and have caused and is continuing to cause Plaintiff future

irreparable harm and damages in regards to obtaining his federal rights.

401.

Plaintiff has exhausted the state appellate court's remedies many times in regards to this matter and most recently as can be seen in State, DOTD v. Clark, et, ux consolidated with L & M Hair Care Products, Inc., v. State, DOTD, 289 So.3d 226 (La.App.2nd Cir. 01-15-2020), writ denied, No. 2020-C-528 (La.9-23-2020).

401.

After Plaintiff's writ application was denied, Plaintiff filed a timely application on October 6, 2020.  In March 2021, Plaintiff phoned the Clerk of Court's office at the Louisiana Supreme Court and was informed that the record does not show that  an application for a rehearing/reconsideration, was filed. However, Plaintiff has a returned copy from the Clerk of Court's office, stamped filed.

402.

However, on March 26, 2021, Plaintiff filed an amended and supplemental Petition for nullity back into the original three 1986 filed consolidated expropriation suits Nos. 325, 511; 325, 512, and 328, 772, State, DOTD v. Clark et ux.,

403.

In addition, before Plaintiff filed the March 26, 2021 amended and supplemental petition, earlier in February 2021, Plaintiff filed an exception for lack of subject matter jurisdiction.  The Trial Court set a trial on the exception for April

12, 2021. Plaintiff uncovered that none of Judgments were appealable that had been issued in 2018 for the three suits. All issues and claims had not been decided, and none of the Judgments were certified for an immediate appeal.

404.

Article VI of the United States Constitution provides in pertinent part:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

405.

Although Article VI of the U. S. Constitution provides that the Judges in every State shall be bound thereby, however, as seen in the many previous rulings issued for this matter by the Judges of the State of Louisiana, they have not been bound by the U. S. Constitution. For instance, the State Judge that authored the January 15, 2020 State, DOTD v. Clark, 289 So.3d 226, ignored the ruling the U. S. Fifth made in the June 30, 1999 unreported and unpublished opinion No. 97-30715, regarding the jurisdiction of the federal courts. He also intentionally ignored the 5th and 14th Amendment regarding the granting of constitutional compensation as to African-Americans. This can be confirmed when, several months later, that same Appellate State Court Judge authored the inverse condemnation case of, Larkin Development North, LLC v. City of Shreveport, 297

194

So.2d 980 (La.App.2nd Cir. 03-04-2020), and ruled to consider the court's trial jurisdiction and ruled on the issue of constitutional compensation due to white-American landowners.

406.

It is clear that the author of the January 15, 2020 opinion issued by the Louisiana Second Circuit Court of Appeal, intentionally sustained res judicata based upon the Federal Judgment issued on February 20, 1997 for Federal Mandamus Clark et al., v. Pena, et al. No. cv96-1360, U. S. Dist. Ct. W. D. of Louisiana, Shreveport-Division.   The district court ruled on the merits, finding that a 1987 "Joint Stipulation" filed in the 1986 expropriation suits were binding on the Corporation although the corporation was not as party to the suits and was not a party to the 1987 "Joint Stipulation."  The author of 2020 Opinions affirmed dismissal even though subject matter jurisdiction was denied to the federal district court by Article III of the U. S. Constitution, as well as the 11th Amendment also denied personal jurisdiction to the federal district court.

407.

In fact, except for this Injunction Declaratory federal suit sub judice, Article III and the 11th Amendment of the  U. S. Constitution denied federal jurisdiction to all of the related federal suits filed in the lower federal courts in regards to this matter.  The record is clear that all federal suits were filed beginning

in 1996, and all were a continuation of the 1986 filed state court expropriation

suits, and/or the 1990 filed state court expropriation suit, and/or the 1990 filed state

court legal malpractice/nullity/federal civil rights violation suit and/or the Mach

1996 East Baton Rouge Parish State Court Mandamus.

408.

