### UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF LOUISIANA

**LARRY E. CLARK, SR.**

                                                                        **CIVIL ACTION**

**VERSUS**

                                                                        **NO. 21-177-SDD-RLB**

**JOHN B. EDWARDS, ET AL.**

<u>**NOTICE**</u>

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in Baton Rouge, Louisiana, on January 3, 2022.

               **RICHARD L. BOURGEOIS, JR.**
               **UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LARRY E. CLARK, SR.**

**VERSUS**

**JOHN B. EDWARDS, ET AL.**

**CIVIL ACTION**

**NO. 21-177-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss filed by Defendants, Shawn D. Wilson, Secretary of the Louisiana Department of Transportation and Development ("Secretary Wilson") and Charles D. McBride, Right of Way Administrator of the Louisiana Department of Transportation and Development ("Administrator McBride") (collectively, "DOTD Defendants")[1] (R. Doc. 13); the Motion to Dismiss filed by Defendant, John Bel Edwards, in his official capacity as Governor of the State of Louisiana ("Governor Edwards") (R. Doc. 15); and the Motion to Dismiss filed by Defendants, Justice Jay McCallum, Judge John Michael Guidry, and Judge Ramon Lafitte (collectively, the "Judicial Defendants") (R. Doc. 16). Plaintiff opposes the motions. (R. Doc. 33). The DOTD Defendants and Governor Edwards filed Replies. (R. Docs. 35, 36).

Also before the Court is Plaintiff's "Motion for an Order Seeking for Additional Time to Serve Some of the Defendants Named in Plaintiff's Original Complaint Filed on March 29, 2021" ("Motion for Additional Time to Serve") (R. Doc. 27) and Plaintiff's Motion to File an Amended and/or Supplemental Complaint ("Motion to Amend") (R. Doc. 38). The Judicial Defendants filed an Opposition. (R. Doc. 39).

---

[1] Plaintiff also named as defendants Andrew G. Barry and Terrence J. Donahue, Jr., both attorneys for the Louisiana Department of Transportation and Defendant. These unserved defendants have not made an appearance in this action.

I.    **Background**

On October 19, 2021, Larry E. Clark, Sr. ("Plaintiff" or "Clark") commenced this action by filing a 208-page "Complaint for Prospective Injunctive Relief and/or for Prospective Declaratory Relief and for a Writ of Mandamus Based Upon Some Defendants Continuing Violations of Federal Laws in Five (5) Cases Ongoing in the State Court." (R. Doc. 1).

This action has its origins in three consolidated expropriation proceedings commenced in the Louisiana First Judicial District Court of Caddo Parish in 1986 (Docket Nos. 325,511; 325,512; 328,772), through which the State of Louisiana sought to expropriate three lots of land from Clark (and his wife)[2] for the construction of Interstate 49. Clark leased a building on the property to L & M Hair Care Products, Inc. ("L & M"), which operated an African-American hair care products business. Prior to trial, Clark and the State entered into a Joint Stipulated Agreement resolving the issue of the takings and preserving for trial the issue of the amount of compensation for the relocation and loss of the uniqueness of the location on which L & M was located.

The trial court found that Clark was entitled to compensation for the loss, and awarded Clark an additional $191,781.00 above the stipulated amount, plus other costs. On appeal, the Louisiana Second Circuit found in favor of the State of Louisiana, reduced the total award, and reversed the portion of the award related to L&M. *See State of La., Dept. of Transp. & Dev. v. Larry E. Clark, et ux.*, 548 So. 2d 365 (La. App. 2d Cir. 1989), *writ denied*, 552 So. 2d 395 (La. 1993). The Louisiana Second Circuit held that because the tenant L & M was not a party to the suit, the award for costs and losses associated with L & M was improper.

---

[2] For the sake of simplicity, and given that he is the only plaintiff in this action, the Court will refer to "Clark" even where there may have been some involvement by Clark's wife.

In 1990, L & M filed an action to recover its relocation costs in the Louisiana Fist Judicial District Court of Caddo Parish (Docket No. 363,679). The trial court awarded summary judgment in favor of L & M on the contention that the court "had previously resolved the issues of entitlement to and the cost of a replacement facility in the earlier *Clark* expropriation proceeding." *L & M Products, Inc., et al. v. State of La., Dept. of Transp. & Dev.*, 704 So. 2d 415, 416 (La. App. 2d Cir. 1997). At oral argument on appeal, however, "both parties affirmatively maintained a desire to have the district court judgment reversed and the case remanded for further proceedings," and the Louisiana Second Circuit remanded the action. *Id.* at 417 (citing *L & M Hair Care Products, Inc. v. State*, DOTD, 590 So. 2d 122 (La. App. 2d Cir. 1991)). Clark then began filing *pro se* pleadings and, by May of 1996, had assigned all of L & M's rights to himself and was proceeding as an intervening party on behalf of himself. *L & M Products*, 704 So. 2d at 417. Prior to trial, however, the trial judge dismissed all claims by L & M and Clark with prejudice for failure to file pretrial orders despite several repeated orders to do so. *Id.* at 418. The Louisiana Second Circuit affirmed the judgment, finding "no error in the trial court's choice of action" in the form of dismissal with prejudice. *Id.* at 419. Clark did not appeal this ruling further.