In essence, the author of the Louisiana Second Circuit Court of Appeal's

consolidated Opinions issued on January 15, 2020, destroyed, and/or made

ineffective and/or vacated the June 30, 1999 unreported and unpublished opinion

No. 97-30715, Clark et al., v. Pena, et al., where the U. S. Fifth ruled that the

federal district court and the federal appellate court had no federal jurisdiction,

based upon the federal ruling that state court losers could not come into federal

court to overturn state court rulings.

409.

The author of the Louisiana Second Circuit Court of Appeal's consolidated

Opinions issued on January 15, 2020, also, in essence also destroyed and/or made

of no effective, and/or vacated the June 25, 2012 unpublished opinion No. 11-

30724, Clark v. Pena, et al., where the U. S. Fifth reaffirmed its June 30,

1999 ruling that the federal district court and the federal appellate court had no

federal jurisdiction in the matter, except for that for the court's sanctions issued for

the filing of the pleading in the federal court, when there was no federal subject

matter jurisdiction.

410.

Furthermore, the author of that same Louisiana Second Circuit Court of

Appeal consolidated opinions issued on January 15, 2020, also, in essence

destroyed and/or made of no effect, and/or vacated another U. S. Fifth Circuit's

opinion issued on March 17, 2015, In re: LARRY E. CLARK, No. 14-31376,

USDC 5:96-CV—1360. In In re: Larry E. Clark, a "Petition for a Writ of

Mandamus and for Other Extraordinary Writ to the United States District Court for

the Western District of Louisiana, Shreveport," was filed in U. S. Fifth

Circuit Court of Appeals. The Appellate Court issued an opinion that ruled in

pertinent part:

"The All Writs Act, 28 U. S. C. Section 1651 (a), is the source of ourt mandamus
authority. It is not an independent grant of jurisdiction; it grants us authority only
to "issue all writs necessary or appropriate in aid of[our] jurisdiction()." 28 U. S.
C. Section 1651 (a); see In re McBryde, 117 F.3d 208, 220 (5ᵗʰ Cir. 1997)..........

Finally we have no jurisdiction over any state court where mandamus is the only
relief requested. Moye v. Clerk, Dekalb County Superior Court, 474 F.2d 1275 (5ᵗʰ
Cir. 1973). Clark cites to the Anti-Injunction Act, 28 U. S. C. Section 2283, which
sets forth limited circumstances under which a federal court may issue an
injunction to stay state court proceedings. None of those circumstances are present
in this case. Further, Clark asks us to void state district court judgments entered in
2006 and 2012 as well as a state appellate decision entered in 2013, but these are
not on-going proceedings to which a stay could apply even if one of the exceptions
under Section 2283 might be applicable. The petition for a writ of mandamus is
DENIED"

411.

However, in Rhoades v. Penfold, 694 F.2d 1043 (5ᵗʰ1983), the U. S. Fifth

Circuit ruled in pertinent part:

"In the instant case, Rhoades sought a declaration that the state court's judgment was null and void. Consequently, this court construes the complaint to pray for an injunction, which invoked the federal district court's jurisdiction. Moreover, once the *Rooker* hurdle is cleared, it is apparent that this case falls squarely within the federal question jurisdiction of the federal courts as set forth in 28 U.S.C. §§ 1343(3), (4).

Rhoades' initial § 1983 complaint requests that the district court declare the state court's judgment null and void and enjoin the state from seeking to enforce its judgment. Rhoades alleged that the proceeding itself constituted a deprivation of her constitutional rights since she was not provided counsel. Significantly, Rhoades was not claiming that the district court should review the state court's rulings on the substantive issues involved in the termination proceeding. To the contrary, Rhoades simply maintained that the entire proceeding, quite apart from the substantive issues of the termination proceeding, was constitutionally defective. When Rhoades complaint is viewed in this light, it is clear that it falls within the provisions of § 1983 and its jurisdictional counterpart. *See* 28 U.S.C. § 1343(3). Simply put, Rhoades seeks to obtain redress for the "... deprivation, under color of ... State law, ... of [a] right ... secured by the Constitution of the United States...." *Id.* Consequently, this Court holds that the district court did have jurisdiction."