Clark and L & M then started filing multiple suits, as detailed below, in various state and federal courts. One of those actions involved legal malpractice claims directed at Clark and L & M's previous attorneys in the First Judicial District Court of Caddo Parish (Docket No. 362,381). In early 1999, the Louisiana Second Circuit affirmed the dismissal of this legal malpractice action as perempted and dismissed the appeal of a dismissal of a recusal motion and an award of sanctions. *Mr. & Mrs. Larry E. Clark, et al. v. Mangham, Hardy, Rolfs & Abadie*, *et al.*, 733 So. 2d 43 (La. App. 2d Cir. 1999).

Clark and L & M also filed a petition for writ of mandamus in the Nineteenth Judicial District Court in East Baton Rouge Parish (Docket No. 425,690). In an opinion by Judge Guidry, the Louisiana First Circuit affirmed a 2005 judgment and a 2006 judgment dismissing all of L & M's claims, which sought, in part, the nullification of the original expropriation judgments and other judgments rendered in suits filed by Clark and L & M in state and federal courts. *Larry E. Clark v. Louisiana Dep't of Transp. & Dev.*, *et al*., No. 2007-1364, 2008 WL 2065248 (La. App. 1st Cir. May 2, 2008) (trial court did not err in sustaining the objection of res judicata by peremptory exception to dismiss L & M's claims against the DOTD), *writ denied*, 993 So. 2d 1286 (La. 2008). In another opinion by Judge Guidry, the Louisiana First Circuit similarly affirmed a 2012 judgment dismissing Clark's claims with prejudice by sustaining peremptory exceptions raising the objections of no right of action, no cause of action, and res judicata. *Larry E. Clark v. State of La., Dept. of Transp. & Dev.*, No. 2013-0371, 2013 WL 5972214 (La. App. 1st Cir. Nov. 8, 2013), *reh'g denied* (Mar. 19, 2014), *writ denied*, 140 So. 3d 1191 (La. 2014), *cert. denied*, 574 U.S. 1030 (2014).

Clark and L&M filed two additional actions considered by the U.S. District Court for the Western District of Louisiana and the U.S. Court of Appeals for the Fifth Circuit. The first action was removed from the Louisiana First Judicial District Court of Caddo Parish (Docket No. 429,240) to the Western District of Louisiana when Clark and L & M amended their pleadings to raise various federal civil rights claims similar to those raised in this action. *Larry E. Clark, et al. v. State of La., Dept. of Transp. & Dev*, *et al*., No. 98-1753, ECF No. 1 (W.D. La. Sept. 15, 1998). Clark sought to appeal *in forma pauperis* prior to entry of any appealable judgment. The Fifth Circuit denied the appeal as frivolous and warned Clark that any additional frivolous appeals would result in sanctions. *See Larry E. Clark*, *et al*. *v. Louisiana ex. rel. La. Dept. of Transp. & Dev.*, *et al*., 184 F. 3d 816 (5th Cir. 1999). The district judge ultimately dismissed

Clark and L & M's federal law claims for failure to state a claim upon which relief can be granted and as frivolous pursuant to 28 U.S.C. § 1915(e), and remanded the remaining claims under state law. *Clark*, No. 98-1753, ECF No. 65 (W.D. La. Feb. 16, 2000), *report and recommendation adopted*, ECF No. 69 (W.D. La. Mar. 21, 2000). According to Clark, when the action was remanded, the State trial court dismissed the action without prejudice, Clark appealed but "decided not to file a Brief on appeal," and the Louisiana Second Circuit dismissed the appeal in December of 2011. (R. Doc. 1 at 178-180).

The second action was an original filing in the Western District of Louisiana in which Clark sought a mandatory injunction and/or writ of mandamus compelling the U.S. Department of Transportation Secretary, Federico Pena and its Administrator, John Salter, to withhold all future federal funds from the Louisiana Department of Transportation and Development in connection with the construction of Interstate 49. *See Larry E. Clark, et al. v. Frederico Pena*, *et al.*, No. 96-1360, ECF No. 1 (W.D. La. June 5, 1996). In 1997, the district court issued a ruling dismissing the claims with prejudice, finding that "any claims for pecuniary losses L & M or the Clarks may have suffered as a result of the expropriation suits are barred by the 1987 settlement and compromise between the Clarks and the DOTD." *Id.*, ECF No. 32 at 4. The district court issued judgments in favor of the defendants. *Id.*, ECF Nos. 33, 38. In 1999, the Fifth Circuit dismissed Clark's appeal as frivolous and imposed $13,035.20 in sanctions. *See Clark v. Pena*, 189 F. 3d 467 (5th Cir. 1999); *Clark v. Pena*, No. 97-30715, 1999 WL 34844548 (5th Cir. Aug. 11, 1999). Over a decade later, in 2010, Clark moved the district court to set aside the final judgment entered in 1997 on the basis that the district court lacked subject matter jurisdiction. *Clark*, No. 96-1360, ECF No. 66. The district court denied the motion. *Id.*, ECF No. 77. And the Fifth Circuit dismissed the appeal. *Clark v. Pena*, 471 F. App'x 398 (5th Cir. 2012).