412.

Each and every ground and/or State Judgment or Federal Judgment that the State Officials have relied upon, to not provide to Plaintiff and/or to L & M Hair Care Products, Inc., their federal rights, are absolutely void and/or are federally unconstitutional. The ground, and/or Judgment was obtained as a result of the continuation of the former contract lawyers of the DOTD, in their conspiracy, to deny Plaintiff and/or L & M Hair Care Products, Inc., their federal rights; and/or to De-Fraud Plaintiff and L & M Hair Care Products, Inc., out of their federal rights;

and/or to receive a Bribe from Plaintiff and/or L & M Hair Care Products, Inc., in order for Plaintiff and/or L & M Hair Care Products, Inc. to receive their federal rights.

**THE DOTD AND/OR ITS FORMER REPRESENTIVIES AND/OR THE PRESENT STATE DEFENDANTS PROVIDED LAND OWNERS, WHO ARE WHITE, AND PROVIDED LESSEES, WHO ARE WHITE, WITH ALL OF THEIR FEDERAL RIGHTS FOR THEIR TAKEN PROPERTY**

413.

In the expropriation (condemnation) proceedings of State, DOTD v. Sanders et al, 628 So.2d (La.App. 3rd Cir. 1993), the Louisiana Department of Transportation & Development filed the suits naming as Defendants, Mr. Paul Sanders, the private property owner and Todd's C Stores, Inc. the corporate Lessee of the private property of Mr. Sanders. In this expropriation suit filed by the DOTD, the property owners were white people and the owners of all of the corporate stock of the Lessee, Todd's C Stores, Inc., were owned by white people.

414.

Additionally, in the expropriation proceedings of State, DOTD v. Sanders, et al., the attorney of record for the DOTD is the same former contract attorney, Mr. Ronald J. Bertrand, who represented the DOTD in the three (3) consolidated 1986 expropriation suits that the DOTD filed against Plaintiff and his wife, only.

415.

DOTD's former contract Attorney, Mr. Ronald Bertrand was also the

attorney of record representing the DOTD in the expropriation suit, that the DOTD forced L & M Hair Care Products, Inc. to file against the DOTD in 1990.

416.

It is clear that in the expropriation proceedings of State, DOTD v. Sanders, et al., the Louisiana Department of Transportation, the Secretary for the Louisiana Department of Transportation, and the Real Estate Administrator, that all provided the Sanders as the owners of the private property as well as the corporate Lessee Todd's C Stores, Inc. all of their federal rights.

417.

The Louisiana Department of Transportation, the Secretary for the Louisiana Department of Transportation, the Real Estate Administrator, as well as Mr. Ronald Bertrand, they provided Mr. Sanders and Todd's C Stores with procedures and/or substantive due process/notice of the taking of their property as required by the 5th and 14th Amendment of the U. S. Constitution; provided compensation for the taking of their private property as required also by the 5th and 14th Amendment of the U. S. Constitution; and they were provided equal protection of all the laws for required by the 5th and 14th Amendment of the U. S. Constitution, such as the right for them into enter lease contracts and to enjoy all the benefits and privileges from their contracts.

200

418.

Furthermore, the DOTD filed the following additional expropriation

(condemnation) proceedings against the following and all the private property

owners were white people; all of the lessees of the private property were white

people; and/or all the business were owned by white people; all were named a

defendant; and all were given their federal rights:

(1).    State, DOTD v. Dietrich, et al., 544 So.2d 675 (La.App.3[rd] Cir.1989), writ

granted, 555 So.2d 1355 (La.1990); and (2) State, DOTD, v. Anderson, et al., 568

So.2d 657 (La.App.3Cir. 1990).

419.

All though Plaintiff and The Corporation are similar situated as all the

White people, that the DOTD filed expropriation proceeding against, the State

Defendants acting under color of the law, denied Plaintiff and L & M Hair Care

Products, Inc., equal protection of the laws as all of their federal rights resulting for

their various lease contracts.  They denied their federal rights because Plaintiff is

African-American and because all of the corporate stock of The Corporation are

owned by African-Americans.