More recently, in an opinion by Justice McCallum, the Louisiana Second Circuit affirmed a judgment by Judge Lafitte of the Louisiana First Judicial Circuit of Caddo Parish in various consolidated actions (Docket Nos. 325511, 325512, 328772, and 363679) granting the State of Louisiana's peremptory exception of res judicata and denial of motion for new trial. *State of La., Dept. of Transp. & Dev.  v. Larry E. Clark, et ux.*, 289 So. 3d 226 (La. App. 2d Cir. 2020). After recounting the procedural history detailed above, including Clark's multiple attempts to nullify final judgment issued in both state and federal courts, Justice McCallum stated the following:

> In review of the law and jurisprudence relating to res judicata and in consideration of the lengthy procedural and case history of Clark and L & M before this Court and several other state and federal appellate courts, we find appellant's arguments to be without merit. It is clear from the record that the issues before us now have previously been adjudicated to finality. Additionally, multiple state and federal courts have already held that res judicata precludes relitigation of the same issues.
>
> The joint stipulations and agreements entered into by Clark and the State preclude the appellants from litigating the matters before us. Clark and L & M were party to and joined in the stipulated agreement that they now wish to have nullified. In our review of the record and the lengthy history of this case we have found no vice or reason to nullify the agreements. The agreements resolved the issues with regard to the expropriation of the three lots of land and they were made final over thirty years ago. Therefore, res judicata precludes Clark from litigating again those matters.
>
> Furthermore, res judicata attaches and bars the petitions for nullity on their face because several other appellate courts have already found and decided such. Based on those previous decisions alone, res judicata attaches and precludes the petitions. Therefore, res judicata not only attached to preclude Clark from further litigation based on the stipulated agreements, it also attached when the other state and federal appellate courts resolved the issue earlier.
>
> Additionally, the federal rights issues asserted by Clark and L & M have no merit and are further barred by res judicata. It is clear that the previous federal district and appellate court decisions have completely resolved those issues, precluding Clark from further litigation of them.
>
> Finally, we observe that the record unequivocally shows that Clark and L & M are again attempting to retry that which has already been adjudicated and which has already been dismissed through previous, nearly identical res judicata opinions. Clark has, on multiple occasions, in front of multiple courts, stated that he simply dislikes the previous outcomes and wishes to retry the exact same issues. Clark

and L & M, without any doubt, have clearly had their day in court and have no
meritorious grievance left with the issues at hand.

We hold that res judicata applies to preclude Clark's petition for nullification. We
further find no merits to reverse the trial court's denial of Clark's motion for
retrial. Clark presented neither new law or evidence nor any compelling reason
for a new trial. We also find that Clark's ex parte motion for relief, wherein Clark
sought an order to force the State to amend and file afresh all expropriation suits
and deposit money into the court's registry, has no merit. The trial court was
correct in denying all relief as to that motion. Therefore, we affirm the trial court
in whole, on all issues presented.

*Id*. at 233-34. Clark has exhausted his attempts to appeal this decision at both the state and

federal levels. *Clark*, 289 So. 3d 226, *reh'g denied* (2020), *writ denied*, 301 So. 3d 1183 (La.

2020), *reconsideration denied*, 316 So. 3d 830 (La. 2021), and *cert. dismissed*, No. 21-5796,

2021 WL 5763357 (U.S. Dec. 6, 2021).

That brings the Court to the instant action filed by Clark on March 29, 2021. In his 208-

page Complaint, Clark alleges that this is a civil rights action for present and prospective relief

brought pursuant to 42 U.S.C. § 1983 and related statutes for violations of various federal rights,

including those granted under the First, Fifth, and Fourteenth Amendments of the U.S.

Constitution. (R. Doc. 1 at 10-12, 202-204). Clark asserts that because he is the victim of racial

discrimination, corruption, and collusion, the Court should issue a series of "prospective"

injunctions precluding a finding of "res judicata" or any denial of his federal rights based on the

judgments and decisions issued by both state and federal courts, at both the trial and appellate

levels, for the past three decades that have evolved from the original three 1986 consolidated

expropriation cases. (R. Doc. 1 at 205-207). Clark also seeks the issuance of a writ of mandamus

to the defendants Secretary Wilson and Administrator McBride requiring them to comply with

La. R.S. 48:441 through 48:446 (Louisiana's expropriation statutes) in light of the equal

protection clause of the Fourteenth Amendment of the U.S. Constitution. (R. Doc. 1 at 208).