420.

The named State Defendants' action and/or inaction is a continuation of the

DOTD's former contract attorneys, Mr. Ronald Bertrand, Mr. Charles E. Solieau,

as well as DOTD's former Secretaries of Transportation & Development, former

Real Estate Administrators, and their former contract Appraisers, Mr. Evertte and Mr. Crooks, all stem from discriminatory intent, with the intent of causing African-Americans harm and injury regarding to taking of their private property.

## CLAIM FOR DECLARATORY JUDGMENT

421.

The foregoing paragraphs are incorporated by referenced and reasserted as if restated fully herein.

422.

At all times relevant to this action, the Defendants have acted under color of state law.

423.

Plaintiff raises these claims for prospective declaratory relief pursuant to the First Amendment of the U. S. Constitution; the Fifth Amendment of the U. S. Constitution; the 14th Amendment 42 U. S. C. Section 1983; 42 U. S. C. Section 1981; 42 U. S. C. Section 1982; 42 U. S. C. Section 1985, and the Declaratory Judgment Act.

424.

The Defendants' actions and/or inactions are an ongoing violations of the First Amendment of the U. S. Constitution; the Fifth Amendment of the U. S. Constitution; the 14th Amendment 42 U. S. C. Section 1983; 42 U. S. C. Section 1981; 42 U. S. C. Section 1982; 42 U. S. C. Section 1985; and 42 U. S. C. 1986,

which are secured to Plaintiff, and to L & M Hair Care Products, Inc.

425.

Through the Defendants' actions and/or inactions with their ongoing violations of the First Amendment of the U. S. Constitution; Fifth Amendment of the U. S. Constitution; 14th Amendment 42 U. S. C. Section 1983; 42 U. S. C. Section 1981; 42 U. S. C. Section 1982; 42 U. S. C. Section 1985; and 42 U. S. C. 1986, the Defendants have deprived Plaintiff and L & M Hair Care Products, Inc., and continue to deprive of their federal rights that Congress intended to preserve: They have caused and are continuing to cause injuries to Plaintiff and L & M Hair Care Products, Inc.

426.

Specifically, the First Amendment of the U. S. Constitution; the Fifth Amendment of the U. S. Constitution; the 14th Amendment 42 U. S. C. Section 1983; 42 U. S. C. Section 1981; 42 U. S. C. Section 1982; 42 U.S.C. Section 1985; and 42 U. S. C. 1986, are the federal rights that are being denied by the Defendants' actions and/or inactions. This includes, but not limited to, the following:

UNDER THE 1STAMENDMENT PLAINTIFF CONTINUES TO BE:

a. Denied and continues to be denied, the right granted to Plaintiff, as an African-American the freedom to associate with other African-Americans; and to vote for other African-Americans that ran for public office;

203

b. Denied and continues to be denied the right to enter into contracts with a corporation where the majority of African-Americans are the owners of the corporation's corporate stock;

c. Retaliated against and continues to be, because Plaintiff's has exercised Plaintiff's right to seek redress, in the past filed a racial complaint against some former employees, attorneys, and/or officials of the DOTDwith Federal Highway Administration;

d. Denied and continues to be denied, Plaintiff's right to receive and/or to reap the benefits and/or the rewards, as a result of the contracts that Plaintiff entered into with a corporation that has all African-Americans stock holders but White peoples were allowed to reap the benefits that enter into such contracts; and

e. Retaliated against and continues to be, as a result of not entertaining the suggestions made by the former contract lawyers to Plaintiff and/or to L & M Hair Care Products, Inc., regarding the payment of a Bribe before obtaining Plaintiff and/or L & M Hair Care Products, Inc. First Amendments rights;