On September 7, 2021, the Court stayed discovery in this action until resolution of the pending motions to dismiss. (R. Doc. 21).

All of the defendants who have made appearances are seeking dismissal of the claims brought against them. The DOTD Defendants seek dismissal based on numerous defenses, including res judicata, Eleventh Amendment immunity, prescription and failure to state a claim upon which relief can be granted. (R. Doc. 13). Governor Edwards asserts that Plaintiff has failed to state a claim upon which relief can be granted, and adopts the defenses raised in the DOTD Defendants' motion. (R. Doc. 15). The Judicial Defendants seek dismissal based on numerous defenses, including failure to serve, Eleventh Amendment immunity, the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, prescription, and absolute judicial immunity. (R. Doc. 16).

Clark seeks an extension of the deadline to serve Judge Lafitte, Attorney Barry, and Attorney Donahue. (R. Doc. 27). In addition, Clark seeks leave to file an Amended and/or Supplemental Complaint to "clarify" that he is not seeking to void, modify, or readjust a state court judgment or order or to obtain a money judgment, and to name as additional defendants Judge Ronald R. Johnson and Attorney Sarah A. Kirkpatrick. (R. Doc. 38).

Given the interrelated aspect of the foregoing motions, the Court considers them all together.

## II.    Law and Analysis

### A.    The Rule 12(b)(1) Motions

A Rule 12(b)(1) seeks dismissal of a complaint for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to hear the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Strain v. Harrelson Rubber*

*Co.*, 742 F.2d 888, 889 (5th Cir. 1984). "A motion to dismiss under Rule 12(b)(1) is analyzed

under the same standard as a motion to dismiss under Rule 12(b)(6)." *Benton v. United States*,

960 F.2d 19, 21 (5th Cir. 1992). "When a Rule 12(b)(1) motion is filed in conjunction with other

Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing

any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### 1.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction [and] possess only that power authorized

by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Without subject-

matter jurisdiction, a federal court simply has no authority to decide the case." *Pidgeon v.*

*Parker*, 46 F. Supp. 3d 692, 697 (S.D. Tex. Aug. 28, 2014). "[F]ederal courts are duty-bound to

examine the basis of subject matter jurisdiction sua sponte, even on appeal." *Union Planters*

*Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

As discussed below, the *Rooker-Feldman* Doctrine and Eleventh Amendment immunity

precludes the exercise of subject matter jurisdiction in this action. To the extent this Court is not

deprived of subject-matter jurisdiction, however, it can properly exercise federal question

jurisdiction over Clark's claims, which are purportedly brought under federal law. *See* 28 U.S.C.

§ 1331; 28 U.S.C. § 1343. Accordingly, the Court need not determine whether the exercise of

diversity jurisdiction under 28 U.S.C. § 1332 is warranted.[3]

---

[3] The DOTD Defendants appear to argue that the Court should determine whether it can exercise diversity jurisdiction because the *Rooker-Feldman* doctrine, if applicable, would only bar an exercise of federal question jurisdiction. (R. Doc. 13-1 at 8-10). But the *Rooker-Feldman* doctrine, to the extent applicable, bars the exercise of diversity jurisdiction as well. *See Morris v. Wells Fargo Bank*, 677 Fed. App'x 955, 957 (5th Cir. 2017) (vacating the district court's dismissal and ordering the district court to remand action removed on the basis of diversity jurisdiction in light of application of the *Rooker-Feldman* doctrine).

## 2.     The *Rooker-Feldman* Doctrine

"[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Specifically, the *Rooker-Feldman* doctrine bars federal district courts from "modify[ing] or revers[ing] state court judgments." *Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). This is called the *Rooker-Feldman* doctrine after the cases that first recognized it: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-17 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983).

The *Rooker-Feldman* doctrine is narrow and "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). In determining whether *Rooker-Feldman* applies, a court must carefully evaluate what it is asked to review and reject. *Truong*, 717 F.3d at 382 (citing *Exxon Mobil*, 544 U.S. at 284). The court lacks jurisdiction only when the plaintiff "seeks relief that directly attacks the validity of an existing state court judgment," *Weaver v. Texas Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011), or the plaintiff's federal claims "are so inextricably intertwined with a state judgment that the federal court is in essence being called upon to review the state court decision." *Illinois Central Railroad Co. v. Guy*, 682 F.3d 381, 390-91 (5th Cir. 2012).