## UNDER THE 5TH AND/OR 14TH AMENDMENTS OF U. S. CONSTITUTION

a. Plaintiff and L & M Hair Care Products, Inc. have been Denied and continue to be denied their rights granted under the 5th and 14th Amendments of the U. S. Constitution, such as notice and/or due process as to the cancellation of the lease contracts agreements between them;

b. Plaintiff and L & M Hair Care Products, Inc. have been Denied and continue to be denied their rights, under the 5th and 14th Amendments of the U. S. Constitution regarding receiving Federal Constitutional Compensation as a result of the lease contracts between them;

c. Plaintiff and L & M Hair Care Products, Inc. have been Denied and continue to be denied, their rights under the 5th and 14th Amendments of the U. S. Constitution regarding to equal protection of the laws as a result of the lease contracts between Plaintiff and L & M Hair Care Products, Inc.;

d. Plaintiff and L & M Hair Care Products, Inc., have been Denied and continue to be denied their rights granted by Article 1. Section 4. of the Louisiana Constitution;

e. Plaintiff and L & M Hair Care Products, Inc., have been Denied and continue to be denied, their rights granted under LSA-R. S. 48:441 et seq.

204

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests for the following relief:

a. For a prospective declaratory judgment, to be granted finding that the Defendants are violating the First, Fifth, and Fourteenth Amendments of the U. S. Constitution in relation to 42 U.S.C. Section 1981; 1982; 1983;1985; and 1986;

b. For a prospective Injunction to be granted as to the filing of res judicata and/or for other ground to deny any federal rights based upon the February 20, 1997 judgment issued in the Federal Mandamus suit, No. cv-96-1360, entitled Clark et al., v. Pena, et al., by the U. S. District Court W. D. of Louisiana, Shreveport-Division.

c. For a prospective Injunction to be granted as to the filing of res judicata and/or for other ground to deny any federal rights based upon the unreported and unpublished opinion No. 97-30715 issued on June 30,1999, by the U. S. Fifth Circuit, that ruled that the U. S. District Court had no type of jurisdiction.

d. For a prospective Injunction to be granted as to the filing of res judicata and/or for other grounds to deny any federal rights based upon the June 25, 2012 unpublished opinion No. 11-30724 also issued by the U. S. Fifth Circuit Court of Appeals that ruled that the U. S. District in Clark, et al., v. Pena, et al., No. cv96-1360, had no jurisdiction;

e. For a prospective Injunction to be granted as to the filing of res judicata and/or for any grounds to deny any federal rights based upon the non-final March 20, 2000 Judgment issued U. S. District Court in the removed state court nullity/federal civil rights suit No. 429,240 1st JDC/No. cv98-1753 U. S. District Court, W. D. of Louisiana, Shreveport-Division, entitled Clark, et al., v. State of Louisiana, DOTD, et al.. As a result that the federal district court had no subject matter jurisdiction under the Federal Rooker-Feldman Doctrine, as the suit was a continuation of: the 1986 expropriation (condemnation) suits; the 1990 filed expropriation (condemnation) suit; the state court 1990 legal malpractice suit; and the 1996 state court mandamus suit. Additionally, the federal district court had no subject matters

jurisdiction based upon the Federal Barrow Rule that denies subject matter jurisdiction for a state court civil case removed from the state court to a federal court regarding nullity of state court civil judgments.

f.  For a prospective Injunction to be granted as to the filing of res judicata and/or for any ground to deny any federal rights based upon any federal judgment issued by a federal court as a result of any suit filed in a federal court, as a result of: the state court 1986 filed expropriation (condemnation) suits; the state court 1990 expropriation (condemnation) suit; and the state court1990 legal malpractice suit.

g.  For a prospective Injunction to be granted as to any judgment that deny federal rights to Plaintiff, issued by the 1st JDC of Caddo Parish in three (3) 1986 consolidated expropriation (condemnation) suits entitled, <u>State of Louisiana, Department of Transportation & Development v. Larry E. Clark and Melvenia S. Clark</u>, suits No. 325, 511; 325, 512 and 328,772.