Here, Clark specifically references final state court judgments as "absolutely void" in light of his theories of conspiracy and systemic racism. (R. Doc. 1 at 23). Clark contests the validity of various final adverse state court judgments and seeks "prospective" injunctive relief precluding enforcement of those judgments and appellate court decisions affirming those

judgments. (R. Doc. 1 at 205-208). In short, Clark is attempting to collaterally attack final adverse state court judgments to nullify their res judicata effect on subsequent rulings.

This relief is "inextricably intertwined" with the various underlying state court judgments because it calls on this Court to review the final state court decisions and conclude that they are void and inapplicable. Various state and federal court decisions have found that the original three 1986 consolidated expropriation cases and the 1990 action by L & M resulted in final judgments, including the terms of the Joint Stipulated Agreement, are subject to res judicata. Years prior to the filing of this action, the Western District of Louisiana observed that Clark was "attacking, as null, judgments which dismissed nullity attacks upon prior judgments." *Clark*, No. 98-1753, ECF No. 65, at *5. The instant lawsuit is more of the same.[4]

In opposing application of the *Rooker-Feldman* doctrine, Clark argues that he has not requested this Court to modify, nullify, or otherwise find void any state court judgments. (*See* R. Doc. 38 at 1-2; R. Doc. 33 at 1-2). Clark relies on *Rhoades v. Judge Penfold*, 694 F.2d 1043 (5th Cir. 1983) for the proposition that the Court must construe the relief sought as requests for injunctive relief that are not barred under the *Rooker-Feldman* doctrine.

In *Rhoades*, which was decided just months prior to *Feldman*, the Fifth Circuit interpreted *Rooker* as allowing a party to pray for an injunction enjoining the enforcement of a state court judgment. *Id*. at 1047 (citing *Gresham Park Comm. Organ. v. Howell,* 652 F.2d 1227, 1235-36, (5th Cir. 1981)). Courts have noted that *Gresham*, and by extension *Rhoades*, was overruled on this point by the U.S. Supreme Court in *Feldman*, which recognized the "inextricably intertwined" standard. *See Wood v. Orange Cty.*, 715 F.2d 1543, 1546 (11th Cir. 1983) ("*Gresham*'s limiting interpretation of *Rooker* was shortlived [in light of *Feldman*].");

---

[4] Tellingly, Clark alleges in his Complaint that the Western District of Louisiana lacked subject matter jurisdiction to issue judgments in federal court under the *Rooker-Feldman* doctrine in the removed action, *Clark*, No. 98-1753, (W.D. La). (R. Doc. 1 at 186-187). That action raised federal claims strikingly similar to those found in this action.

*Alcan Aluminum Corp. v. Lyntel Prod., Inc.*, 656 F. Supp. 1138, 1142 (N.D. Ill. 1987) (*Rhoades* is no longer good law after *Feldman*); *Tarver v. Reynolds*, No. 18-1034, 2019 WL 3889721, at *9 (M.D. Ala. Aug. 16, 2019) (the distinction "between seeking appellate review of a state court's judgment in federal district court and seeking an injunction enjoining enforcement of a state court judgment" found in *Rhoades* and *Gresham* fails in light of *Feldman*), *aff'd*, 808 F. App'x 752 (11th Cir. 2020); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984) ("The constitutional claims presented by Hagerty to the federal district court, if not identical, were "inextricably intertwined with the state court's denial" of relief; therefore the district court could not have properly reviewed the state court decision.") (citing *Feldman*, 460 U.S. at 483 n.16). Furthermore, *Rhoades* had a limited holding providing that "federal district courts have federal-question jurisdiction over a collateral attack on a state-court judgment *based on the deprivation of the constitutional right to counsel.*" *Jacuzzi v. Pimienta*, 762 F.3d 419, 421 (5th Cir. 2014) (emphasis added). There is no allegation of deprivation of the constitutional right to counsel in this action. Accordingly, *Rhoades* is inapplicable to this action.

Given the foregoing, the *Rooker-Feldman* doctrine precludes an exercise of subject matter jurisdiction to the extent Clark seeks any prospective relief regarding the application of final judgments in state court lawsuits. Only the U.S. Supreme Court is vested with jurisdiction over appeals from final state-court judgments. 28 U.S.C. § 1257; *see Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."). For similar reasons, this Court lacks subject matter jurisdiction to review on appeal the final judgments of another federal district court, such as the Western District of Louisiana, or decisions by federal appellate courts, such as the Fifth Circuit. *See* 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of all appeals from all final

decisions of the district courts of the United States . . . ."); 28 U.S.C. § 1254 ("Cases in the courts of appeals may be reviewed by the Supreme Court . . [b]y writ of certiorari. . . .").

### 3.    Eleventh Amendment Immunity

Clark's claims brought against state officials acting in their official capacities are also barred in light of the immunity provided by the Eleventh Amendment to the U.S. Constitution.