h.  For a prospective Injunction to be granted as to any judgment issued by the 1st JDC of Caddo Parish, that deny any federal rights to Plaintiff, in the 1990 expropriation (condemnation) suit No. 363,679 filed by L & M Hair Care Products, Inc.,

i.  For a prospective Injunction to be granted as to any judgment issued by any state court that deny and/or attempts to deny any federal right granted to Plaintiff and/or L & M Hair Care Products, Inc., from the three (3) 1986 consolidated expropriation (condemnation) suits, entitled, State of Louisiana, Department of Transportation & Development v. Larry E. Clark and Melvenia S. Clark, suits No. 325, 511; 325, 512 and 328,772, 1st JDC of Caddo Parish; No. 363,679, 1st JDC of Caddo Parish, the 1990 expropriation (condemnation) suit filed by L & M Hair Care Products, Inc; and No. 425,690-D, 19th JDC of East Baton Rouge Parish.

j.  That a prospective Injunction be granted as to <u>State of Louisiana, Department of Transportation & Development v. Larry E. Clark and Melvenia S. Clark</u>, consolidated Opinion Nos. 20579-CA; 20580-CA; and

20581-CA, issued by the Louisiana Second Circuit Court of Appeal, 589 So.2d 365 (La.App.2nd Cir. 1989).

k.  That prospective Injunction be granted as to L & M Hair Care Products, Inc., et al., v. State of Louisiana, Department of Transportation & Development opinion No. 29,998-CA, issued by the Louisiana Second Circuit Court of Appeals, on December 10, 1997, 704 So.2d 415 (La.App.2nd Cir. 12-10-1997);

l.  That a prospective Injunction be granted as to, the following Judgments and Orders issued by the 19th JDC of East Baton Rouge Parish for suit No. 425,690-D, Clark, et al., v. Frank Denton, et al; the September 11, 2006 Judgment; the Court's Order filed on November 19, 2020 and signed on December 14, 2020, as well as any other Judgment and/or Order that deny Plaintiff's federal rights;

m.  That a prospective Injunction be granted as to, L & M Hair Care Products, Inc., et al., v. State of Louisiana, Department of Transportation & Development, et al. opinion No. 2007-CA-1364, issued by the Louisiana First Circuit Court of Appeals, on May 02, 2008;

n.  That a prospective Injunction be granted as to, L & M Hair Care Products, Inc., et al., v. State of Louisiana, Department of Transportation & Development, et al. opinion No. 2013-CA-0371, issued by the Louisiana First Circuit Court of Appeals (La. App. 1 Cir. 11/8/2013), 2013 WL 5972214, writ denied, 2014-0814 (La. 6/13/14), 140 So. 3d 1191, cert denied, 135 S. Ct. 713 (2014);

o.  That prospective Injunction be granted as to, State of Louisiana, Department of Transportation & Development v. Larry E. Clark, et ux., consolidated with L & M Hair Care Products, Inc., et al., opinions Nos. 53-197-CA; 53,198-CA; 53,199-CA, and 53,200-CA, issued by the Louisiana Second Circuit Court of Appeals, on January 15, 2020, 289 So.3d 226 (La.App.2nd Cir. 01-15-2020), writ denied, (La. 09-23-2020);

p.  A Writ of Mandamus be issued to **SHAWN  D. WILSON,**
    Secretary for the Louisiana, Department of Transportation And
    Development; and also to be issued to **CHARLES D. McBRIDE,**
    Administrator for the Louisiana, Department of Transportation And
    Development, for him to comply LSA-R. S. 48:441 through 48:446 as a
    result of the equal protection clause of the 14th Amendment, requires that
    the laws be applied the same as to all similar situated persons;

q.  For all and any other relief allow by law, and for all costs to casted upon the
    Defendants.

Respectfully submitted,

BY: Larry E. Clark, Pro Se
In His Personal and Individual Capacity
P. O. Box 76752
Atlanta, GA 30358
(678)754-7324
 Clark9853@hotmail.com
03-29-2021