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of other states, or foreign nations. U.S. Const. Amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). "When a state agency is named the defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 281 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing *Howlett v. Rose*, 496 U.S. 356, 365, (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

The State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Under the *Ex Parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception

"rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 168. (citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id.* (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

There is no dispute that Clark is seeking relief from state officials acting in their official capacities with respect to alleged violations of federal law. (R. Doc. 1 at 1). As discussed above, the Court cannot exercise subject matter jurisdiction over these claims under the *Rooker-Feldman* doctrine because they are "inextricably intertwined" with the underlying state court proceedings that Clark asserts are void. While Clark purports to seek prospective relief to redress "ongoing" conduct, however, it is clear that the only ongoing conduct is Clark's continued filing of lawsuits to collaterally attack final judgments. The portion of Interstate 49 at issue was constructed years ago and the underlying expropriation proceedings, as well as their progeny, have been fully adjudicated. In short, the relief sought is not properly characterized as injunctive because it is premised on retrospective relief – the undoing of years of litigation pertaining to the expropriation proceedings and the Joint Stipulated Agreement.

The Court concludes that the defendants, who are all sued in the official capacities, are entitled to Eleventh Amendment immunity. *See Price v. Irons*, No. 19-11451, 2020 WL 1638376, at *3 (E.D. La. Apr. 2, 2020) ("A suit such . . . against a Louisiana state court judge in his or her official capacity is a suit against a state official and barred by the Eleventh Amendment."); *Riley v. Off. of Alcohol & Tobacco Control of Louisiana Dep't of Revenue*, No.

CV 18-6984, 2019 WL 277268, at *2-3 (E.D. La. Jan. 22, 2019) ("[C]laims against . . . Governor John Bel Edwards are effectively claims against the State of Louisiana" and subject to "Eleventh Amendment immunity."); *Robertson v. Louisiana,* No. 17-00138, 2018 WL 1077303, at *4 (M.D. La. Feb. 26, 2018) ("[T]he DOTD is an arm of the State of Louisiana and is thus entitled to Eleventh Amendment immunity."). The *Ex Parte Young* doctrine does not bar a finding of Eleventh Amendment immunity because Clark does not seek prospective relief to redress ongoing conduct; rather, Clark seeks this Court to improperly exercise its authority by finding various final judgments to be void.

### 4.    *Younger* Abstention

The Judicial Defendants alternatively assert that "[t]o the extent that Plaintiff is challenging the orders, judgments, and other actions of the Judicial Defendants that are not yet final and/or pending in the underlying state proceedings, such claims should be barred by the *Younger* abstention doctrine." (R. Doc. 16-1 at 8-9). Under the *Younger* abstention doctrine, federal courts must refrain from considering requests for injunctive or declaratory relief based upon constitutional challenges to certain ongoing state civil proceedings. *Younger v. Harris,* 401 U.S. 37 (1971); *Bauer v. Texas,* 341 F.3d 352, 356 (5th Cir. 2003). "Under the Younger abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (internal quotation marks and quoted sources omitted). The U.S. Supreme Court has stressed, however, that *Younger* abstention is only warranted where "exceptional circumstances" exist, as found in "three types of [state] proceedings": (1) state criminal prosecutions; (2) certain types of civil enforcement actions; and (3) proceedings

that "touch on a state court's ability to perform its judicial function." *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 79 (2013); *see Texas Ent. Ass'n, Inc v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021).

Here, Clark alleges that "[a]ll the relief requested is for the *ongoing* violation of federal law by the Defendants in several cases *presently pending in various state courts*." (R. Doc. 1 at 6) (emphasis added). Given Clark's rhetorical use of the modifier "ongoing" to reference fully adjudicated matters, and the expansive universe of Clark's lawsuits, it is unclear to the Court whether there are any actual ongoing state court proceedings still at issue. The Judicial Defendants do not identify which, if any, state court proceedings are ongoing. At any rate, the Judicial Defendants raise no argument with respect to whether any "ongoing" cases fit within the three types of state proceedings to with *Younger* abstention applies. The Court is not aware of any "ongoing" state proceedings that are criminal prosecutions, civil enforcement actions "akin to a criminal prosecution" in "important respects," and or otherwise touch upon the state court's ability to perform its judicial function. *See Jacobs*, 571 U.S. at 79 (citations omitted).

While the *Younger* abstention doctrine is inapplicable, the Court nevertheless concludes that an exercise of subject matter jurisdiction of this action is inappropriate in light of the *Rooker-Feldman* doctrine and Eleventh Amendment immunity. Having so concluded, it is appropriate to grant Defendants' Rule 12(b)(1) motion and dismiss this action for lack of subject matter jurisdiction. The Court nevertheless proceeds to consider the remaining motions on the merits to the extent an exercise of subject matter jurisdiction is proper.

### B.    The Rule 12(b)(6) Motions

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6)

motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

### 1.    Absolute Judicial Immunity

The Judicial Defendants assert that they are entitled to absolute judicial immunity. (R. Doc. 16-1 at 13-14). The Court agrees.

Judges enjoy absolute immunity from suit for acts undertaken in their judicial capacity, even those done maliciously or corruptly. *Mireles v. Waco*, 502 U.S. 9, 10 (1991); *Stump v. Sparkman*, 435 U.S. 349 (1978). The Supreme Court has explained that two limited exceptions to

this doctrine exist: acts the judge takes in a non-judicial capacity, and "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11.

Here, Clark attacks various judgments in state court proceedings arising from the three consolidated 1986 expropriation proceedings. With respect to the named Judicial Defendants, the underlying judicial acts include (1) the 2008 and 2013 Louisiana First Circuit opinions authored by Judge Guidry; (2) the 2020 Louisiana Second Circuit opinion authored by Justice McCallum; and (3) various orders issued within the last few years by Judge Lafitte. There are no substantive allegations that these Judicial Defendants acted outside of their roles as judges or otherwise in a complete absence of all jurisdiction. Clark's allegations against the Judicial Defendants arise out of actions they took in their judicial capacities and are thus barred, as neither of the exceptions to immunity applies. *See Stump*, 435 U.S. at 355-60 (holding that a judge is entitled to judicial immunity where his actions were alleged to have deprived litigant of due process); *Rheuark v. Shaw*, 628 F.2d 297, 303-04 (5th Cir. 1980) (holding that a judge is entitled to judicial immunity even if his actions deprived criminal defendant of due process).

Given the foregoing, Plaintiff's claims against the Judicial Defendants are subject to dismissal with prejudice.

### 2.     Failure to State a Claim under 42 U.S.C. § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal]

laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under Section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted). "[A]llegations of callous indifference are sufficiently within the ambit of purposeful acts to state a claim of constitutional deprivation under § 1983." *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir. 1987) (overruled on other grounds).

Here, the DOTD Defendants, Governor Edwards, and the Judicial Defendants are all sued in their official capacities as arms of the State of Louisiana. Accordingly, none of these defendants is a "person" under Section 1983 with regard to the claims brought against them in their official capacities. That is because the State of Louisiana is the real party in interest when state officials are sued in their official capacities. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26, (1991) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989)). Furthermore, Section 1983 specifically precludes the granting of injunctive relief with respect to "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. In addition to general principles of absolute judicial immunity, the Judicial Defendants cannot be held liable under Section 1983 because Clark does not allege that a declaratory decree was violated or that declaratory relief is unavailable.

Finally, though not least of all, Secretary Wilson, Administrator McBride, Attorney Barry, Attorney Donahue, and Governor Edwards are merely mentioned in the Complaint

without any accompanying specific, non-conclusory factual allegations directed to any acts or omissions of these defendants.

### 3.    Prescription of Claims under 42 U.S.C. § 1983

Furthermore, even if Clark could state a claim under Section 1983, those claims are prescribed to the extent the underlying alleged acts occurred more than one-year before this action was filed, or March 29, 2020.

In a Section 1983 action, the court looks to the forum state's personal-injury limitations period. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998); *Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994). Louisiana provides a one-year prescriptive period. *Elzy v. Roberson,* 868 F.2d 793, 794 (5th Cir.1989) (citing La. Civ. Code. Art. 3492). While the limitations period is determined by state law, the accrual of a Section 1983 claim is a matter of federal law. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). "Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks omitted).

Clark attempts to argue that the limitations period has not begun in light of his theory that the various adjudicated actions are all "presenting pending" and the alleged federal violations "are continuing and have never ended." (R. Doc. 33 at 38). As discussed above, the Court will not accept this fiction of "ongoing" litigation to the extent any judicial actions referenced in the Complaint have been fully adjudicated.

Accordingly, Clark's claims are prescribed to the extent they pertain to any actions taken by any defendant before March 29, 2020, one year prior to the filing of this lawsuit. There are no factual allegations pertaining to any action by the Secretary Wilson, Administrator McBride, Attorney Barry, Attorney Donahue, or Governor Edwards that are alleged to occur within that

time period. Accordingly, the claims brought against these defendants are prescribed. Similarly, of the Judicial Defendants, all claims against Judge Guidry pertaining to his 2008 and 2013 decisions have prescribed. At most, Clark's claims against Justice McCallum and Judge Lafitte that concern rulings and judgments issued on or after March 29, 2020 would not be prescribed. Of course, as discussed above, those defendants are absolutely immune from any liability.

### 4.     Amendment is Futile

Under Rule 15(a)(2), after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment. . . ." *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The "futility" of amendments to a complaint is measured by whether "the amended complaint would

fail to state a claim upon which relief could be granted" under "the same standard of legal

sufficiency as applies under Rule 12(b)(6)." *Id*. at 873 (citations omitted).

Clark seeks leave to file an Amended and/or Supplemental Complaint to "clarify" that he

is not seeking to void, modify, or readjust a state court judgment or order or to obtain a money

judgment, and to name as additional defendants Judge Ronald R. Johnson and the attorney Sarah

A. Kirkpatrick. (R. Doc. 38). The Court has reviewed the proposed amendments and find that

they do not cure the deficiencies described above. Among other things, the proposed claims

against Judge Johnson are barred by absolute judicial immunity. The proposed alleged claim

against Attorney Kirkpatrick concerns the alleged failure to serve process resulting in the alleged

"nullity" of an April 4, 1997 judgment for sanctions. (*See* R. Doc. 38-1 at 19, 56). Any claim

against Attorney Kirkpatrick is prescribed. Amendment is futile.

### C.    Insufficient Service of Process

A Rule 12(b)(5) motion seeks dismissal for failure to properly effectuate service. "A

motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of

process." *Holly v. Metro. Transit Auth.*, 213 Fed. App'x 343, 344 (5th Cir. 2007). When a

challenge is made to the adequacy of service of process, the serving party bears the burden of

proving the validity of service or the existence of good cause for failing to effect service in a

timely manner. *System Sign Supplies v. U.S. Dept. of Justice*, 903 F.2d 1011, 1013 (5th Cir.

1990); *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435

(5th Cir. 1990). The fact that the plaintiff is pro se does not excuse the failure to properly effect

service of process. *System Signs Supplies*, 903 F.2d at 1013; *Dupre v. Touro Infirmary*, 235 F.3d

1340 (5th Cir. 2000).

Rule 4(m) requires a plaintiff to "properly serve defendant with a copy of the summons

and complaint within 90 days after the complaint is filed." If a defendant is not timely served, the

court "must dismiss the action" or order that "service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The Fifth Circuit has held that even in the absence of good cause, however, the Court has discretion "to order that service be made within a specified time" as an alternative to dismissal. Fed. R. Civ. P. 4(m); *see Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("We agree with the majority of circuits that have found that the plain language of rule 4(m) broadens a district court's discretion by allowing it to extend the time for service even when a plaintiff fails to show good cause.").

To establish good cause, a litigant must demonstrate "at least as much as would be required to show excusable neglect." *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985). "Actions falling into the category of inadvertence, mistake or ignorance of counsel are not excusable neglect and do not establish good cause for extending" the service period. *Traina v. United States*, 911 F.2d 1155, 1157 (5th Cir. 1990). Additionally, the claimant must make a showing of good faith and establish "'some reasonable basis for noncompliance within the time specified.'" *Winters*, 776 F.2d at 1306 (quoting 4A C. Wright & A. Miller, Federal Practice & Procedure § 1165, at 480 (2d ed.)).

Clark failed to serve timely process on Judge Lafitte, Attorney Barry, and Attorney Donahue. Of these three defendants, only Judge Lafitte has made an appearance for the purposes of challenging the sufficiency of process pursuant to Rule 12(b)(5), asserting that "insofar as Plaintiff has failed to serve Judge Lafitte within ninety days of the filing of this lawsuit, his claims against Lafitte are subject to dismissal," and "nothing in the record of this matter demonstrates good cause for any failure to properly serve Judge Lafitte." (R. Doc. 16 at 5-6).

In seeking additional time to serve these defendants, Clark represents that he did not serve Judge Lafitte, Attorney Barry, and Attorney Donahue in light of a rescheduled hearing on a

motion that he filed in a pending action presided over by Judge Lafitte. (R. Doc. 27 at 1-2; *see* R. Doc. 27-2). It appears that Clark that did not serve these individuals out of a concern that his pending motion would be negatively impacted. (*See* R. Doc. 27-1 at 1). Clark was, however, clearly aware of the deadline to serve these defendants under Rule 4(m).

Having considered the record, the Court finds that Clark has not established good cause for requesting an extension of the deadline to serve these defendants. Clark admits that he was aware of the deadline to serve the defendants and chose not to for the purpose of obtaining a beneficial result in a state court proceeding. The Court also finds it inappropriate to exercise its discretion in allowing untimely service of these defendants because, for the reasons stated above, Clark's claims against these defendants are subject to dismissal under Rule 12(b)(1) and Rule 12(b)(6).

## III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the DOTD Defendants' Motion to Dismiss (R. Doc. 13), Governor Edward's Motion to Dismiss (R. Doc. 15), and Judicial Defendant's Motion to Dismiss (R. Doc. 16) be **GRANTED**, and Plaintiff's action be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Additional Time to Serve (R. Doc. 27) and Plaintiff's Motion to Amend (R. Doc. 38) be **DENIED**.

Signed in Baton Rouge, Louisiana, on January 3, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**